1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF FLORIDA
 2                        ORLANDO DIVISION

 3             Case no.:  6:13-cr-94-Orl-37GJK

 4  UNITED STATES OF AMERICA,        )     Orlando, Florida
                                     )     September 10, 2013
 5                 Plaintiff,        )     9:06 a.m.
                                     )
 6                     v.            )
                                     )
 7  JONATHAN DANIEL ADLETA,          )
                                     )
 8                 Defendant.        )
    _____)

 9

10

11                        Volume I

12            Transcript of the jury trial (day one)

13           before the Honorable Roy B. Dalton, Jr.

14              United States District Court Judge

15

16
    Appearances:
17
    Counsel for Plaintiff:  Karen Gable
18                            Ilyanis Rivera Miranda

19
    Counsel for Defendant:  Matthews Bark
20

21  Court Reporter:         Diane C. Peede, RMR, CRR
                            United States Courthouse
22                          401 West Central Blvd., #4600
                            Orlando, Florida  32801
23                          (407) 615-0305

24  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
25
```

2

1                           Index of Transcript

2                                                        Page

3      **Preliminary matters**                             **3**

4      **Jury selection**                                  **9**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          (Jury panel not present.)

3          THE COURT:  Good morning.  We're here in connection

4    with United States versus Adleta, case number 6:13-criminal-

5    94.

6          Let me get your appearances, please, counsel.

7          MS. GABLE:  Good morning, Your Honor.  Karen Gable

8    on behalf of the United States.  I'm also appearing with

9    Ilianys Rivera Miranda, who is an A.U.S.A. representing the

10   United States, and Agent Rod Hyre with the F.B.I.

11         THE COURT:  Good morning.

12         MR. BARK:  Good morning, Your Honor.  Matthews Bark

13   on behalf of Jonathan Adleta.

14         THE COURT:  Good morning.

15         THE DEFENDANT:  Jonathan Adleta.

16         THE COURT:  The Court notes Mr. Adleta's presence

17   as well.

18         I think you all got the questionnaires.  My clerk

19   distributed those.  So the jury is not quite ready to come up

20   yet, but I wanted to see if there was anything that we needed

21   to take up preliminarily.

22         One thing I would like to do is just run by you all

23   my summary statement of the case that I intend to read to the

24   jurors and see if you have any problems with it, if it gives

25   you any heartburn, if you want to try to adjust the way that

1    I describe the charges.

2              The other thing I wanted to do is to tell you that

3    I expect, in view of the nature of the charges, that it'll be

4    necessary for us to do some individual voir dire.  So my

5    expectation is that I will -- when I leave the bench, I'll

6    ask my courtroom deputy to make sure that the jurors are all

7    seated, and I'll come back and start the general voir dire,

8    introduce the parties, all of the routine things.  I'll do

9    the general questioning with them.

10             Once I finish that, I'll have them go through their

11   questionnaires briefly.  My practice is after I do the

12   general instructions -- I mean, the general voir dire, I'll

13   go back and have them each stand and introduce themselves and

14   give us a little bit of the information that is on their

15   questionnaires.

16             Then my thinking is that I would excuse all of them

17   and then ask them to come back in one at a time to ask them

18   the more sensitive questions about whether or not they've

19   ever been the victim of sexual abuse and whether or not they

20   think, in light of the charges and their own history or

21   background, that they're capable of giving the defendant a

22   fair trial and the government a fair trial, and see if we

23   have any individual issues that arise.  That way, to try to

24   get candid responses and also to protect their privacy.

25             I think that's probably the best way to go about

doing that.  I'm open to suggestion if you all have a better thought, but that's how I intend to do it, unless you have a problem with it.

          Ms. Gable, do you have any problem with that from the government's perspective?

          MS. GABLE:  Not at all, Your Honor.

          THE COURT:  How about you, Mr. Bark?

          MR. BARK:  No, Your Honor.

          THE COURT:  Okay.  What I have in my statement of the case is as follows:  In the course of my voir dire introduction, I'll give them a summary, and what I have written is:  "At this time I'm going to briefly summarize the nature of the case.  The Indictment alleges two counts against the defendant.  Specifically, Count One charges the defendant with knowingly conspiring to transport minor victim one, an individual who had not yet attained the age of 18, in interstate commerce with the intent that minor victim one engage in sexual activity, for which any person can be charged with a criminal offense.

          "Count Two charges the defendant with knowingly transporting or causing the transportation of minor victim one, an individual who had not yet attained the age of 18, in interstate commerce with the intent that minor victim one engage in sexual activity for which any person can be charged with a criminal offense.

 1              "The defendant has entered a plea of not guilty to

 2    these charges."

 3              It's a fairly vanilla description.  What you do

 4    say, Ms. --

 5              MS. GABLE:  Your Honor, I have no objection to

 6    that.

 7              THE COURT:  How about you, Mr. Bark?

 8              MR. BARK:  No objection.

 9              THE COURT:  All right.  That's what I intend to do,

10    then.  I want to run that by you before we get our jury

11    impaneled.

12              I do have some requests for special instructions --

13    I mean, special voir dire questions from the United States.

14    Have you had a chance to look those over, Mr. Bark?

15              MR. BARK:  I have, Your Honor.

16              THE COURT:  Are there any of those that are

17    problematic from your perspective?

18              MR. BARK:  I don't see any that are problematic;

19    but based on them, I do believe we should probably add one or

20    two more questions.

21              THE COURT:  Well, did you submit some questions?

22              MR. BARK:  I did previously, but I just got handed

23    these this morning.  Ms. Gable sent them to me last night,

24    but at 7:30.  I couldn't open them.  They were in a document.

25    I couldn't open them.

7

1        THE COURT:  Well, I won't get to these right off

2   the bat.  So you'll have a little time to look over them.

3        I've looked over them and they're relatively

4   straightforward questions about whether or not they use a

5   computer, have they ever texted before, do they understand

6   how to take a picture with a cell phone, have they done that

7   before.

8        MR. BARK:  I was just thinking about adding one

9   question based on these questions, not -- I have no problem

10  with these being asked.

11        THE COURT:  Okay.  Well, look them over, and if you

12  have something else that you wanted to add, you can present

13  that to me at some point before I finish.

14        I'm going to give you all an opportunity -- when I

15  finish my questions, I'm going to call you all to side bar

16  and ask you if you have any additional areas of inquiry that

17  you want me to cover or whether or not you have any

18  additional follow-up that you want me to pursue.

19        It may well be that whatever you have in mind, I

20  will cover.  I don't know that I will, but I might; but, in

21  any event, if you think something else needs to be explored

22  with them, you can bring that to my attention, and if I agree

23  with you, I'll explore it, and if I don't, I won't, okay?

24        Okay.  I'll give you all an opportunity then to

25  study those questionnaires, and Ms. Flick will give you a

1    heads-up as soon as our jurors are ready.

2           My plan is go ahead and bring the jurors in, put

3    them in the box before I come back to the bench, so that when

4    I come back to the bench, we'll be ready to roll.

5           Yes, sir.

6           MR. BARK:  Your Honor, I filed a motion to continue

7    Friday, which was denied.  I just want to put it on the

8    record we're still requesting a continuance at this point.

9           A Superseding Indictment was filed on August 28th.

10   The arraignment was on the September 3rd, and it has not

11   given us adequate time to prepare our defense.  The nature of

12   the charges was substantially changed, in our opinion.  So

13   we're requesting that again.

14          THE COURT:  Your motion is denied.  In the Court's

15   judgment, the nature of the changes has not -- charges has

16   not been altered significantly, and you've had sufficient

17   time to prepare your case and it's been on the docket for

18   some time.  So I think -- but I'll note your objection for

19   the record and we'll impanel our jury and get underway.

20          I think Ms. Flick told me, Ms. Gable, that you

21   think the case -- the government's case is likely to only

22   take a day.

23          MS. GABLE:  Yes, Your Honor.  I anticipate that

24   we'll be doing closings tomorrow.

25          THE COURT:  Okay.

1          So that's a heads-up for you, Mr. Bark, but that if

2     you do have any witnesses, you need to make sure that they're

3     available to go, okay?

4          All right.  We'll be in recess then and I'll come

5     back to the bench once I get word that the jurors are ready.

6          (Recess taken from 9:15 until 9:28 a.m.  Jury panel

7     present.)

8          THE COURT:  Good morning, ladies and gentlemen.

9     This morning we have set for trial United States of America

10    versus Jonathan Daniel Adleta.  The case number is 6:13-cr-

11    94.

12          Is the government ready to proceed?

13          MS. GABLE:  Yes, Your Honor.

14          THE COURT:  Is the defense ready to proceed?

15          MR. BARK:  Preserving our prior objection, yes.

16          THE COURT:  All right.

17          Ladies and gentlemen, we met briefly downstairs.

18    My name is Judge Dalton, and I'm going to be presiding over

19    the case today, and we'll try to seat a jury this morning.

20    This is a criminal case in which the government has charged

21    Jonathan Daniel Adleta with committing certain federal

22    crimes.

23          Now, in a criminal case such as this, the defendant

24    is presumed to be innocent of the crimes charged and the

25    government has the burden of proving the defendant guilty,

1   and the government has to prove that guilt beyond a

2   reasonable doubt.

3           I mentioned briefly downstairs that at least in my

4   view, and I think it's shared by most of my colleagues, if

5   not at all, you're about to participate in the exercise of

6   one of the most significant responsibilities that you will

7   have as a citizen of our country.  Our system of trial by

8   jury is guaranteed by our Constitution and it's one of our

9   unique institutions.

10          Sometimes we hear criticisms of the justice system,

11  and perhaps you have had occasion to be critical of it

12  yourself, but you should know, if you do not already know,

13  that the American justice system is universally respected

14  throughout the world and is considered to be a fair and

15  effective system of justice.

16          This morning I want to take a minute and tell you

17  about the various responsibilities of the parties.  The

18  United States is represented by Assistant United States

19  Attorneys, and they're going to introduce themselves in a

20  minute and their case agent.

21          Mr. Adleta is represented by counsel, and he will

22  introduce himself and his client in just a moment.

23          My principal responsibility in the course of these

24  proceedings is to make sure that the parties get a fair

25  trial; and in order to make sure that I discharge my

1    obligation, I'm going to be asking you all a number of

2    questions, quite a few questions, in the effort to seat a

3    jury.

4         I want to tell you at the outset that a lot of

5    these questions are in the category that -- you might well

6    classify them, if I saw you out on the street or at a party

7    somewhere, in what we would probably call the none-of-your-

8    business category, not the kinds of questions that you would

9    ordinarily ask someone if you were having a social encounter

10   or interaction with them, and I appreciate that fact.

11        I want you to understand that it's not my intent to

12   be rude or to cause you to be discomforted or to make you

13   uncomfortable in any way, but the charges that have been

14   brought by the United States here, and you'll hear more about

15   them in just a few minutes, require that I ask you questions

16   to make sure that the jury that is ultimately seated can be

17   fair and impartial and, that is, that they can listen to the

18   evidence, weigh the testimony, listen to the arguments of the

19   lawyers and my instructions on the law, and render a verdict

20   that is true and just without any bias or prejudice for or

21   against either party.

22        So, in order to make sure that we seat a jury that

23   doesn't come to the case with predisposed notions about how

24   the case ought to turn out, I have to spend a fair amount of

25   time with you learning a little bit about you.

1        As I mentioned to you downstairs, everybody comes

2    here from a different walk of life.  We've all had different

3    life experiences.  Some of those life experiences may make

4    this a case that is not appropriate for you, and the only way

5    that we can find that out is by asking you questions that

6    ordinarily would be none of our business.

7        I want to tell you a little bit about how the

8    process will work.  I'm going to start off asking you some

9    general questions.  I'm going to ask you these questions as a

10   group.

11       I need your help.  This is a participatory

12   exercise.  There are lots of you.  This will go a lot more

13   quickly if you all will do what I ask you to do and that is

14   listen to my question.  If your answer to the question -- if

15   I ask for an answer -- if I ask a question to which you would

16   answer yes, say "Yes" out loud.  If the answer is no, say

17   "No" out loud.

18       If I ask you a question and everybody else answers

19   "Yes," but your answer is "No," please make sure you raise

20   your hand, get my attention, and make sure I know that so

21   that I can explore it with you and follow up and figure out

22   whether or not that's a problem, all right?  Will all of you

23   agree to do the that for me?

24           (Affirmative responses.)

25           THE COURT:  Thank you very much.  Good start.

1          Now, this case is expected to take no more than

2     three days to try.  We may be able to get it done in two.

3          I've talked with the lawyers a little bit about

4     what their expectations are.  Sometimes their time estimates

5     are a little bit more optimistic than we ultimately end up

6     with, although I will do everything I can to keep them

7     moving.

8          What I expect that we'll do this morning is I'll

9     ask you these general questions.  Then I'm going to come back

10    and ask you some questions off of your questionnaire.

11          And is it Ms. Page?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  And let's see.  Where is Mr. Danford?

14          THE PROSPECTIVE JUROR: (Hand raised.)

15          THE COURT:  Mr. Danford.  Okay.

16          When we get to the questionnaires, Ms. Page and Mr.

17    Danford, you'll have the unique opportunity -- you'll have to

18    listen to everybody, Mr. Danford, before we get to you.

19          And, Ms. Page, you will have finished so long

20    before we get to Mr. Danford, you'll have forgotten what you

21    had to say, probably.  Hopefully not.

22          But the reason that we need to do it that way is

23    because the lawyers have a sheet in front of them, sort of

24    like the one that I'm holding up here, and it has all of your

25    names and your numbers and your seat locations on it, and

1 they'll make notes as I ask you questions and as we go

2 through it.  And so it's important that you -- it's important

3 that you come back and sit in the same place that you're

4 seated now, if we take a break for any reason.

5 And because it's important that we make a complete

6 record of everything, it's important that you always answer

7 my questions "Yes" out loud if the answer is yes and "No" out

8 loud if the answer is no, because the court reporter, even

9 though she's very good at what she does, she can't take it

10 down if you nod your head or shake or say uh-huh or uh-uh,

11 because even though she can write that down, oftentimes we

12 can't tell what it means when we read it.

13 So can all of you promise to do that for me?

14 (Affirmative responses.)

15 THE COURT:  Thank you very much.

16 Now, once I get through with the general questions

17 and then we'll come back and go through the questionnaires,

18 I'm going to ask all of you all to go outside.

19 Mr. Fiorenza, my court security officer here, will

20 show you where to sit.

21 I'm going to ask you to be seated out there.  I'm

22 going to bring you back in one at a time to ask you some

23 questions that are a little bit sensitive because of the

24 nature of the charges here; and the reason for that is I want

25 to make sure that we get truthful, candid responses from you.

15

1          Oftentimes I find in this kind of a setting,

2    because of the personal nature of these questions, that

3    happens -- people are a little more free with that when it's

4    one on one, even though "private" is a relative term.  It'll

5    be private in that all of your colleagues won't be sitting

6    around you, but I'll be here.  The court reporter will be

7    here.  The lawyers will be here.  So it's not exactly

8    private, but it's a little bit more private.

9          So those are the stages we'll go through.  We'll

10   have general questions.  We'll talk about your questionnaire.

11   We'll send you outside, bring you back in for a little bit of

12   one-on-one questioning.

13         Once we finish with that, then I'll take up some

14   issues with the lawyers.  They'll do what they do in terms of

15   working through their chart, talking to their clients.

16         We'll make the selection of our jurors, call you

17   back in, seat those of you who have been selected, excuse

18   those of you who have not been selected, okay?

19         (Affirmative responses.)

20         THE COURT:  Now, I've mentioned the trial is going

21   to take no more than three days.  We're going to work today

22   to select the jury, and then once we get our jury selected,

23   we'll have the lawyers' opening statements and then the

24   presentation of evidence.  We'll get as far as we can with

25   the trial.

1    For your planning purposes, our schedule will be as

2    follows:  We'll start every morning at 9:00, and by that I

3    mean that we need you back in the courthouse ready to go.

4    Mr. Fiorenza ultimately will show those of you that are

5    selected where the jury room is and get you acquainted with

6    that.

7    We need you ready to be in your seats at 9:00 so we

8    can start promptly at 9:00.

9    I'll not have you sitting for more than about 90

10   minutes at a stretch.  I try to be pretty mindful of that and

11   watch the clock.  So you'll take a break in the morning, give

12   you an opportunity to use the restroom, refresh yourself a

13   little bit, usually about a fifteen-minute break.

14   We'll break for lunch usually around 12:15 to

15   12:30, somewhere in that neighborhood.  You'll have an hour

16   and 15 minutes for lunch.

17   Because of the courthouse's location, it's a little

18   bit tough to get out and get to a place and eat and get back

19   in just an hour; but an hour and 15 minutes, I've found, is

20   just about the right amount of time.

21   So, when you come back after lunch, then we'll have

22   another 90-minute or so stretch of testimony or presentation.

23   We'll take an afternoon break and then we'll work until 5:00.

24   We will break pretty close to 5:00.  I always let

25   the lawyers know to make sure that they have their witnesses

1   organized so that they plan on breaking at 5:00.

2          Sometimes, because these things are not exactly a

3   science, we won't be quite finished with a witness or maybe a

4   witness finishes at 4:55.  That's not a problem; but if it

5   becomes -- if we get in the middle of a witness and it looks

6   like we're not going to finish that witness within a few

7   minutes after 5:00, then I will unfortunately usually

8   interrupt the witness and ask the witness to come back in the

9   morning.

10          If I can accommodate the witness and not put

11   them -- not inconvenience them by having them come back in

12   the morning, I will.  But just so you know, if anybody is

13   going to be inconvenienced, it'll be the witness and not you

14   all.  So I won't keep you for long after 5:00, because I know

15   you have things to do, children to pick up, dinners to

16   prepare, work to do, other responsibilities.  So you can

17   count on that for the schedule.

18          Now, I mentioned to you downstairs that I

19   appreciate the fact that jury service is not a convenient

20   thing, and everybody understands that.  In a minute I'm going

21   to ask you whether any of you think that you have a hardship

22   that is so special that you would not be able to give this

23   case your attention over the next couple of days.

24          And before I do that, I'm going to tell you what my

25   rule is.  If you look to the person to your right and the

1   person to your left and if you think that you would be able

2   to persuade them that whatever is happening in your life or

3   day is more important than what's happening in their life or

4   day and that they should serve in your place, then you might

5   be successful with me.

6          If you think you would be unsuccessful persuading

7   your neighbor that they should serve in your place, you will

8   probably have the same fate with me.

9          So, with that said, is there anybody in our current

10  venire who feels like that they have such a difficult

11  situation, either at home, work or family, that they would

12  not be able to give this case their undivided attention over

13  the next two to three days?  If so, would you raise your hand

14  and I'll follow up with you.

15         (No hands raised.)

16         THE COURT:  Everybody is okay.  Good.

17         Now, I touched on this already, but all you of you

18  remember that you took an oath downstairs to tell the truth,

19  yes?

20         (Affirmative responses.)

21         THE COURT:  All right.  And the reason for that, as

22  I mentioned, is because it's very important for me to do my

23  job of making sure that the parties have a fair trial to make

24  sure that you understand that these questions I'm about to

25  ask you, even though they may be uncomfortable for you to

answer -- some of them will be easy, but some of them will be

harder.  It's important that you be completely candid and

forthcoming.

If there's something that I ask you that you would

prefer to talk to me about in private, just tell me that, and

I'll do my best to accommodate you; but don't not tell me

because you're uncomfortable, understood?

(Affirmative responses.)

THE COURT:  If you want to talk to me privately,

what we'll do is I'll probably go through the rest of the

panel and then circle back, and those of you who had things

that you wanted to talk to me about privately, I'll have you

come over here to the side bar and we'll do it in private,

again, "private" being a relative term.

Do you understand that the parties, because the

parties are -- they have a vested interest, obviously, in a

fair jury.  They want to make sure that they know what you

and I talk about.  So they'll be invited to come to side bar

as well.

So "privacy" is a relative term, but at least it's

more private than the open courtroom.

Now, I'm going to tell you just a little bit about

the nature of the case, all right?  In this case, the

government has charged by way of an Indictment two counts

against the defendant.  Specifically, Count One of the

Indictment charges that the defendant knowingly conspired to transport minor victim one, an individual who had not yet attained the age of 18, in interstate commerce with the intent that minor victim one engage in sexual activity for which any person could be charged with a criminal offense.

Count Two charges the defendant with knowingly transporting or causing the transportation of minor victim one, an individual who had not yet attained the age of 18, in interstate commerce with the intent that minor victim one engage in sexual activity for which any person could be charged with a criminal offense.  The defendant has entered a plea of not guilty to these charges.

Now, the Indictment that I've just summarized is not to be considered as evidence against the defendant.  It's merely a charging document which identifies the charges against the defendant.  It is not evidence of the defendant's guilt, and you must not be influenced by the fact that an Indictment has been filed.

As I've mentioned, I'm going to ask you some general questions and I want you to listen carefully and give me a clear and audible response.

I've just explained a little bit about the general nature of the case, and I understand that you know very little about it, but that will change over the course of the next couple of days.

```
 1              Based on what I have said, do any of you know

 2    anything about this case, either through your personal

 3    knowledge or by discussions with anyone else or by reading or

 4    hearing about it in any news media?

 5              (Negative responses.)

 6              THE COURT:  Now, the defendant in this case is

 7    Jonathan Daniel Adleta.

 8              At this time I'm going to ask the lawyers to

 9    introduce themselves and anyone that's seated at counsel

10    table.

11              Mr. Bark, I'll ask you to introduce yourself first.

12    Tell the jurors a little bit about where you practice, and

13    then introduce your client, if you would, please.

14              MR. BARK:  Good morning.  My name is Matthews Bark.

15    My law office is in Altamonte Springs, and I practice across

16    Central Florida.

17              And my client, who I'm happy to represent today, is

18    Jonathan Adleta.

19              THE COURT:  Would you stand, please, Mr. Adleta.

20              THE DEFENDANT:  Yes, Your Honor.  (Defendant

21    stands.)

22              THE COURT:  Thank you.

23              Ladies and gentlemen, do any of you know Mr. Bark

24    or recognize or know Mr. Adleta at all?

25              (Negative responses.)
```

22

```
 1              THE COURT:  Thank you very much.  Y'all can be

 2      seated.

 3              Ms. Gable, would you introduce yourself and those

 4      seated at your table, please, ma'am.

 5              MS. GABLE:  Good morning, ladies and gentlemen.  My

 6      name is Karen Gable.  I'm an Assistant United States

 7      Attorney.

 8              My co-counsel in this case, also an Assistant

 9      United States Attorney, Ilyanis Rivera Miranda.

10              And the case agent assigned to this case is Agent

11      Rod Hyre, who is an agent with the F.B.I.

12              THE COURT:  Thank you, ma'am.

13              Do any of you recognize any of the individuals

14      seated at the government's table?

15              (Negative responses.)

16              THE COURT:  We have a hand back here.

17              Yes, sir, Mr. Danford.

18              THE PROSPECTIVE JUROR:  Yes.  Ms. Gable.

19              THE COURT:  Hang on just a second.  Mr. Fiorenza is

20      going to pass you around a microphone.

21              There is some method to the madness here, and the

22      reason that we need you to use the microphone, even though

23      everybody can hear each other well, the court reporter

24      listens through the sound system; and so if it's not spoken

25      into the microphone, she can't hear it, even though you and I
```

23

1    may be able to converse quite easily.

2            So, Mr. Danford, if you will, use the microphone.

3            And for the rest of you, as we go along, just raise

4    your hand and pause and I'll get Mr. Fiorenza to pass you the

5    microphone.

6            Yes, sir.

7            THE PROSPECTIVE JUROR:  Thank you, sir.  I'm

8    familiar with Ms. Gable.  I'm not sure if she remembers me,

9    but I'm familiar with her through my career.

10           THE COURT:  In what connection?

11           THE PROSPECTIVE JUROR:  Sir, I've been in law

12   enforcement all my life and I also was a Special Deputy U.S.

13   Marshal here.  I've been in court many times.

14           THE COURT:  Okay.  Thank you, Mr. Danford.  I

15   appreciate you bringing that up.  We'll probably explore that

16   with you in more detail as we get is a little farther along.

17           Anybody that recognizes anybody seated at the

18   government's table?

19           (Negative responses.)

20           THE COURT:  Thank you.

21           Mr. Danford, while we're on the subject, let me ask

22   you, would your familiarity with Ms. Gable cause you to give

23   any greater or lesser weight to the government's case?  Do

24   you feel like you could be fair and impartial if you were

25   selected to sit as a juror in this case?

24

1          THE PROSPECTIVE JUROR:  It would be difficult.

2          In reference to Ms. Gable herself, no.  I can do

3    what I have to -- need to do for, you know, her state.  I'll

4    stop right there for now, Your Honor, until you ask further

5    questions.

6          THE COURT:  Okay.  Well, I guess let's ask the

7    obvious question.  In light of your background and

8    experience, do you think that you would have a difficult time

9    giving Mr. Adleta a fair trial?  Do you think you would start

10   off with the scales weighted a little bit in favor of the

11   government?

12         THE PROSPECTIVE JUROR:  I apologize, Your Honor.

13   Not that I'm trying to get off this.  I would have a

14   difficult time because this is what I did for a living,

15   especially for the last 15 years, dealing with these type of

16   crimes, sir.

17         THE COURT:  Okay.  Well, I appreciate your candor,

18   Mr. Danford.  Thank you very much.

19         Ladies and gentlemen, I'm going to read off a list

20   of names that the lawyers have given me as folks that they

21   expect may testify.  Every time I do this, I'm reminded at

22   least of my own shortcomings, which is that oftentimes I hear

23   individuals' names, and if it's not in context, I have a hard

24   time placing them.  Then I see them and I go, "Of course, I

25   know that individual."  So I know this is a tough exercise.

```
 1              What I'm going to do is read these names to you and

 2    ask you if anybody sounds even remotely familiar, raise your

 3    hand and bring that to my attention, and I'll follow up with

 4    the lawyers and get a little bit more background from them

 5    about who they are.  Is it a law enforcement person?  Is it a

 6    witness?  Is it a butcher, baker, candlestick maker?  And

 7    that might help you figure out whether or not it is in fact

 8    somebody that you know.  So listen carefully as I read these

 9    names.  Sarah Adleta; Debra Healy; Rodney Hyre, who you just

10    met; Steve McElyea; Ian Buchanan; Carol Ann Rodriguez; Diane

11    Mathis.

12              Do any of you recognize any of those individuals by

13    name?

14              (Negative responses.)

15              THE COURT:  And, counsel, are there any other names

16    that I did not read?

17              MS. GABLE:  Yes, Your Honor.

18              THE COURT:  All right.

19              MS. GABLE:  Samantha Bryant, Sherry Wentz, Diane

20    Mathis.

21              THE COURT:  How about those additional names, do

22    any of you recognize any of those?

23              (Negative responses.)

24              THE COURT:  Mr. Bark, any other names that you

25    would like for me to read?
```

26

```
1              MR. BARK:  No, Your Honor.

2              THE COURT:  Now, do any of you know each other?

3         I know everybody comes from a long way.

4              I didn't mention this to you downstairs either, but

5    I also -- I think I started to talk to you a little bit about

6    how big this district is.  It's 350 miles, believe it or not,

7    from the tip of the Middle District of Florida, one tip to

8    the other.  It runs from Jacksonville all the way down to

9    Fort Myers on the southwest.  So it's a very large district.

10             And the Orlando division is a big division.  I know

11   many of you come from a long way away, and so I want to tell

12   you that we are aware of that.

13             One of the reasons I want to try to give you the

14   schedule and let you know what you can count on is because I

15   know a lot of you have to drive a long way to get here and to

16   get back home.

17             But do any of you know each other?  Just raise your

18   hand if you do.

19             Hang on just a second.  I'm going to see how I do

20   with my seating chart here.

21             Are you Ms. Deida?

22             THE PROSPECTIVE JUROR:  Deida.

23             THE COURT:  Ms. Deida, good morning.

24             THE PROSPECTIVE JUROR:  Good morning.

25             THE COURT:  Who do you know?
```

27

1          THE PROSPECTIVE JUROR:  I know him over there.

2          THE COURT:  "Him over there," would that be James

3    Wehr?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Good morning, Mr. Wehr.

6          Ms. Deida, how do you know Mr. Wehr?

7          THE PROSPECTIVE JUROR:  My son used to go to

8    St. Luke's private school, and his kids also go to that

9    school.

10          THE COURT:  Okay.  So you recognize him from

11    dropping off carpool --

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  -- or school activities?

14          THE PROSPECTIVE JUROR:  Yes.  In the school, yes.

15          THE COURT:  Ms. Deida, is there anything about the

16    fact that you know Mr. Wehr that would cause you any

17    discomfort or make it difficult for you to sit as a juror in

18    this case if the two of you happen to be seated together?

19          THE PROSPECTIVE JUROR:  No, Your Honor.

20          THE COURT:  How about you, Mr. Wehr?

21          THE PROSPECTIVE JUROR:  No.  I'm fine.

22          THE COURT:  You'd be comfortable sitting as a juror

23    with Ms. Deida if that were to work out?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Thank you, ma'am.

```
 1                    Does anyone else recognize anybody else on the
 2      panel?
 3                    (Negative responses.)
 4                    THE COURT:  Thank you.
 5                    Now, is there anybody on the panel who's ever been
 6      a party to a lawsuit, and by that I mean has anybody ever
 7      brought a lawsuit or been named as a defendant in a lawsuit?
 8                    (Negative responses.)
 9                    THE COURT:  We all, I think, learned as children,
10      but we can always stand a refresher course, that it's
11      important to keep an open mind -- it's especially important
12      in this type of proceeding to keep an open mind until you've
13      heard all of the evidence, the lawyers' arguments, and the
14      Court's instruction on the law.
15                    Do all of you appreciate the importance of keeping
16      an open mind until the case is concluded and it's been given
17      to you to deliberate?
18                    (Affirmative responses.)
19                    THE COURT:  Can all of you assure me that you can
20      do that?
21                    (Affirmative responses.)
22                    THE COURT:  Is there anybody on the panel that just
23      doesn't believe in the jury system, that thinks it's a bad
24      way to resolve disputes and doesn't want to be a part of it?
25                    (Negative responses.)
```

1    THE COURT:  Now, I've mentioned this before, but

2  Mr. Adleta, who is the defendant in this case, is presumed to

3  be innocent of the crimes charged and he is not required to

4  prove his own innocence.  In fact, he's not required to do

5  anything at all.  He's not required to testify.  He can't be

6  forced to testify.  He's not required to produce any evidence

7  or to do anything whatsoever.  The burden of proof is on the

8  United States.  Do all of you understand that?

9         (Affirmative responses.)

10    THE COURT:  Can all of you abide by that?

11         (Affirmative responses.)

12    THE COURT:  Do all of you understand that Mr.

13  Adleta cannot be found guilty unless the government proves

14  his guilt beyond a reasonable doubt?

15         (Affirmative responses.)

16    THE COURT:  Would any of you have any difficulty

17  following that rule?

18         (Negative responses.)

19    THE COURT:  Do all of you understand that the

20  defendant has a right to remain silent, that if he should

21  choose to do that, that you should not consider that in

22  reaching your decision?

23         (Affirmative responses.)

24    THE COURT:  Would any of you have any difficulty

25  following that rule?

1        (Negative responses.)

2        THE COURT:  Now, is there anybody on the panel who

3   either themselves or has a close friend or a family member

4   who has served as a prosecuting attorney?

5        (Negative responses.)

6        THE COURT:  A prosecuting attorney, just so I make

7   sure that everybody knows, whether it was in a judicial

8   proceeding, like a state or a federal court, or maybe in the

9   government or maybe in the military, a prosecuting attorney

10  is an attorney who is charged with representing the interests

11  of the governmental agency in bringing charges or claims

12  against someone else.  Do all of you understand what I mean

13  by "prosecuting attorney"?

14        (Affirmative responses.)

15        THE COURT:  Let me ask the question again.  Is

16  there anybody whose family member or close friend has worked

17  as a prosecuting attorney?

18        (Negative responses.)

19        THE COURT:  Thank you.

20        Now, Ms. Gable introduced herself and Ms. Miranda

21  as well as the case agent.

22        Have any of you had any dealings with the United

23  States Attorney's Office, whether it was in this district or

24  in any other district, for any reason?

25        (Negative responses.)

```
 1              THE COURTROOM SECURITY OFFICER:   Judge.

 2              THE COURT:   Yes.

 3              THE COURTROOM SECURITY OFFICER:   The gentleman in

 4    the back.

 5              THE COURT:   Yes, sir, Mr. Danford, you've told us

 6    about that already.   So I appreciate that.

 7              Other than Mr. Danford, just so I make sure I don't

 8    miss anybody?

 9              We have a hand here.

10              Are you Ms. Wadsworth?

11              THE PROSPECTIVE JUROR:   McLaughlin.

12              THE COURT:   McLaughlin.   Great.   I have you.

13              THE PROSPECTIVE JUROR:   I want to make sure -- I

14    sat on the state grand jury in 2005 with Larson Lamar.

15              THE COURT:   I'm going to ask you a little bit more

16    about jury service, grand jury or petit jury, as we call it,

17    later; but thank you for bringing that to my attention.

18              Is there anything about that experience, Ms.

19    McLaughlin, that you think would influence you in a negative

20    way in terms of your ability to be fair and impartial if you

21    were seated as a juror in this case?

22              THE PROSPECTIVE JUROR:   No.

23              THE COURT:   Now, have any of you ever brought a

24    claim against the United States government or had a claim

25    brought against you by the United States government?
```

1          (Negative responses.)

2               THE COURT:  Have any of you ever had a case or a

3     claim or a dispute with the United States government or one

4     of its agencies?

5               (Negative responses.)

6               THE COURT:  Now, one of the principal

7     responsibilities of jurors is to consider the testimony of

8     various witnesses and to determine the credibility, that is,

9     the believability of each witness.

10               It's expected that a number of law enforcement

11     officers will be testifying in this case or at least some

12     will.  With respect to those witnesses, let me ask you this

13     question:  Do any of you have any past experience or any

14     reason that would cause you to either believe or disbelieve a

15     law enforcement witness over any other witness simply because

16     he or she is a law enforcement officer?

17               (Negative responses.)

18               THE COURT:  You're going to be given some

19     information or some instructions about how to weigh the

20     credibility of witnesses, and in a nutshell, it is a

21     discussion of things that you would ordinarily do by use of

22     your common sense.  It's not always what someone says, but

23     sometimes the way they say it or the means and opportunity

24     they had to actually know the things about which they're

25     testifying.  What was their vantage point?  What was their

1  ability to observe the information about which they're

2  testifying?  Do they have any bias or interest in the case

3  that would make them inclined to testify in one direction or

4  another?  Those are things that are more or less common

5  sense, but I'm going to go over those again with you.

6         One of the questions I need to ask you, which I've

7  just covered in the way of law enforcement, it works both

8  ways.  I asked you whether or not any of you have had any

9  experiences with law enforcement that would cause you to

10 either tend to believe them or disbelieve them.

11         Do you understand I'm asking that on both sides?

12 Do all of you recognize that law enforcement folks are just

13 like everybody else in terms of observing things?  They may

14 perceive things correctly.  They may perceive things

15 incorrectly.  They may be absolutely correct in what they

16 testify about.  They may be mistaken on some details about

17 what they testify about.  Do all of you appreciate that fact?

18         (Affirmative responses.)

19         THE COURT:  Is there anybody that would not be able

20 to consider the testimony of a law enforcement officer just

21 as you would the testimony of anyone else?

22         (Negative responses.)

23         THE COURT:  Okay.  Do any of you have any medical

24 or physical conditions or impairments that would make it

25 difficult for you to serve as a juror?  For example, anybody

```
 1    that has any language problems for which English is a second

 2    language or some hearing difficulties?

 3              Okay.  Keep your hands up, if you would; and the

 4    reason for that is not to make you uncomfortable, but because

 5    the lawyers are furiously scribbling on these charts to try

 6    to keep up with the questions, and in order to help them, if

 7    you'll keep your hands up for a few minutes, then I will get

 8    to you.

 9              Yes, ma'am, Ms. Deida.

10              THE PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Do you have language problems?

12              THE PROSPECTIVE JUROR:  Yes.  My second language is

13    English, and I feel afraid if I cannot understand something

14    important that going to affect the case.

15              THE COURT:  Okay.  Have you had any difficulty

16    understanding me this morning?

17              THE PROSPECTIVE JUROR:  So far, no.

18              THE COURT:  Okay.

19              THE PROSPECTIVE JUROR:  So far, being

20    understanding.

21              THE COURT:  Okay.  I appreciate you bringing that

22    to my attention.

23              THE PROSPECTIVE JUROR:  Thank you.

24              THE COURT:  Let's see.  In the first row, any

25    others?  We've got some in the second row.
```

```
 1                 Let's come down here, Mr. Fiorenza.

 2                 Is it Mr. Prevalus?

 3                 THE PROSPECTIVE JUROR:  Yes, sir.

 4                 THE COURT:  Good morning, Mr. Prevalus.

 5                 THE PROSPECTIVE JUROR:  Good morning.

 6                 THE COURT:  Tell me what's your worry.

 7                 THE PROSPECTIVE JUROR:  Well, English is my second

 8     language.  I believe I doesn't speak 100 percent English.

 9                 THE COURT:  Okay.  Have you been able to understand

10     me this morning?

11                 THE PROSPECTIVE JUROR:  Yeah.  Like, 60 percent,

12     yes.

13                 THE COURT:  Okay.  All right.  Thank you, Mr.

14     Prevalus.

15                 Let's see.  Is it Mr. McWhorter?

16                 THE PROSPECTIVE JUROR:  Yes, sir.

17                 THE COURT:  Good morning, Mr. McWhorter.

18                 THE PROSPECTIVE JUROR:  I have 60 percent hearing

19     loss, 40 in one ear and 60 in the other.

20                 THE COURT:  Have you been able to hear me?

21                 THE PROSPECTIVE JUROR:  Borderline.

22                 THE COURT:  Are you having to strain to hear me?

23                 THE PROSPECTIVE JUROR:  I'm sorry?

24                 THE COURT:  Are you having to strain to hear me?

25                 THE PROSPECTIVE JUROR:  Yes.
```

1                THE COURT:  Okay.  Thank you, sir.

2                All right.  In the back row, yes, ma'am.  Are you

3   Ms. Laverde?

4                THE PROSPECTIVE JUROR:  Yes, I am.

5                THE COURT:  Did I pronounce that correctly?

6                THE PROSPECTIVE JUROR:  English is mine second

7   language.  I'm afraid that I wouldn't understand.

8                So far, I have been doing good, but I don't know if

9   my English -- English is at the level to this court.

10               THE COURT:  Thank you, ma'am.  If you'll pass the

11  microphone down, I think we have another hand down there.

12               Is it Ms. Finley?

13               THE PROSPECTIVE JUROR:  Yes.

14               THE COURT:  Good morning, Ms. Finley.  How are you?

15               THE PROSPECTIVE JUROR:  I'm good.

16               THE COURT:  What's concerning you?

17               THE PROSPECTIVE JUROR:  I have a hearing loss.

18  I am having a little difficulty hearing you; but if the mics

19  are turned up, I should be fine.

20               THE COURT:  Okay.

21               THE PROSPECTIVE JUROR:  And then I had lower back

22  surgery two years ago.  So sitting and standing for long

23  periods of time is difficult, but the 90-minute breaks should

24  help with that.

25               THE COURT:  If I'm vigilant about that, do you

1    think that'll be okay?

2           THE PROSPECTIVE JUROR:  Yes, sir.

3           THE COURT:  Okay.  And we're going to make a

4    concerted effort to make sure that everybody uses the

5    microphone.  You'll find one of my rules is that I'll require

6    the lawyers to come to the podium and to speak directly into

7    the microphone.  The witnesses also have a microphone that

8    they will be directed to speak into clearly.  So I think we

9    should be okay from a hearing standpoint.  As long as you can

10   hear me all right, then you should be okay.  All right?

11          THE PROSPECTIVE JUROR:  Yes, sir.

12          THE COURT:  Thank you, though.

13          Is there anyone on the panel who has ever had a

14   close friend, a relative or themselves been charged with any

15   type of a criminal offense that is something more serious

16   than a traffic infraction?

17          Now we're well into the category of none of your

18   business, which I recognize; but if you'll put your hands up

19   for me, we're going to -- let's see.

20          Mr. Fiorenza, let's start with the back row over

21   here, with Ms. Olsen, and then we'll work down the row.  So,

22   when the microphone comes to you, if you have a response to

23   that question -- Ms. Olsen, do you mind standing, please.

24          THE PROSPECTIVE JUROR:  I've been charged with

25   D.U.I. and malicious mischief and disorderly conduct.

1          THE COURT:  Okay.  Again, this is not for the

2     purpose of making anybody uncomfortable.  Here, the United

3     States has charged Mr. Adleta with federal criminal offenses.

4     And so I need to make sure that there's nothing in your

5     background that would make it difficult for you to be fair

6     and impartial if you were seated as a juror in this case.

7          So I'm going to ask you whether there's anything

8     about that experience, uncomfortable or unpleasant as it was,

9     that would make it difficult for you to listen to the

10    evidence and render a verdict that was fair and impartial in

11    light of the evidence and my instructions on the law.

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Okay.  Do you think you could be fair

14    to both the government and to Mr. Adleta?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  Thank you.  Would you just pass

17    the microphone to your right.

18          And I think -- is it Ms. Foederer?

19          THE PROSPECTIVE JUROR:  Fed-er-er.

20          THE COURT:  Ms. Foederer, good morning.  How are

21    you?

22          THE PROSPECTIVE JUROR:  Good morning.  Thank you.

23    How are you doing?

24          THE COURT:  Good.  Thank you.

25          THE PROSPECTIVE JUROR:  Possession of marijuana

1    charge about 17 years ago.

2                 THE COURT:  Okay.  Did you hear the questions that

3    I asked of Ms. Olsen.

4                 THE PROSPECTIVE JUROR:  I did.

5                 THE COURT:  Would your answers be any different?

6                 THE PROSPECTIVE JUROR:  No.

7                 THE COURT:  Okay.  So you feel like you could be

8    fair?

9                 THE PROSPECTIVE JUROR:  Yes, I could.

10                THE COURT:  Thank you, Ms. Foederer.  Would you

11   pass the microphone down to your right.

12                And is it Ms. Schmitt?

13                THE PROSPECTIVE JUROR:  It is.

14                THE COURT:  Good morning, Ms. Schmitt.  How are

15   you?

16                THE PROSPECTIVE JUROR:  Fine.  Thank you.

17                THE COURT:  Good.  Sorry to put you on the spot.

18                THE PROSPECTIVE JUROR:  That's okay.  My fiance was

19   charged with a D.U.I.

20                THE COURT:  Okay.  About how long ago was that?

21                THE PROSPECTIVE JUROR:  Five years, six years.

22                THE COURT:  Okay.  Is there anything about that

23   experience that would make it difficult for you to be fair

24   and impartial if you were seated as a juror?

25                THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Okay.  All right.  Thank you, Ms.

2    Schmitt.

3          Good morning.  Is it Shi-ka?

4          THE PROSPECTIVE JUROR:  Shay-ka.

5          THE COURT:  Good morning, Ms. Shayka.  How are you?

6          THE PROSPECTIVE JUROR:  Fine.  Thank you.

7          THE COURT:  Good.

8          THE PROSPECTIVE JUROR:  My ex-husband was charged

9    with -- charged and convicted of sex with a minor, I think --

10   I don't remember how many counts.

11         THE COURT:  Okay.  The charges here involve

12   essentially the same thing; and as I mentioned, Mr. Adleta

13   has entered a plea of not guilty to those charges.

14         Do you think that you would be able to be fair and

15   impartial if you were seated as a juror in this case, in

16   light of that experience that you've gone through?

17         THE PROSPECTIVE JUROR:  I don't know all the

18   details of the case, but I know the details of my ex's case.

19   So a lot would depend, I guess.

20         THE COURT:  Fair enough.

21         THE PROSPECTIVE JUROR:  I can try my best.

22         THE COURT:  I guess the point I would make to you

23   is, obviously, the case that's brought by the government here

24   has to rise and fall on the facts of this case and what the

25   government proves in this case.  It has nothing to do with

41

1    your husband's circumstances -- your ex-husband's

2    circumstances.

3                THE PROSPECTIVE JUROR:  Yes, I agree.

4                THE COURT:  So what I need to ask you is, do you

5    think that you would be able to put that out of your mind and

6    listen to the evidence in this case and make a determination

7    as to whether or not the United States has proved Mr.

8    Adleta's guilt beyond a reasonable doubt?

9                THE PROSPECTIVE JUROR:  I would like to say yes;

10   but being human, I can't give you 100 percent conviction

11   that, yes, I could put everything out of my mind with what he

12   went through.

13               THE COURT:  All right.  So you're concerned that

14   you might start off a little bit in favor of the government?

15               THE PROSPECTIVE JUROR:  Yes.

16               THE COURT:  There's no shame in that.  That's the

17   reason we ask the questions.  That's why we ask the

18   questions.  So I appreciate you being candid about it.

19               All right.  Thank you, ma'am.

20               THE PROSPECTIVE JUROR:  You're welcome.

21               THE COURT:  Pass the microphone down to your right,

22   if you would.

23               Okay.  Let's see.  Is it Ojeda?

24               THE PROSPECTIVE JUROR:  Yes.

25               THE COURT:  How are you, Ms. Ojeda?

42

1          THE PROSPECTIVE JUROR:   Okay.

2          THE COURT:   Good.

3          THE PROSPECTIVE JUROR:   My brother was -- he was

4   convicted with drug possession.

5          THE COURT:   All right.   About how long ago was

6   that?

7          THE PROSPECTIVE JUROR:   In 2000 and then last year.

8          THE COURT:   All right.   Do you know if it was a

9   state or federal offense that he was charged with?

10          THE PROSPECTIVE JUROR:   I don't know.

11          THE COURT:   Okay.   Is there anything about that

12   experience that would make it difficult for you to be fair

13   and impartial, listen to the evidence in this case, and

14   render a true and just verdict?

15          THE PROSPECTIVE JUROR:   I don't think so.

16          THE COURT:   Okay.   Thank you, ma'am.

17          If you would, pass the microphone -- let's see.

18   Maybe we should come this way.   I think we might have some

19   more on this row.   Pass it to your left, if you would,

20   please.

21          Just keep passing it, unless you have something to

22   share with me.

23          Are you Mr. Koshlap?

24          THE PROSPECTIVE JUROR:   Yes, sir.

25          THE COURT:   How are you this morning?

43

1            THE PROSPECTIVE JUROR:  Okay.

2            THE COURT:  Good.

3            MR. BARK:  Over 20 years ago I was charged with

4    possession of less than 50 grams of marijuana --

5            THE COURT:  Okay.

6            THE PROSPECTIVE JUROR:  -- underaged drinking and

7    unauthorized use of a motor vehicle, and all three charges

8    were, I guess you would say, dismissed with pretrial

9    intervention.

10           THE COURT:  Okay.  Is there anything about that

11   experience that would make it difficult for you to be fair

12   and impartial if you were seated as a juror in this case?

13           THE PROSPECTIVE JUROR:  No, sir.

14           THE COURT:  Thank you, Mr. Koshlap.  I appreciate

15   that.

16           Is there anybody else on the second row?

17           (No response.)

18           THE COURT:  Let's come down to the first row then.

19   Do we have some hands on the first row?

20           Let's see.  Down there towards the end.  Yes,

21   ma'am.  Let's see.  Are you Ms. Daniels?

22           THE PROSPECTIVE JUROR:  Daniels.

23           THE COURT:  How are you, Ms. Daniels?

24           THE PROSPECTIVE JUROR:  Great.

25           THE COURT:  Good.

44

1       THE PROSPECTIVE JUROR:  I had a friend charged with

2   a D.U.I., I think it was about two years ago.

3       THE COURT:  Okay.

4       THE PROSPECTIVE JUROR:  I also have a brother that

5   was charged with drug charges.  I don't know the extent of

6   the case.  It was in another state.

7       THE COURT:  Okay.  Is there anything about that

8   that would make it difficult for you to be fair and

9   impartial?

10      THE PROSPECTIVE JUROR:  No.

11      THE COURT:  Okay.  Would you pass the microphone

12  down to your right, please, ma'am.

13      THE PROSPECTIVE JUROR:  Yes, I have --

14      THE COURT:  Hang on just one second.  Let me catch

15  up with you.

16      You're Ms. Wadsworth?

17      THE PROSPECTIVE JUROR:  Yes I am.

18      THE COURT:  Good morning, Ms. Wadsworth.

19      THE PROSPECTIVE JUROR:  Good morning.  My brother

20  was charged and convicted of attempted murder under the

21  federal hate crime law.

22      THE COURT:  How long ago was that?

23      THE PROSPECTIVE JUROR:  '91.

24      THE COURT:  Was that here in the Middle District?

25      THE PROSPECTIVE JUROR:  It was.

1            THE COURT:  Okay.  How do you feel about that

2     experience in terms of its impact on your ability to be fair

3     and impartial?

4            THE PROSPECTIVE JUROR:  I think I can be fair and

5     impartial in this case.

6            THE COURT:  Okay.  If you were Mr. Adleta, would

7     you be comfortable with you as a juror?

8            THE PROSPECTIVE JUROR:  I think so, yes.

9            THE COURT:  If you were the government, would you

10    be comfortable with Ms. Wadsworth as a juror?

11            THE PROSPECTIVE JUROR:  Yes.

12            THE COURT:  Thank you, ma'am.  Pass the microphone

13    to your right, please.

14            Good morning.  Is it Mr. Cole?

15            THE PROSPECTIVE JUROR:  Yes, sir.

16            THE COURT:  How are you, Mr. Cole?

17            THE PROSPECTIVE JUROR:  Fine.  Thank you.

18            THE COURT:  Good.  Do you mind standing up just so

19    I can hear you a little better?

20            THE PROSPECTIVE JUROR:  All right.

21            THE COURT:  Could you stand up so I could hear you

22    a little better?  Thank you.

23            THE PROSPECTIVE JUROR:  I had a brother and a

24    nephew that was both charged with robbery and possession of

25    drugs.

| | |
|---|---|
| 1 | THE COURT:  How long ago was that, Mr. Cole? |
| 2 | THE PROSPECTIVE JUROR:  Four years, I believe. |
| 3 | THE COURT:  Okay.  Do you think, in light of that |
| 4 | experience, that you could be fair and impartial to both |
| 5 | sides if you were seated as juror in this case? |
| 6 | THE PROSPECTIVE JUROR:  Yes, sir. |
| 7 | THE COURT:  Do you think you could put that out of |
| 8 | your mind and base your verdict on the evidence and my |
| 9 | instructions on the law in this case and only that? |
| 10 | THE PROSPECTIVE JUROR:  Yes. |
| 11 | THE COURT:  Okay.  Thank you, Mr. Cole. |
| 12 | I think we had a hand back there in the back.  Are |
| 13 | you Mr. Jaynes? |
| 14 | THE PROSPECTIVE JUROR:  Yes, sir. |
| 15 | THE COURT:  Good morning, Mr. Jaynes.  How are you? |
| 16 | THE PROSPECTIVE JUROR:  Good morning.  Good. |
| 17 | THE COURT:  Good. |
| 18 | THE PROSPECTIVE JUROR:  My brother confessed and |
| 19 | was convicted of lewd act with a minor. |
| 20 | THE COURT:  How long ago was that? |
| 21 | THE PROSPECTIVE JUROR:  That was about 1998. |
| 22 | THE COURT:  Okay.  This case involves facts that |
| 23 | are in that ballpark.  Is there anything about your |
| 24 | experience in your brother's case that would make it |
| 25 | difficult for you to be fair and impartial if you were seated |

1   as a juror here?

2           THE PROSPECTIVE JUROR:  No, sir.

3           THE COURT:  Do you think you could set that

4   circumstance aside and assure both the government and Mr.

5   Adleta that you would fairly evaluate the evidence and render

6   a true and just verdict based only on the evidence and my

7   instructions on the law?

8           THE PROSPECTIVE JUROR:  Yes, absolutely.

9           THE COURT:  Thank you, Mr. Jaynes.  I appreciate

10  that.

11          All right.  Do we have everybody?

12          (No response.)

13          THE COURT:  Yes?

14          (Affirmative responses.)

15          THE COURT:  Thank you.

16          One of the things that may happen in this case --

17  I'm not a whole lot better equipped than you all are in terms

18  of knowing exactly what the case entails.  I'm in a little

19  better shape, but not a lot better shape.  But it may be,

20  because of the type of case and the nature of the charges,

21  that you may hear testimony from one or more witnesses who

22  have been involved in criminal activity and who may be

23  testifying in return for leniency or for favorable treatment

24  from the government.

25          Would all of you be able to evaluate that testimony

1   in keeping with the instructions that I give you as to what

2   difference that makes?  Would all of you be able to listen to

3   my instructions and follow my instructions in that regard?

4            (Affirmative responses.)

5            THE COURT:  Do you all of you understand that

6   sometimes that happens, that the government has witnesses

7   that they make arrangements with one sort or another to make

8   recommendations to the court for favorable treatment or to

9   otherwise improve the lot of one individual in connection

10   with their cooperation in another case?

11            (Affirmative responses.)

12            THE COURT:  Will all of you agree to evaluate those

13   circumstances and give it whatever weight you think it

14   deserves?

15            (Affirmative responses.)

16            THE COURT:  Okay.  Now, one of my responsibilities

17   in connection with my obligation to make sure the parties

18   have a fair trial is to decide the questions of law that

19   arise during the course of the trial.  And before you retire

20   to deliberate, I'm going to instruct you on the law that

21   you're to follow in reaching your verdict.

22            Regardless of any opinion that you might have as to

23   what the law ought to be, it would be a violation of your

24   sworn duty to base a verdict upon any other view of the law

25   other than that that is going to be given to you in the

1    instructions of the Court, just as it would be a violation of

2    your sworn duty as judges of the facts to base a verdict upon

3    anything other than the evidence in this case.

4              Can all of you assure me that you can perform your

5    sworn duty as jurors?

6              (Affirmative responses.)

7              THE COURT:  Is there anybody on the panel that

8    feels that they may not be able to do that?

9              (Negative responses.)

10             THE COURT:  Now, if you are selected as a juror in

11   this case, can each of you assure me that you would render a

12   fair and impartial verdict based upon the evidence presented

13   in this courtroom and the law as it pertains to this

14   particular case as instructed by the Court?

15             (Affirmative responses.)

16             THE COURT:  Do any of you know of any reason that

17   you would not be able to do that?

18             (Negative responses.)

19             THE COURT:  Now, I know that you don't know too

20   much about the case and there may be some things that we will

21   talk to you about in private, but up to this point do any of

22   you know of anything in your background, experience --

23   anything in any of your backgrounds or experience or strong

24   feelings that you have that you believe might be significant

25   or important as to whether or not you would be a fair and

1    impartial juror in this case that you have not shared with me

2    to this point, maybe because I didn't ask the right question

3    or you felt like I just sort of skirted around the edge of

4    something?

5          Is there anybody that's sitting there now with a

6    gnawing feeling that perhaps this is not the right case for

7    them and I just haven't asked you the right question?

8          (Negative responses.)

9          THE COURT:  Okay.  What I would like to do now --

10   as I mentioned to you, Ms. Page, I was going to start with

11   you.  I'm going -- first, let me ask you this.  How is

12   everybody doing?  Does anybody need a break?  If you do,

13   don't be shy.  Let me know.  I'm happy to accommodate you;

14   but if you can press on for a few more minutes, we'll make a

15   little bit more progress, start working through the

16   questionnaires.

17         Is everybody all right?

18         (Affirmative responses.)

19         THE COURT:  Thank you.

20         Ms. Page, you are the guinea pig, so to speak.

21         THE PROSPECTIVE JUROR:  Okay.

22         THE COURT:  You start first, and then the rest of

23   your jurors will be paying close attention, so that when it

24   becomes their turn, they'll be right on the mark and know

25   exactly what to do.

1         But what I want you to do is to introduce yourself,

2    tell us a little bit about your family, whether you're

3    married, you have children, what do you do for a living, how

4    long have you lived in the district.  And don't try to

5    remember all that.  I'll prompt you as you go along, but then

6    we're going to move down the line and learn a little bit more

7    about each of you individually.

8         THE PROSPECTIVE JUROR:  My name is Julie Page, page

9    and I'm married to Greg Page.  We have three daughters, ages

10   21, 20 and 17.  I was a registered nurse for six years before

11   I had children and decided to stay home with the kids.

12        And my husband's an attorney.  He's a civil

13   litigator here in Orlando.  And we've lived in Maitland for

14   almost 25 years.

15        THE COURT:  Great.  Your husband is Greg Page of

16   Page and Eichenblatt?

17        THE PROSPECTIVE JUROR:  Yes, sir.

18        THE COURT:  And he does principally personal injury

19   work?

20        THE PROSPECTIVE JUROR:  Yes.

21        THE COURT:  Anything about the fact that your

22   husband is a lawyer and does that kind of work that you think

23   would influence your ability to be fair and impartial in this

24   criminal case?

25        THE PROSPECTIVE JUROR:  No, it does not.

1          THE COURT:  Okay.  You probably know a little bit

2     more about this than most of your colleagues, but I'm going

3     to cover it with them, that this is a criminal case; and one

4     of the most significant differences between a criminal case

5     and a civil case is that in a criminal case, the government

6     has the burden of proving the defendant's guilt beyond a

7     reasonable doubt.  There's a different standard in a civil

8     case.

9          Do you understand that this case involves proof

10    beyond a reasonable doubt.

11         THE PROSPECTIVE JUROR:  Yes, I do.

12         THE COURT:  Do you think you would be able to

13    follow my instructions in that respect?

14         THE PROSPECTIVE JUROR:  Yes, I do.

15         THE COURT:  Okay.  And let's see.  You have some

16    older children, it looks like, 21, 20 and 17.  Two are in

17    college and one in high school?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  What are your college students

20    studying?

21         THE PROSPECTIVE JUROR:  My oldest is studying

22    English education, and my second oldest is studying

23    elementary education.

24         THE COURT:  Okay.

25         THE PROSPECTIVE JUROR:  And my third is still in

1    high school.

2              THE COURT:  And you've had no prior jury service

3    yourself?

4              THE PROSPECTIVE JUROR:  No, I have not.

5              THE COURT:  Okay.  It looks like you have a close

6    friend, Mr. Brown, who works at the Orange County Sheriff's

7    Office.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Is there anything about your

10   relationship with Mr. Brown and his employment with the

11   sheriff's office that you think would influence you

12   negatively in terms of your ability to be fair?

13             THE PROSPECTIVE JUROR:  No, I do not.

14             THE COURT:  Do you think you could listen to the

15   testimony of the law enforcement officers and weigh it just

16   as you would the testimony of any other witness?

17             THE PROSPECTIVE JUROR:  Yes, I do.

18             THE COURT:  Okay.  Thank you, Ms. Page.  If you'll

19   pass the microphone to your right, then we'll visit with Ms.

20   Ingersoll.

21             Good morning, Ms. Ingersoll.

22             THE PROSPECTIVE JUROR:  Good morning.  My name is

23   Denise Ingersoll.  I'm married to Charles Ingersoll for 33

24   years.  I have a boy and a girl, 30 and 31.

25             I work for the Division of Motor Vehicles for 28

1   years, and my husband is in air conditioning.  And I've lived

2   in Florida since 1975.

3                THE COURT:  You have two grown children, it looks

4   like.

5                THE PROSPECTIVE JUROR:  Yes, sir.

6                THE COURT:  What do they do?

7                THE PROSPECTIVE JUROR:  One is in air conditioning

8   and my daughter is a stay-at-home girlfriend.

9                THE COURT:  Okay.

10               THE PROSPECTIVE JUROR:  I'm telling you.

11               THE COURT:  That may be the first time I've ever

12   heard that description.  I see that you have some prior jury

13   service, though.  It looks like you served in state court.

14               THE PROSPECTIVE JUROR:  Yes, sir, back a long time

15   ago, when the kids were five and six.

16               THE COURT:  Were you the foreperson of that jury?

17               THE PROSPECTIVE JUROR:  I was not.

18               THE COURT:  Were you able to work with your fellow

19   jurors and reach a verdict?

20               THE PROSPECTIVE JUROR:  We did.

21               THE COURT:  And was that a relatively positive

22   experience for you?

23               THE PROSPECTIVE JUROR:  Yes, it was.

24               THE COURT:  There's nothing about that experience

25   that would be a negative influence if you were asked to serve

1    again?

2                 THE PROSPECTIVE JUROR:  No, sir.

3                 THE COURT:  Thank you, Ms. Ingersoll.

4                 Good morning again, Ms. Shayka.

5                 THE PROSPECTIVE JUROR:  Good morning.

6                 THE COURT:  Tell us about yourself.

7                 THE PROSPECTIVE JUROR:  My name is Mary Ann Shayka.

8    I'm married to Robert Shayka.  We're both school teachers and

9    we have a child who's eight years old.

10                THE COURT:  Okay.  And no prior jury service for

11   you?

12                THE PROSPECTIVE JUROR:  No.

13                THE COURT:  Thank you, ma'am.  If you would, pass

14   the microphone to Ms. Finley.

15                Good morning, Ms. Finley.

16                THE PROSPECTIVE JUROR:  Good morning.  I'm Shannon

17   Finley.  I've lived in Florida for 33 years.  I'm the

18   director of marketing and public relations for a hospital

19   system in Volusia County.  And I do not have any children.

20                THE COURT:  Okay.  How long have you lived in the

21   district?

22                THE PROSPECTIVE JUROR:  Thirty-three years.

23                THE COURT:  And I see that you do have some prior

24   experience in state court.

25                THE PROSPECTIVE JUROR:  Yes.

1        THE COURT:  About how long ago was that?

2        THE PROSPECTIVE JUROR:  I think it was 2005 or

3    2006.

4        THE COURT:  Okay.  Those were some serious charges

5    as well.  Anything about that experience that was a negative?

6        THE PROSPECTIVE JUROR:  It was probably the most

7    traumatizing event of my life.

8        THE COURT:  All right.  Is there anything about

9    that experience -- I know it was very difficult for you --

10   that you think would cause you to be concerned about your

11   ability to be fair if you were seated as a juror in this

12   case?

13       THE PROSPECTIVE JUROR:  The previous case was very

14   graphic and there was nothing left of the person that was

15   murdered besides her hair extensions.  So, depending upon the

16   evidence presented, I think I would have a very difficult

17   time sitting through a trial if it's as graphic as that one.

18       THE COURT:  Okay.  Thank you, Ms. Finley.

19       Good morning again, Mr. Wehr.

20       THE PROSPECTIVE JUROR:  Good morning.

21       THE COURT:  Tell us about yourself.

22       THE PROSPECTIVE JUROR:  I'm Jimmy Wehr.  I'm a

23   freelance musician.  Married 20 years.  My wife is a high

24   school math teacher, and. . .

25       THE COURT:  How long have you lived here in the

57

```
 1   district?

 2              THE PROSPECTIVE JUROR:  Oh, I've been back since

 3   1993, since separating from the Air Force.

 4              THE COURT:  Okay.  And I see that you have some

 5   prior jury experience.

 6              THE PROSPECTIVE JUROR:  Yes.

 7              THE COURT:  It looks like civil cases.

 8              THE PROSPECTIVE JUROR:  Yeah, county, Seminole

 9   County.

10              THE COURT:  Did you hear me take a minute with Ms.

11   Page and explain the difference between a civil case and a

12   criminal case?

13              THE PROSPECTIVE JUROR:  Yes, I did.

14              THE COURT:  Do you think you could follow my

15   instructions and apply the standard that I tell you applies

16   in this case?

17              THE PROSPECTIVE JUROR:  Yes, I could.

18              THE COURT:  Anything about what you've heard so far

19   that gives you any pause about whether or not you could be

20   fair and impartial if you were seated?

21              THE PROSPECTIVE JUROR:  No.

22              THE COURT:  Okay.  Thank you, Mr. Wehr.

23              Good morning, Ms. Harris.

24              THE PROSPECTIVE JUROR:  Good morning.

25              THE COURT:  How are you this morning?
```

 1          THE PROSPECTIVE JUROR:  Just fine.  Thank you.

 2          THE COURT:  Good.  Tell us about yourself.

 3          THE PROSPECTIVE JUROR:  My name is Michelle Harris.

 4   I'm married to Robert Harris.  We have lived in the area for

 5   17 years.  I'm a software engineering manager at Lockheed

 6   Martin.  My husband also works at Lockheed Martin.  We have

 7   three children, ages 16, 14 and 13.

 8          THE COURT:  And you are a software engineer

 9   manager?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  What does that entail?

12          THE PROSPECTIVE JUROR:  We develop software

13   engineering programs.  So I manage the team of people that

14   develop the programs.

15          THE COURT:  Okay.  And does your husband work in a

16   different department?

17          THE PROSPECTIVE JUROR:  Yes, he does.

18          THE COURT:  And no prior jury experience for you?

19          THE PROSPECTIVE JUROR:  No, sir.

20          THE COURT:  Is there anything about what you've

21   heard so far that gives you any pause about whether or not

22   you could be fair and impartial if you were seated?

23          THE PROSPECTIVE JUROR:  No, sir.

24          THE COURT:  All right.  Thank you, Ms. Harris.

25          Good morning again, Ms. Schmitt.

| | |
|---|---|
| 1 | THE PROSPECTIVE JUROR:  Good morning. |
| 2 | THE COURT:  Tell us about yourself, please. |
| 3 | THE PROSPECTIVE JUROR:  My name is Sherry Schmitt. |
| 4 | I'm divorced.  I have three kids:  24, 20 and 18.  I teach |
| 5 | second grade.  I've lived in the area for 14 years. |
| 6 | THE COURT:  Okay.  And if you told me, I missed it. |
| 7 | I'm sorry.  Are you currently employed? |
| 8 | THE PROSPECTIVE JUROR:  Yes, I am. |
| 9 | THE COURT:  And what does your husband do for a |
| 10 | living? |
| 11 | THE PROSPECTIVE JUROR:  I'm divorced. |
| 12 | THE COURT:  Okay.  And when you were married, what |
| 13 | did your husband do? |
| 14 | THE PROSPECTIVE JUROR:  He was a software person. |
| 15 | He tried to break the programs.  I don't know what it's |
| 16 | called. |
| 17 | THE COURT:  Okay.  And tell me a little bit about |
| 18 | your children.  Where are they and what are they doing? |
| 19 | THE PROSPECTIVE JUROR:  My daughter lives out in |
| 20 | Tulsa, Oklahoma.  She works as, like, a supervisor in a movie |
| 21 | theater. |
| 22 | My 20-year-old son is at home with me.  He's set to |
| 23 | take courses at Seminole coming the winter months. |
| 24 | And my youngest son just graduated from high school |
| 25 | last year and he's staying with his dad, and he's going to be |

1    starting at Valencia in the winter.

2              THE COURT:  Okay.  I see you have some prior jury

3    experience.

4              THE PROSPECTIVE JUROR:  Yes, I do.

5              THE COURT:  Were those criminal cases?

6              THE PROSPECTIVE JUROR:  I believe so.

7              THE COURT:  Okay.  Were you able to reach a

8    verdict?

9              THE PROSPECTIVE JUROR:  Yes, we were.

10             THE COURT:  Was that a positive experience, more or

11   less?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  Is there anything about that

14   that you think would be a negative factor in terms of your

15   ability to be fair if you were seated as a juror in this

16   case?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  You were not the foreperson; is that

19   right?

20             THE PROSPECTIVE JUROR:  No, I was not.

21             THE COURT:  Okay.  Thank you, Ms. Schmitt.

22             Good morning again, Ms. Foederer.

23             THE PROSPECTIVE JUROR:  Good morning.

24             THE COURT:  Tell us about yourself, please, ma'am.

25             THE PROSPECTIVE JUROR:  My name is Sara Foederer.

1    I'm married to Nicholas Foederer.  We don't have any

2    children.  I've been in Florida since 1999.

3            I work as a licensed mental health counselor on a

4    psych unit with children.  Prior to that, I was a juvenile

5    probation officer for about seven years.

6            My husband currently works building telescopic

7    masts for mobile command vehicles and such.

8            THE COURT:  Now, in your work as a juvenile

9    probation officer, did you have occasion to come into contact

10   with law enforcement from time to time?

11           THE PROSPECTIVE JUROR:  Yes, along with being in

12   the court system quite often.

13           THE COURT:  Okay.  Is there anything about that

14   experience that you think would make it difficult for you to

15   be fair and impartial in evaluating the evidence in this

16   case?

17           THE PROSPECTIVE JUROR:  No, I do not.

18           THE COURT:  All right.  Do you think that you would

19   be able to give Mr. Adleta a fair shake and evaluate the

20   testimony in a fair and impartial way?

21           THE PROSPECTIVE JUROR:  I would.

22           THE COURT:  All right.  And the same for the

23   government?  Do you think you would be able to give the

24   government a fair assessment of the quality of their case?

25           THE PROSPECTIVE JUROR:  Yes.

1            THE COURT:  Okay.  Thank you, ma'am.

2            Good morning, Ms. Laverde.  Tell us about yourself

3    please.

4            THE PROSPECTIVE JUROR:  Good morning.  I have been

5    married for 21 years.  My husband is Luis Laverda.  He work

6    for Snack Time Vending Machines.  He's a supervisor/driver.

7            We have two daughters.  The oldest is 29.  She

8    works at emergency room in Orlando Regional Hospital.  And my

9    younger is 21 and she just starting U.C.F.

10           THE COURT:  And it looks like that you have

11   previously been on a jury in state court.  Is that right?

12           THE PROSPECTIVE JUROR:  Yes, Orange County.  I was

13   called, but I wasn't picked.

14           THE COURT:  Okay.  All right.  Thank you very much.

15           THE PROSPECTIVE JUROR:  You're welcome.

16           THE COURT:  Good morning again, Ms. Olsen.  Tell us

17   a little bit about yourself, please.

18           THE PROSPECTIVE JUROR:  My name is Dana Olsen.

19   I've lived in Florida my whole life.  I work at a hotel.  I'm

20   not married.

21           THE COURT:  What do you do for -- it looks like you

22   work at the Hilton in Cocoa Beach.

23           THE PROSPECTIVE JUROR:  Uh-huh.  I work at the

24   front desk.

25           THE COURT:  How long have you been doing that?

```
 1              THE PROSPECTIVE JUROR:  Most of my life.

 2              THE COURT:  Okay.  From looking at you, that's not

 3   all that long.

 4              THE PROSPECTIVE JUROR:  Well, I'm 30.

 5              THE COURT:  No prior jury service for you?

 6              THE PROSPECTIVE JUROR:  No.

 7              THE COURT:  Okay.  Is there anything that you've

 8   heard to this point that makes you question your ability to

 9   be fair and impartial if you were seated as a juror in this

10   case?

11              THE PROSPECTIVE JUROR:  No.

12              THE COURT:  Thank you, Ms. Olsen.

13              THE PROSPECTIVE JUROR:  Thank you.

14              THE COURT:  If you would, pass the microphone up.

15   Let's see.  We are going to need to go down to the other end,

16   I think.

17              THE PROSPECTIVE JUROR:  My name is Shawan Tookes-

18   Oladeji.  I'm married with two children.  I have a

19   four-year-old and an eleven-year-old.  I work in a skilled

20   nursing facility, also known as a nursing home, as a speech

21   therapist.  I'm married.

22              THE COURT:  What's your husband do for work?

23              THE PROSPECTIVE JUROR:  Well, he's self-employed

24   right now.

25              THE COURT:  In what sort of industry or business?
```

64

1             THE PROSPECTIVE JUROR:  Engineer.

2             THE COURT:  Okay.  And let's see.  You've got a

3    four-year-old and he or she is in preschool?

4             THE PROSPECTIVE JUROR:  Yes, that's correct.

5             THE COURT:  And then a middle schooler as well?

6             THE PROSPECTIVE JUROR:  Yes, that's correct.

7             THE COURT:  And it looks like you've had some prior

8    experience in a state court criminal case.  Is that right?

9             THE PROSPECTIVE JUROR:  It was one of those Orange

10   County-type cases.

11            THE COURT:  Right.  And did you -- were you all

12   able to reach a verdict?

13            THE PROSPECTIVE JUROR:  Yes.

14            THE COURT:  Is there anything about that experience

15   that was negative as far as your ability to be fair if you

16   were seated as a juror in this case?

17            THE PROSPECTIVE JUROR:  I was just uncomfortable

18   about the whole situation; but, you know, if you get picked,

19   you get picked; but I wasn't very comfortable about it.

20            THE COURT:  All right.  In what respect were you

21   not comfortable?  Did you not like being asked to make a

22   judgment or did you not enjoy your fellow jurors or was there

23   something about the judge you didn't like?  Tell me a little

24   bit more about why you were uncomfortable.

25            THE PROSPECTIVE JUROR:  Just -- it wasn't anything

1   about the jurors.  It was just, you know, the case situation

2   and, you know, that type of thing.

3             THE COURT:  It's a big responsibility to make a

4   judgment about someone else's life.

5             THE PROSPECTIVE JUROR:  Yes, it had to do with

6   that, too.

7             THE COURT:  Okay.  If you were asked to sit as

8   juror in this case, do you think that you could do it and

9   render a verdict that was fair and impartial to both sides?

10            THE PROSPECTIVE JUROR:  Well, I would do my best,

11  but I'd be uncomfortable.

12            THE COURT:  Okay.  Well, as I said, it's a big

13  responsibility.  I have told everybody downstairs when I met

14  with you it's probably the biggest responsibility that most

15  people have as a citizen during the course of their lives, is

16  to sit in judgment in a case like this.  But our system can't

17  flourish and it can't survive unless we have folks that are

18  willing to do it.

19            So I'm not trying to give you a hard time or to

20  question what you're telling me.  I just want to know whether

21  that natural uncomfortableness you have is something that you

22  think you'll be able to put aside and get over and do the

23  work of the jury?

24            THE PROSPECTIVE JUROR:  I'll try.

25            THE COURT:  Okay.  I appreciate that.  Tell me how

1    to pronounce your name again.

2              THE PROSPECTIVE JUROR:  Sha-wan Tooks O-lad-a-je.

3              THE COURT:  Thanks, Ms. Oladeji.

4              Good morning, Mr. Cohen.

5              THE PROSPECTIVE JUROR:  Good morning, Your Honor.

6              THE COURT:  How are you?

7              THE PROSPECTIVE JUROR:  I'm well, sir.

8              THE COURT:  Good.  Tell us a little bit about

9    yourself.

10             THE PROSPECTIVE JUROR:  My name is Michael Cohen.

11   I'm 53 years old.  I've been married forever to a wonderful

12   wife.  I have two daughters.  They are 30 and 31.  My

13   youngest daughter is an AutoCAD designer, and my oldest

14   daughter is an assistant to a neurosurgeon, and I'm in the

15   building supply business.  And I was born and raised right

16   here in Central Florida.

17             THE COURT:  All right.  Does your wife work outside

18   the home?

19             THE PROSPECTIVE JUROR:  She works for Brevard

20   County School Board.

21             THE COURT:  What does she do for them?

22             THE PROSPECTIVE JUROR:  She's in the food service.

23             THE COURT:  Okay.  No prior jury service for you?

24             THE PROSPECTIVE JUROR:  No, sir, Your Honor.

25             THE COURT:  Is there anything you've heard this

1    morning that makes you uncomfortable about or concerned about

2    your ability to be fair and impartial if you were seated?

3                    THE PROSPECTIVE JUROR:  No, sir, Your Honor.

4                    THE COURT:  All right.  Thank you, Mr. Cohen.

5                    Good morning again, Ms. Ojeda.

6                    THE PROSPECTIVE JUROR:  O-hay-de.

7                    THE COURT:  Ms. Ojeda.  Tell us about yourself.

8                    THE PROSPECTIVE JUROR:  My name is Aurea Ojeda, and

9    I am a property manager and I've been in the business for 15

10   years; and I've been here in Florida also 15 years, because I

11   come from up north.

12                   I have custody of my niece.  And I am married.  As

13   a matter of fact, I just turned a year this August and his

14   name is Victor Ponce, and he works as a warehouse forklift

15   driver.

16                   THE COURT:  Okay.  And no prior jury service for

17   you?

18                   THE PROSPECTIVE JUROR:  No, sir.

19                   THE COURT:  All right.  Is there anything that

20   you've heard this morning that makes you concerned about your

21   ability to be fair if you were seated here?

22                   THE PROSPECTIVE JUROR:  No, sir.

23                   THE COURT:  All right.  Thank you, ma'am.

24                   THE PROSPECTIVE JUROR:  Good morning.  My name is

25   Deborah McLaughlin.  I'm married to John McLaughlin.  I've

lived in Florida for 30 years.  I'm an R.N. at -- a critical care nurse at a hospital here in Orange County.  It is my third career.

And I have two children, 26 and 25.  My son graduated from F.S.U. and is a computer programmer that manages global inventories, and my daughter just graduated from U.F. Levin School of Law.  Go Gators.

THE COURT:  Where were you on Saturday?  We could have used your help on Saturday.

THE PROSPECTIVE JUROR:  Right.  She started today in a law firm in Jacksonville.

THE COURT:  Great.  What law firm is she with in Jacksonville?

THE PROSPECTIVE JUROR:  Gunster.

THE COURT:  Okay.  And does she know what kind of work she's going to be doing?

THE PROSPECTIVE JUROR:  No.

THE COURT:  Is there anything about your daughter's experience in law school -- I'm not sure if I asked this question, but I may have touched on it.  Is there anything about your daughter's experience in law school that you think would influence you in any way in terms of your ability to be fair and impartial?

THE PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Thank you, ma'am.

1          No prior -- you served as a grand juror.  That's

2     right.

3          THE PROSPECTIVE JUROR:  Yeah, it was very

4     interesting.  It was quite an experience.

5          THE COURT:  That's a big responsibility as well.

6          For those of you that don't know the difference

7     between a grand jury and a petit jury is that a grand jury is

8     a larger group of people, usually 16 to 23, that they hear

9     presentations in federal court from the United States

10    Attorney's Office and make a decision as to whether or not

11    there is probable cause to believe that a crime has been

12    committed and that a particular individual or individuals may

13    have committed it, and then the prosecution goes forward from

14    there.

15         A petit jury's function is much different.  A petit

16    jury makes a decision as to whether or not the government in

17    a particular case has proven a defendant's guilt beyond a

18    reasonable doubt in order to sustain a conviction.  So those

19    are the differences or at least some of the differences.

20         Is there anything about your grand jury experience,

21    Ms. McLaughlin, that was in any way a negative factor that

22    you think might influence you adversely if you were seated as

23    a juror here?

24         THE PROSPECTIVE JUROR:  No, sir.

25         THE COURT:  All right.  Do you understand the

```
 1    difference that I just described between what a grand jury
 2    does and what a petit jury does?
 3                THE PROSPECTIVE JUROR:  Absolutely.
 4                THE COURT:  And could you follow my instructions in
 5    that respect?
 6                THE PROSPECTIVE JUROR:  Yes, sir.
 7                THE COURT:  Okay.  Thank you very much.
 8                Good morning.  Is it Pa-zet?
 9                THE PROSPECTIVE JUROR:  Yes, it is.
10                THE COURT:  How are you this morning?
11                THE PROSPECTIVE JUROR:  Fine.
12                THE COURT:  Tell us about yourself, please, ma'am.
13                THE PROSPECTIVE JUROR:  I'm Karen Pizette.  I am
14    currently retired.  When I was working, I was a school
15    administrator.  I was the math director in a Boston suburb
16    school system.
17                THE COURT:  All right.
18                THE PROSPECTIVE JUROR:  I have two children.
19    They're both grown.
20                THE COURT:  And let's see.  What does your husband
21    do?
22                THE PROSPECTIVE JUROR:  My husband is also retired.
23    He was an electrical engineer.
24                THE COURT:  And do your children do for work?
25                THE PROSPECTIVE JUROR:  My son works for Princeton
```

71

1    University.  He's in charge of information technology at

2    Princeton.  And my daughter is a medical receptionist.

3              THE COURT:  Okay.  And no prior jury experience for

4    you?

5              THE PROSPECTIVE JUROR:  I was called for a jury.

6    It was a domestic violence case; and just prior to the final

7    selection, the woman dropped the charge and we were all sent

8    home.

9              THE COURT:  Okay.  Thank you, Ms. Pizette.

10             Good morning again, Mr. -- it's McWhorton, right?

11             THE PROSPECTIVE JUROR:  How are you doing?

12             THE COURT:  Good.  McWhorter.

13             THE PROSPECTIVE JUROR:  Phil McWhorter.  I've been

14   married for 31 years to my wife, Kim.  I've been a plumber

15   for 35 years.

16             I have a 26-year-old daughter, a 28-year-old son,

17   and a two-year-old grandbaby.

18             THE COURT:  Okay.  And your wife is a preschool

19   teacher?

20             THE PROSPECTIVE JUROR:  Yes, she is.

21             THE COURT:  No prior jury service for you?

22             THE PROSPECTIVE JUROR:  I'm sorry?

23             THE COURT:  No prior jury service for you?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  Thank you, Mr. McWhorter.

1          Hello again, Mr. Koshlap.

2          THE PROSPECTIVE JUROR:  Good morning, sir.  My name

3    is Kelly Koshlap.  I'm 43 years old.  I moved to Florida four

4    years ago with my wife and three beautiful daughters.

5    They're eight, eight and ten.

6          THE COURT:  Okay.  And I see that you're a pilot by

7    training.  Is that right?

8          THE PROSPECTIVE JUROR:  Yes, sir.

9          THE COURT:  And does your wife work outside the

10   home?

11         THE PROSPECTIVE JUROR:  She is a P.T.O.  That's

12   where she works.  She doesn't get paid, but she's in the

13   P.T.O.

14         THE COURT:  All right.  And no prior jury

15   experience?

16         THE PROSPECTIVE JUROR:  I was called to serve in

17   Brevard County, but was released before -- after a few hours.

18         THE COURT:  Is there anything you've heard this

19   morning that gives you any concern about your ability to be

20   fair and impartial if you were seated as a juror in this

21   case?

22         THE PROSPECTIVE JUROR:  No, sir.

23         THE COURT:  Thank you, sir.  If you'll pass the

24   microphone, we'll speak with Mr. -- is it Rapovich?

25         THE PROSPECTIVE JUROR:  Yes.

```
 1              THE COURT:  How are you?

 2              THE PROSPECTIVE JUROR:  Fine.  Thank you.

 3              THE COURT:  Good.

 4              THE PROSPECTIVE JUROR:  My name is Don Rapovich.

 5    My wife Joanie and I have been married for 13 years and we

 6    moved to Florida in June of '05.  And I'm retired.  We're

 7    both retired.

 8              THE COURT:  All right.  And I see that you did some

 9    time in the Army in Vietnam.  Is that right?

10              THE PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Thank you for your service.

12              THE PROSPECTIVE JUROR:  Thank you.

13              THE COURT:  No prior jury experience?

14              THE PROSPECTIVE JUROR:  No.

15              THE COURT:  Is there anything that you've heard

16    this morning that gives you any worries about your ability to

17    be fair?

18              THE PROSPECTIVE JUROR:  No.

19              THE COURT:  Thank you, sir.

20              Good morning again, Mr. Prevalus.  I know you told

21    us that you struggle a little bit with the language.

22              THE PROSPECTIVE JUROR:  Yes, I do.

23              THE COURT:  I haven't forgotten that, but tell us a

24    little bit about yourself anyway.

25              THE PROSPECTIVE JUROR:  My name is Wilfrid
```

74

1    Prevalus.  I been in Orange County for more than 25 years.  I

2    work for Double Tree Hotel as receiving, housekeeping

3    receiving.

4              THE COURT:  Okay.  And no prior jury service?

5              THE PROSPECTIVE JUROR:  I've been called, I think,

6    twice, but I never get a chance to pick.

7              THE COURT:  Thank you, Mr. Prevalus.

8              THE PROSPECTIVE JUROR:  You're welcome, sir.

9              THE COURT:  Good morning, Mr. -- is it Rad-zi?  Did

10   I pronounce that correctly.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Tell us about yourself.

13             THE PROSPECTIVE JUROR:  I'm J.T. Radzai.  I'm 25

14   years old.  I'm a graduate student at U.C.F.  I'm learning

15   interactive entertainment, which is basically game design.

16             THE COURT:  Where is home originally?

17             THE PROSPECTIVE JUROR:  Orlando.  I'm from here.

18             THE COURT:  You grew up here?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  And no prior jury experience for you?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Is there anything you've heard this

23   morning, Mr. Radzai, that makes you worried or concerned

24   about your ability to be fair?

25             THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Okay.  Thank you, sir.  If you'll give

2     the microphone to Mr. Fiorenza, we'll pass it back down to

3     the other end.

4          Hello again, Mr. Cole.  Tell us about yourself,

5     please, sir.

6          THE PROSPECTIVE JUROR:  My name is Eugene Cole.

7     I'm a professional chef.  I live in Rockledge, Florida.  I've

8     been married to my wife, Rosetta Cole, for 21 years.

9          THE COURT:  Okay.  And it looks like you have one

10    grown child.  Is that right?

11         THE PROSPECTIVE JUROR:  Yes, sir.

12         THE COURT:  And is that a boy or a girl?

13         THE PROSPECTIVE JUROR:  It's a girl.  She's 28.

14         THE COURT:  What does she do?

15         THE PROSPECTIVE JUROR:  She's into food service

16    also.

17         THE COURT:  And does she work in this area?

18         THE PROSPECTIVE JUROR:  Yes.  Cocoa.  Cocoa,

19    Florida, Brevard County.

20         THE COURT:  Okay.  And it looks like you were

21    previously in the Army.

22         THE PROSPECTIVE JUROR:  Yes, sir.

23         THE COURT:  What did you do in the Army?

24         THE PROSPECTIVE JUROR:  I was a food inspector.

25         THE COURT:  Okay.  Thank you for your service.

76

```
 1                THE PROSPECTIVE JUROR:  Thank you.

 2                THE COURT:  No prior jury service, though?

 3                THE PROSPECTIVE JUROR:  No, sir.

 4                THE COURT:  Okay.  Is there anything you've heard

 5     this morning that makes you concerned that you might not be

 6     able to be fair if you were picked as a juror in this case?

 7                THE PROSPECTIVE JUROR:  No.

 8                THE COURT:  Thank you, Mr. Cole.

 9                Good morning, Ms. Kolba.  How are you?  You almost

10     disappeared down there.  I could barely see you.

11                Tell us about yourself.

12                THE PROSPECTIVE JUROR:  My name is Anna Kolba.

13     We're in Florida for eight years.  We moved from New Jersey.

14     We love Florida.  And my husband and I have a son who's 44

15     and a daughter who's 43 and a grandson who's four.

16                THE COURT:  They're fun, aren't they?

17                THE PROSPECTIVE JUROR:  Yes.

18                THE COURT:  Have you served as a juror before?  It

19     looks like you did some --

20                THE PROSPECTIVE JUROR:  Yes, I did.

21                THE COURT:  Tell me a little bit about that.  You

22     don't need to tell me what verdict you reached, but tell me

23     what kind of case it was.

24                THE PROSPECTIVE JUROR:  I don't remember.

25                THE COURT:  How long ago was it?
```

 1            THE PROSPECTIVE JUROR:  I don't remember that

 2     either.  I've had chemo treatment, and some of my memory

 3     comes and goes.  So it's hard for me to say.

 4            THE COURT:  Okay.  Do your memory issues give you

 5     any pause or give you any concern about whether or not you'd

 6     be able to listen to the evidence in this case and comprehend

 7     things and to render a verdict?

 8            THE PROSPECTIVE JUROR:  I don't know.

 9            THE COURT:  Okay.  And did you tell me what your

10     husband -- you've mentioned he's retired.  What did he do

11     when he was working?

12            THE PROSPECTIVE JUROR:  He was an electrical

13     engineer.

14            THE COURT:  Okay.  Thank you, ma'am.

15            Good morning.  Is it Alvanzo?

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  How are you, Ms. Alvanzo?

18            THE PROSPECTIVE JUROR:  I'm fine.  Thanks.  My name

19     is Sharon Alvanzo.  I was born in Honduras.  My family moved

20     here when I was a year.  I've lived in Florida for twelve

21     years.

22            I'm divorced.  I have about 17 years' experience in

23     human resources as an H.R. manager.  I'm currently working as

24     a corporate recruiter.

25            I have no children.  As I mentioned, I'm divorced.

1    I'm a foster mom.  I've been a foster mother for six years.

2    Currently, I have a little one.  He's four.  He'll be five on

3    Saturday, and that's it.

4              THE COURT:  All right.  Well, that's a great cause

5    that you give your time to, being a foster parent.  That's

6    got to be difficult to take children in and then get attached

7    to them and then have to pass them on.  So I commend you for

8    your willingness to do that.

9              It looks like you were previously a juror in a

10   state court proceeding.  Is that right?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Were you all able to reach a verdict?

13             THE PROSPECTIVE JUROR:  Yes, we were.

14             THE COURT:  Do you remember if that was a civil or

15   a criminal case?

16             THE PROSPECTIVE JUROR:  It was civil.

17             THE COURT:  Did you hear what I talked to Ms. Page

18   about, the difference between the burden of proof in a civil

19   case and a criminal case?

20             THE PROSPECTIVE JUROR:  Yes, sir.

21             THE COURT:  If I instruct you that the burden in a

22   criminal case is for the government to prove its case beyond

23   a reasonable doubt, will you be able to follow my

24   instructions?

25             THE PROSPECTIVE JUROR:  Absolutely.

1           THE COURT:  Is there anything about your prior jury

2     experience that was a negative influence, at least in terms

3     of your ability to be fair if you were seated here?

4           THE PROSPECTIVE JUROR:  No.  It was positive.

5           THE COURT:  Thank you, ma'am.

6           Good morning again, Ms. Wadsworth.

7           THE PROSPECTIVE JUROR:  Good morning.

8           THE COURT:  Tell us about yourself, please.

9           THE PROSPECTIVE JUROR:  I've been married eleven

10    years to Dan Wadsworth, who is a driver for U.P.S.  And I

11    serve on staff at River Run Christian Church as a pastor, and

12    I'm the director of women's ministries and I oversee our life

13    groups ministries.

14          THE COURT:  Okay.  And you've been doing that, it

15    looks like, seven years or so.

16          THE PROSPECTIVE JUROR:  Yeah.  I think I'm going

17    into my eighth year.

18          THE COURT:  Okay.  Then I can't quite make out what

19    that was before you went -- it looks like director of

20    operations.

21          THE PROSPECTIVE JUROR:  For Interactive Technology

22    Company.

23          THE COURT:  Okay.  And what did that work entail?

24          THE PROSPECTIVE JUROR:  It was mostly project

25    manager, overseeing projects, multiple projects that our

80

1    company was involved in.  Mostly staffing, organizing,

2    planning.

3              THE COURT:  Okay.  And then I can't quite make out.

4    Prior to that, was that events?

5              THE PROSPECTIVE JUROR:  My handwriting is horrible.

6    I apologize.

7              THE COURT:  That's all right.  I'm right there with

8    you.  So don't feel bad.

9              THE PROSPECTIVE JUROR:  I served in concert and

10   events production.

11             THE COURT:  Okay.  And let's see.  You've got a

12   grown child, it looks like.

13             THE PROSPECTIVE JUROR:  He's 21 years old, yes.

14             THE COURT:  And what does he do?

15             THE PROSPECTIVE JUROR:  He is a student at Seminole

16   State College.

17             THE COURT:  Okay.  What's he studying?

18             THE PROSPECTIVE JUROR:  He is working towards an

19   aeronautical engineering degree.

20             THE COURT:  Okay.  And it looks like no prior jury

21   experience.  You've been called but haven't been selected?

22             THE PROSPECTIVE JUROR:  Called many times, never

23   selected.

24             THE COURT:  Okay.  And we talked about your

25   brother's circumstance previously?

81

```
 1                THE PROSPECTIVE JUROR:  Yes.

 2                THE COURT:  Thank you, ma'am.

 3                THE PROSPECTIVE JUROR:  Thank you.

 4                THE COURT:  Hello again, Ms. Deida.

 5                THE PROSPECTIVE JUROR:  Yes.  Hello.

 6                THE COURT:  Tell us about yourself, please.

 7                THE PROSPECTIVE JUROR:  I've been here for 20

 8    years.  I come from Puerto Rico.  Almost -- I have half of my

 9    family in Puerto Rico.  The other half is here.  My husband

10    work for -- I married to Hector Deida.  He work for Walt

11    Disney World, and I have a 14 years old.

12                THE COURT:  Okay.  Great.  And it looks like you

13    did serve on a jury once before in state court.

14                THE PROSPECTIVE JUROR:  Yes.

15                THE COURT:  And did you have any problems in that

16    proceeding in terms of understanding the language or were you

17    able to get by?

18                THE PROSPECTIVE JUROR:  Yes.  At that time I say --

19    when I spoke with the judge and the lawyers, they were --

20    they told me if I have any questions or they have to repeat

21    something, just have to raise my right hand and they will be

22    able to help me.

23                THE COURT:  Okay.  And is that something -- if we

24    were to give you the same accommodation, do you think you

25    could do that here?
```

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  Okay.  Other than your worry about

3    being able to keep up with the language, is there anything

4    you've heard this morning that makes you worry about your

5    ability to be fair if you're seated as a juror in this case?

6            THE PROSPECTIVE JUROR:  No, Your Honor.

7            THE COURT:  Thank you, ma'am.

8            THE PROSPECTIVE JUROR:  Thank you.

9            THE COURT:  Good morning.  Is it Sparks?

10            THE PROSPECTIVE JUROR:  Yes.

11            THE COURT:  How are you, Mr. Sparks?

12            THE PROSPECTIVE JUROR:  Fine.

13            THE COURT:  Tell us about yourself.

14            THE PROSPECTIVE JUROR:  I'm Ward Sparks.  I've been

15    married almost 49 years.  We've lived in Florida 37 years.

16            THE COURT:  And you are retired from electrical

17    engineering?

18            THE PROSPECTIVE JUROR:  Yes.

19            THE COURT:  Did you work with a firm?

20            THE PROSPECTIVE JUROR:  Rockwell Collins.

21            THE COURT:  Okay.  And did you have a specialty?

22    What type of -- how did you engage yourself as an electrical

23    engineer?

24            THE PROSPECTIVE JUROR:  I was a design engineer,

25    designed instrument landing systems, navigation systems.

83

1          THE COURT:  And how long have you lived here in the

2     district?

3          THE PROSPECTIVE JUROR:  Thirty-seven years.

4          THE COURT:  And I see you have some prior

5     experience in the Navy.

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  And what did you do when you were in

8     the Navy?

9          THE PROSPECTIVE JUROR:  I was an electronic tech.

10         THE COURT:  Well, thank you for your service.

11         THE PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  Some prior jury experience, it looks

13     like, also.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Tell me a little bit about that.

16         THE PROSPECTIVE JUROR:  It was civil, medical

17     malpractice.

18         THE COURT:  Were you and your fellow jurors able to

19     reach a verdict?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  And was there anything about that

22     experience that was a negative in terms of your ability to be

23     fair if you are seated here?

24         THE PROSPECTIVE JUROR:  No.  I only wish I could

25     ask questions.

84

1          THE COURT:  Okay.  You feel like you had some

2   questions that were unanswered during the course of the

3   trial?

4          THE PROSPECTIVE JUROR:  Yes.  The lawyers would

5   lead you up to a certain point and then you can anticipate

6   the next question, but they never ask it.

7          THE COURT:  Okay.

8          THE PROSPECTIVE JUROR:  It was kind of frustrating.

9          THE COURT:  Okay.  Thank you, Mr. Sparks.

10          Good morning, Ms. Warriner.  Is that right?

11          THE PROSPECTIVE JUROR:  It's War-ah-ner.

12          THE COURT:  War-ah-ner.  How are you?

13          THE PROSPECTIVE JUROR:  Fine.

14          THE COURT:  Tell us about yourself, please, ma'am.

15          THE PROSPECTIVE JUROR:  My name is Jean Warriner.

16   I'm married to Charles Warriner for over 28 years.  I work

17   for Boeing as a finance analyst.  My husband is a software

18   administrator for Lockheed Martin.

19          We have two children.  My son is 21, studying in

20   Tallahassee; and my daughter is 23.  She graduated U.C.F.

21   She's working in events and sales in a hotel in Cocoa.

22          THE COURT:  Great.  No prior jury experience?

23          THE PROSPECTIVE JUROR:  Selected -- called to serve

24   but not selected.

25          THE COURT:  Okay.

1                THE PROSPECTIVE JUROR:  County.

2                THE COURT:  How about you, is there anything you've

3    heard this morning that makes you concerned or worried about

4    your ability to be fair if you were seated?

5                THE PROSPECTIVE JUROR:  No, sir.

6                THE COURT:  Okay.  Thank you, Ms. Warriner.

7                Good morning again, Ms. Daniels.

8                THE PROSPECTIVE JUROR:  Good morning.

9                THE COURT:  Tell us about yourself.

10               THE PROSPECTIVE JUROR:  My name is Paula Daniels.

11   I am a financial analyst out at Cape Canaveral.

12               I have two children, a 27-year-old, recent graduate

13   from Florida A&M in health administrative services.  She's

14   currently working as a temp with Med Solutions.

15               I have -- I think she's nine, elementary, a fourth

16   grader.

17               THE COURT:  Okay.

18               THE PROSPECTIVE JUROR:  I have a granddaughter,

19   VPK, first year; and a grandson in the second grade.

20               THE COURT:  Okay.

21               THE PROSPECTIVE JUROR:  And a dog named Jackson.

22               THE COURT:  Great.  It sounds like a busy

23   household.

24               THE PROSPECTIVE JUROR:  Very.

25               THE COURT:  I see that you served as a juror in a

1   drug case, it looks like, in state court.

2           THE PROSPECTIVE JUROR:  It was county, Brevard

3   County.

4           THE COURT:  Brevard County.  Okay.  And did you all

5   reach a verdict or it looks like maybe something happened

6   before you got to a verdict?

7           THE PROSPECTIVE JUROR:  We got ready to deliberate

8   or whatever.  They called us back the next day.  They decided

9   that they were going to enter a plea deal.

10          THE COURT:  All right.  Do you understand in this

11  case that the defendant has entered a plea of not guilty and

12  is asking the government to prove its case and that that's

13  his right, and it's also the right of the government to put

14  its evidence on, and the parties aren't required to reach any

15  kind of an agreement?  That's what a jury trial is all about.

16  Do you have any problem with that?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  All right.  You don't feel like either

19  side should be punished or penalized because they're asking

20  you all to make the decision?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Okay.  Thank you, ma'am.

23          Is there anything that you've heard that makes you

24  concerned about your ability to be fair?

25          THE PROSPECTIVE JUROR:  No.

87

```
 1              THE COURT:  All right.  Thank you.

 2              Good morning, Ms. Bush.

 3              THE PROSPECTIVE JUROR:  Good morning.

 4              THE COURT:  How are you?

 5              THE PROSPECTIVE JUROR:  Fine.

 6              THE COURT:  Good.  Tell us about yourself.

 7              THE PROSPECTIVE JUROR:  My name is Erin Bush.  I've

 8     been married for Tom Bush for 16 years, living in Orlando for

 9     16 years.  I'm currently not employed, but I was previously a

10     teacher for 16 years.

11              THE COURT:  Where did you teach?

12              THE PROSPECTIVE JUROR:  I taught in Orange County

13     for seven years and then at a Catholic school for nine.

14              THE COURT:  What subject matter?

15              THE PROSPECTIVE JUROR:  Everything.

16              THE COURT:  Okay.

17              THE PROSPECTIVE JUROR:  My husband is a self-

18     employed architect.  And I have two sons, eleven and 13 years

19     old, both Boy Scouts.

20              THE COURT:  Okay.  And you've lived in the district

21     for a long time?

22              THE PROSPECTIVE JUROR:  Sixteen years.

23              THE COURT:  It looks like you have some prior jury

24     experience in state court.

25              THE PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  Were those civil cases or criminal
 2    cases?
 3              THE PROSPECTIVE JUROR:  Criminal.
 4              THE COURT:  Both criminal?
 5              THE PROSPECTIVE JUROR:  Yes.
 6              THE COURT:  Is there anything about that experience
 7    that was negative that might influence you in terms of your
 8    ability to be fair in this case?
 9              THE PROSPECTIVE JUROR:  No.
10              THE COURT:  You were not the foreperson?
11              THE PROSPECTIVE JUROR:  No.
12              THE COURT:  You got along okay with your fellow
13    jurors?
14              THE PROSPECTIVE JUROR:  Yes.
15              THE COURT:  Do you think that you could do that
16    again if you were asked to?
17              THE PROSPECTIVE JUROR:  Yes.
18              THE COURT:  Thank you, Ms. Bush.
19              Good morning.  Is it Windorf.
20              THE PROSPECTIVE JUROR:  Yes.
21              THE COURT:  Good morning, Ms. Windorf.  How are
22    you?
23              THE PROSPECTIVE JUROR:  Good morning.  Doing well.
24    Thank you.
25              THE COURT:  Good.
```

 1              THE PROSPECTIVE JUROR:  My name is Patricia

 2     Windorf.  I'm an executive assistant in an engineering firm.

 3     My husband is an airline pilot with Southwest Airlines.

 4     We've been married for 28 years, no children.  And I've never

 5     been asked to serve.

 6              THE COURT:  Okay.  I see that you have a nephew, it

 7     looks like, that works for the New York City Police

 8     Department.

 9              THE PROSPECTIVE JUROR:  Yes, I do.

10              THE COURT:  Is there anything about that that you

11     think might influence your ability to be fair?

12              THE PROSPECTIVE JUROR:  No, Your Honor.

13              THE COURT:  You don't think you would be more

14     inclined to give the government's case weight in view of the

15     fact that your nephew works for the New York City Police

16     Department?

17              THE PROSPECTIVE JUROR:  No, I would not.

18              THE COURT:  You would be comfortable if you were

19     Mr. Adleta if Patricia Windorf was on the jury?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  And would you be comfortable if you

22     were sitting at the government's table?

23              THE PROSPECTIVE JUROR:  Yes, I would.

24              THE COURT:  Okay.  Is there anything you've heard

25     this morning that gives you pause or questions your ability

1    to be fair?

2              THE PROSPECTIVE JUROR:  No, there's not.

3              THE COURT:  Thank you, ma'am.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  Good morning.  Is it Bond?

6              THE PROSPECTIVE JUROR:  Baugh.

7              THE COURT:  Good morning, Mr. Baugh.  How are you?

8              THE PROSPECTIVE JUROR:  Good.

9              THE COURT:  Good.  Tell us about yourself.

10             THE PROSPECTIVE JUROR:  I'm Gary Baugh.  I'm 62,

11   retired.  I live in Melbourne Florida.  I moved here in

12   1998 -- and 1989.  I'm sorry.  And I've got two sons, one 44,

13   one 43, both live in Indiana.

14             THE COURT:  What do they do for a living?

15             THE PROSPECTIVE JUROR:  One of them has worked the

16   same job since high school.  He's in the lawn care business.

17             THE COURT:  Okay.

18             THE PROSPECTIVE JUROR:  And the other one works for

19   the county court as a custodian.

20             THE COURT:  Okay.  What did you do before you

21   retired?

22             THE PROSPECTIVE JUROR:  I worked for Brevard County

23   Public Works, Road Improvements division; and then before

24   that, I worked for Regency Electronics in communications.

25             THE COURT:  And I see you were in the Army as well.

1          THE PROSPECTIVE JUROR:  Yes, sir.

2          THE COURT:  What did you do in the Army?

3          THE PROSPECTIVE JUROR:  Communications specialist.

4          THE COURT:  Thank you for your service.

5          THE PROSPECTIVE JUROR:  You're welcome.

6          THE COURT:  I see that you have some prior

7     experience serving as a juror in state court, it looks like.

8          THE PROSPECTIVE JUROR:  Yes, Your Honor.

9          THE COURT:  Civil or criminal case.

10         THE PROSPECTIVE JUROR:  State.  It was forgery.  It

11    was, like, 30 years ago or so.

12         THE COURT:  Is there anything about that experience

13    that was negative and might influence your ability to be fair

14    in this case?

15         THE PROSPECTIVE JUROR:  None at all.

16         THE COURT:  Okay.  Is there anything you've heard

17    this morning that gives you any worries or concerns about

18    whether or not you could be fair and impartial if you were

19    seated as a juror here?

20         THE PROSPECTIVE JUROR:  No, Your Honor.

21         THE COURT:  Thank you, Mr. Baugh.

22         THE PROSPECTIVE JUROR:  You're welcome.

23         THE COURT:  Good morning.  Is it Kolman?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  How are you, Mr. Kolman?

```
 1              THE PROSPECTIVE JUROR:  Great.  How are you?

 2              THE COURT:  Good.  Tell us about yourself.

 3              THE PROSPECTIVE JUROR:  My name is Steve Kolman.

 4   I'm a native Floridian.  I live in Merritt Island now.

 5   Florida State alum, and I work for a large hedge fund.

 6              THE COURT:  Here in Orlando.

 7              THE PROSPECTIVE JUROR:  I live in Brevard County.

 8              THE COURT:  But your employment is here in the

 9   Central Florida area?

10              THE PROSPECTIVE JUROR:  My territory is Brevard

11   County.

12              THE COURT:  Okay.

13              THE PROSPECTIVE JUROR:  My office is in Winter

14   Park.

15              THE COURT:  Okay.  No prior jury experience for

16   you?

17              THE PROSPECTIVE JUROR:  No.

18              THE COURT:  And I see that you've got a

19   brother-in-law that works for the Coral Gables Police

20   Department.

21              THE PROSPECTIVE JUROR:  Yes.

22              THE COURT:  Did you hear the questions that I just

23   asked?

24              THE PROSPECTIVE JUROR:  Yes, I heard the questions.

25              THE COURT:  Who was it who had the brother?
```

```
 1              Ms. Windorf, did you have law enforcement in

 2      your --

 3              THE PROSPECTIVE JUROR:  Nephew.

 4              THE COURT:  You had a nephew that works for the

 5      police department?

 6              THE PROSPECTIVE JUROR:  Yes.

 7              THE COURT:  Did you hear the questions that I asked

 8      Ms. Windorf?

 9              THE PROSPECTIVE JUROR:  Yes.

10              THE COURT:  Would your answers be materially

11      different?

12              THE PROSPECTIVE JUROR:  No.

13              THE COURT:  Do you think you could be fair?

14              THE PROSPECTIVE JUROR:  I'll do my best.

15              THE COURT:  Thank you, sir.

16              THE PROSPECTIVE JUROR:  Hi.

17              THE COURT:  Ms. Dean?

18              THE PROSPECTIVE JUROR:  Susan Dean.

19              THE COURT:  How are you, Ms. Dean?

20              THE PROSPECTIVE JUROR:  I'm fine.  Thank you.

21              THE COURT:  Good.  Tell us about yourself.

22              THE PROSPECTIVE JUROR:  I'm divorced.  I have no

23      children.  I've lived in Orlando since 1984.  I've been a

24      property manager for 37 years.  Currently I'm a community

25      association manager at a country club.
```

1           THE COURT:  Okay.

2           THE PROSPECTIVE JUROR:  And I was called to jury

3   duty at least twice but never served.

4           THE COURT:  Okay.  Is there anything you've heard

5   this morning that gives you any concern or pause about your

6   ability to be fair?

7           THE PROSPECTIVE JUROR:  No, Your Honor.

8           THE COURT:  Thank you, Ms. Dean.

9           Mr. Danford, we're closing in on you.  So ready.

10  Not quite yet though.

11          We're going to go to Mr. Hutchinson.  Tell us about

12  yourself, please, sir.

13          THE PROSPECTIVE JUROR:  Good morning.  My name is

14  Kamall Hutchinson.  I've been married for ten years.  I've

15  been in Central Florida for about 18 years.

16          I have three girls:  A 16-year-old honor student, a

17  23-year-old graduate from Spelman and works for Pepsi, and a

18  28-year-old with two grandkids and she's a nurse at Orlando

19  Health Center.

20          THE COURT:  Okay.

21          THE PROSPECTIVE JUROR:  I work for Tyco Integrated

22  Security.  We actually do all the security for all the

23  federal courthouses and most of the federal court judges.

24          My wife is an accountant.

25          I've been on a jury for a criminal case in March of

1    this year for Orange County.  I was -- I sat as an alternate;

2    and then in the early '90s I did another criminal case.  I

3    was a foreman for a drug trafficking case.

4            THE COURT:  Anything about the work that you do for

5    the courts, even though I know it doesn't have anything to do

6    much with the actual administration of justice other than

7    making us all safer, which we appreciate, but anything about

8    your work with the courts that you think would be a factor in

9    terms of your ability to be fair?

10           THE PROSPECTIVE JUROR:  No, Your Honor.

11           THE COURT:  All right.  How about your prior jury

12   service?  Was that generally a positive experience?

13           THE PROSPECTIVE JUROR:  It was okay.

14           THE COURT:  Okay.  Anything about that that you

15   think would make it difficult for you to be fair if you were

16   seated as juror in this case?

17           THE PROSPECTIVE JUROR:  No, Your Honor.

18           THE COURT:  Thank you, Mr. Hutchinson.

19           Then, Mr. Jaynes.  Good morning.

20           THE PROSPECTIVE JUROR:  Good morning.  My name is

21   Paul Jaynes.  I'm director of Mission Office, which is a

22   combined office of program management and business

23   development for Raytheon S.I. Government Solutions.  I've

24   been in -- excuse me.  I'm fighting a cold.  I've been in

25   Florida about ten years.

1          I have three kids:  A three-, five- and seven-year-

2     old, two girls and a boy.  I'm married.  My wife is a

3     stay-at-home wife.

4          THE COURT:  Okay.  No prior jury experience?

5          THE PROSPECTIVE JUROR:  I've been called a couple

6     of times in Brevard County but never -- actually, released

7     before jury selection.

8          THE COURT:  Okay.  Is there anything you've heard

9     this morning, Mr. Jaynes, that gives you any pause about your

10     ability to be fair?

11          THE PROSPECTIVE JUROR:  No, Your Honor.

12          THE COURT:  Thank you, sir.

13          Now, Mr. Danford, you've told us a little bit about

14     yourself, but just refresh our recollection about your work

15     history.

16          THE PROSPECTIVE JUROR:  I retired in law

17     enforcement after 38 years.  I presently volunteer for

18     Florida Council on Crime and Delinquency, which we provide

19     training for different law enforcement agencies throughout

20     the state of Florida.

21          My wife, I'm married to 17 years, is Donna Wiebe.

22     She's a federal pretrial officer here, Your Honor.

23          THE COURT:  Okay.

24          THE PROSPECTIVE JUROR:  I have two grown boys, four

25     grandchildren, one serving overseas in the military and one

 1   on the way.

 2              THE COURT:   Great.   Thank him for his service, and

 3   thank you for your service as well.   I see you were in the

 4   Navy back in the late '60s and early '70s.   Is that right?

 5              THE PROSPECTIVE JUROR:   Yes, sir.

 6              THE COURT:   Thank you, Mr. Danford.

 7              Ladies and gentlemen, you've been very patient with

 8   me.   That process is long, I know, and it's painful,

 9   especially for Ms. Page and for Ms. Danford.   Everybody waits

10   the same amount of time, but it doesn't seem like it.   It

11   seems like they wait longer.

12              But I'm going to let you all go out and stretch

13   your legs a little bit and give the lawyers a chance to do

14   the same, and then I want you all to stay outside.

15              Mr. Fiorenza will tell you where to collect, and

16   then what I'm going to do -- we'll be at the last stage or

17   the next-to-the-last stage where I'm going to bring you all

18   in and ask you some individual questions.   It won't take

19   long, but it is important.

20              So I need for you all to be back and ready to go

21   at, let's say, 11:15.   That'll give you a 20-minute break.

22              Yes, ma'am.   Is it Ms. McLaughlin?

23              THE PROSPECTIVE JUROR:   Can we leave anything here?

24   Are we going to sit in the same seats?

25              THE COURT:   You can leave anything that you want in

1    here.  If you want to leave anything in your chair, there

2    will be somebody in or around the courtroom.

3            I can't promise that it's locked up like I can if

4    it's back in the jury room.  So if it's something that you're

5    worried that somebody might walk off, even though everybody

6    here looks trustworthy, I'd take it with you; but if you just

7    don't want to carry your bag, for some reason, if you want to

8    leave it in your chair, you're going to be in the same spot

9    when you come back.

10           So let's come back at 11:15.  You all will stay

11   outside and I'll bring you back in one at a time.

12               (Jury panel not present at 10:55 a.m.)

13               THE COURT:  Y'all can be seated.

14           I forgot, Ms. Gable, to ask your questions about

15   computer and texting and that sort of thing, which I do think

16   it's important for us to cover.  I can likely to it when they

17   come in individually.  Let me think about that and see if I

18   want to bring them all back in.

19           I don't want to delay it any longer than necessary;

20   but since we have to cover the sexual abuse questions, I can

21   probably cover the electronics at the same time.

22           Then, Mr. Bark, you've mentioned that you had

23   something else that you wanted to add to that list.  Do you

24   want to share that with me?

25               MR. BARK:  I'm not going to have any additional

1  questions.

2          THE COURT:  All right.

3          We'll be in recess then until 11:15.  What I plan

4  to do is to bring the jurors back in and ask them -- probe a

5  little bit more about the nature of the charges and their

6  personal experiences, whether or not there's anything in

7  their personal experience that would make it difficult for

8  them to serve as a juror in a case involving these

9  allegations of sexual abuse.

10          I'll also cover the technology questions, computer

11  texting, that sort of thing; and then I'll get you all to

12  side bar before we bring them all back in and we'll see if we

13  have any cause challenges.  We'll take those up at the time;

14  and then if you have things you want me to pursue with them

15  further, I'll do that when I bring them back in; but since

16  we'll have them all out anyway, we'll go ahead an take up the

17  cause challenges while they are all outside, all right?

18          So I'll see you all back at 11:15.

19          (Recess taken from 10:55 until 11:15 a.m.)

20          THE COURT:  Mr. Fiorenza, let's start with Ms. Page

21  and we'll just move through from Ms. Page all the way down to

22  Mr. Danford.

23          I'm not going to -- I was thinking that we might

24  have some folks we could do for cause before we got to that;

25  but I think, in the interest of making sure we've got a

 1    complete record, we'll go through everybody and then we'll

 2    take up cause challenges.

 3              (Potential juror Julie Page present.)

 4              THE COURT:  Come on in, Ms. Page.  Go ahead.  You

 5    can be seated.

 6              I know this can be a little overwhelming to be in

 7    here by yourself, but try to relax.  We don't mean to put you

 8    in the spotlight, but I need to ask you some questions that

 9    are a little bit more sensitive.

10              As you may have gleaned from the nature of the

11    charges, in this case the government has charged Mr. Adleta

12    with conspiring to and committing sexual offenses in

13    connection with children.  So I need to ask you some

14    questions that are personal, and I apologize for that in

15    advance, but I think you can you understand.  Why we would

16    need to know.

17              Have you ever been a victim of any type of sexual

18    assault yourself?

19              THE PROSPECTIVE JUROR:  No, I have not.

20              THE COURT:  Anybody in your family, close family

21    members or close friends that you know of that may have been

22    victims of sexual assault?

23              THE PROSPECTIVE JUROR:  No.

24              THE COURT:  It's likely that you'll hear explicit

25    language in this case in the presentation of the evidence and

1   that you'll also likely see photographs that depict young

2   children in sexual activities.  I need to ask you whether or

3   not you think you would be able to look at that evidence,

4   listen to that evidence, as unpleasant and uncomfortable as

5   it may be or make you feel, and nonetheless render a verdict

6   that's fair and impartial?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Do you feel like that in those

9   circumstances that you would be able to give Mr. Adleta a

10   fair trial and assess the evidence and make a judgment as to

11   whether or not the government has met its burden of proving

12   his guilt beyond a reasonable doubt?

13            THE PROSPECTIVE JUROR:  Yes.

14            THE COURT:  And, likewise, the same for the United

15   States?  Can you give the United States a fair trial?

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  I want to ask you some questions about

18   your -- some tech savvy questions.  Do you use a cell phone

19   yourself?

20            THE PROSPECTIVE JUROR:  Yes, I do.

21            THE COURT:  Do you know how to use the cell phone

22   to take photographs?

23            THE PROSPECTIVE JUROR:  Yes, I do.

24            THE COURT:  Have you ever sent text messages using

25   a cell phone?

1              THE PROSPECTIVE JUROR:  Yes, I have.

2              THE COURT:  Have you received text messages?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  And have you sent and received

5    photographs with your cell phone?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Are you familiar generally with Skype,

8    FaceTime or other kind of video chat programs?

9              THE PROSPECTIVE JUROR:  Yes, I am.

10             THE COURT:  And have you used one or more of those

11   applications?

12             THE PROSPECTIVE JUROR:  I have not.

13             THE COURT:  Okay.  Do you understand generally how

14   they work?

15             THE PROSPECTIVE JUROR:  Yeah.  My kids use them all

16   the time.  I just don't.

17             THE COURT:  And do you work with computers either

18   at home or at work?

19             THE PROSPECTIVE JUROR:  At home.

20             THE COURT:  What's your level of knowledge about --

21   in terms of the use of a computer?  Are you -- for instance,

22   are you comfortable enough using a computer that you could

23   provide you instruction to others in terms of basic computer

24   function?

25             THE PROSPECTIVE JUROR:  Basic, e-mail, Google, just

```
 1    general, nothing -- I do not have any technical background
 2    wit that.
 3              THE COURT:  Do you use the Internet yourself?
 4              THE PROSPECTIVE JUROR:  Yes, I do.
 5              THE COURT:  What sorts of things do you use the
 6    Internet for?
 7              THE PROSPECTIVE JUROR:  Looking up sports
 8    information for my kids' colleges, helping them with their
 9    homework, generally.  You know, I'll look up stories.  If
10    something pops up on Yahoo, something interesting, I'll hit
11    the link and check it out, read it.
12              THE COURT:  All right.  Thank you.
13              Does the government have any follow-up?
14              MS. GABLE:  No, Your Honor.
15              THE COURT:  Mr. Bark, do you have any follow-up?
16              MR. BARK:  No, Your Honor.
17              THE COURT:  All right.  Thank you, Ms. Page.  I
18    appreciate it.  If you'll leave that microphone there in the
19    chair for your next juror, I'd appreciate it.
20              (Prospective juror Julie Page not present.)
21              THE COURT:  Ms. Ingersoll is next, please.
22              MR. BARK:  Your Honor, may I ask the Court a
23    question before we bring in the next juror?
24              THE COURT:  Sure.
25              MR. BARK:  I submitted, I think, two or three
```

1    proposed voir dire questions.  Does the Court have those?

2              THE COURT:  Let me make sure I do.

3              I do have them, yes.

4              (Prospective juror Denise Ingersoll present.)

5              THE COURT:  I think I covered them generally with

6    Ms. Page.  I'll try to do them a little more directly from

7    this point forward; but I do have your questions here, I

8    think.

9              MR. BARK:  Thank you.

10              THE COURT:  Hello, Ms. Ingersoll.  I'm sorry to put

11   you in the spotlight.  We need to ask you some questions that

12   are a little personal in nature, and I apologize for that in

13   advance.

14              As you may have gleaned from my summary of this

15   case, in this case the United States has charged Mr. Adleta

16   with both committing and conspiring to commit sexual offenses

17   in connection with children.  Some of the testimony that

18   you're going to hear is disturbing.  The language will be

19   explicit.  You'll, I'm sure, be asked to look at photographs

20   of children engaged in sexual activity.  It will no doubt

21   make you uncomfortable.

22              My question to you is whether or not you think, in

23   light of that fact, you would be able to be fair and

24   impartial and listen to the evidence and make a judgment

25   based on the evidence as to whether or not the government has

```
 1    proven its case beyond a reasonable doubt?
 2              THE PROSPECTIVE JUROR:  No.
 3              THE COURT:  Okay.  Fair enough.  I appreciate your
 4    candor.
 5              THE PROSPECTIVE JUROR:  My son is a foster child
 6    (sic); and when you talked about the foster kids, I forgot
 7    about that; and he foster parents to eight kids, not
 8    necessarily because of those situations, but situations that
 9    they were in.  So I would have to say no.
10              THE COURT:  Okay.  Well, I appreciate your candor.
11              THE PROSPECTIVE JUROR:  Thank you.
12              THE COURT:  Thank you, ma'am.  If you will, leave
13    that microphone there in the seat.  Thanks.
14              (Prospective juror Denise Ingersoll not present.)
15              THE COURTROOM SECURITY OFFICER:  Judge, I have the
16    list.  I'll just go down the list.
17              THE COURT:  Okay.
18              THE COURTROOM SECURITY OFFICER:  Mary Ann Shayka.
19              THE COURT:  Ms. Shayka has already indicated that
20    she had some problems because of a situation involving her
21    ex-husband.
22              Do you remember that Mr. Bark, Ms. Gable?
23              MR. BARK:  Yes, Your Honor.
24              MS. GABLE:  Yes.
25              THE COURT:  My guess is that she's likely going to
```

1    be a cause challenge.  So I don't think we need to take up

2    any further time from her.

3            If you will, just skip to Ms. Finley.  And Ms.

4    Finley had some hearing issues, as I recall, but thought she

5    might be able to overcome them.  So let's talk with Ms.

6    Finley.

7            Ms. Flick reminds me that we also have those

8    headsets that we can give jurors that have hearing problems

9    that help them pick up the amplification.

10           (Prospective juror Shannon Finley present.)

11           THE COURT:  Come on in, Ms. Finley.

12           Hi, Ms. Finley.  I'm sorry to put you on the spot.

13   Don't feel overwhelmed.  I know it's hard to come in here by

14   yourself, but I need to ask you a few questions that are

15   really very personal in nature because of the nature of these

16   charges.  It's not going to be comfortable for you, no matter

17   where you are, but it'll be a little less uncomfortable, I

18   think, here one on one -- or one on 30.

19           You've probably gleaned from what I told you about

20   the summary of the case that the government in this case has

21   charged Mr. Adleta with conspiring to and with committing

22   sexual offenses involving minors.  Do you understand those

23   are the charges?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Do you understand Mr. Adleta has pled

1   not guilty to those charges?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  My question to you is -- it's likely

4   that you will hear evidence that includes very explicit

5   language.  You'll be required to look at photographs, likely,

6   of young children engaged in sexual activity; and I need to

7   know whether or not, in light of that, you think that you

8   could be fair and impartial and listen to the evidence and

9   render a verdict that was fair both to the government and to

10  the defendant?

11             THE PROSPECTIVE JUROR:  It will be difficult, but I

12  can be impartial.

13             THE COURT:  Okay.  Thank you, ma'am.  I need to

14  also ask you, and I apologize for it, whether or not you or

15  any close family member have ever been the victim of a sexual

16  assault?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  I want to ask you a few questions

19  about -- I guess what you just mentioned is that the -- that

20  it'll be difficult to listen to explicit language and to look

21  at photographs of young children involved in sexual activity,

22  and I certainly understand that.  Do you think that you would

23  be distracted by that or overcome by that to such a point

24  that you would not be able to listen to and follow my

25  instructions on the law as to the force and effect of that

1   evidence?

2            THE PROSPECTIVE JUROR:  I've got a niece that's

3   seven and nephew that's five.  So, again, it's going to be

4   very difficult.

5            THE COURT:  Okay.  And, as I said, I understand

6   that.  But what I'm asking is that even though you understand

7   naturally that it's going to be difficult to look at that, do

8   you think that you could evaluate that evidence and fairly

9   and impartially decide whether or not the government had

10  proven its case, proven Mr. Adleta's guilt beyond a

11  reasonable doubt?

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  And if you felt that the government had

14  not met its burden of proof, would you be able to render a

15  verdict of not guilty?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Do you use a computer, either at home

18  or at work?

19           THE PROSPECTIVE JUROR:  Yes, both.

20           THE COURT:  And are you generally familiar with

21  programs such as Skype or FaceTime, programs of that sort

22  that allow you to chat?

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  How would you describe your level of

25  computer knowledge or would you be comfortable, for instance,

1    giving somebody else instruction in terms of basic computer

2    use?

3                    THE PROSPECTIVE JUROR:  Yes.  I use computer every

4    day and we use social media at work.

5                    THE COURT:  And do you own a cell phone?

6                    THE PROSPECTIVE JUROR:  Yes.

7                    THE COURT:  Are you familiar with the use of cell

8    phones to send and receive text messages?

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  And have you done that yourself?

11                   THE PROSPECTIVE JUROR:  Yes.

12                   THE COURT:  And how about sending and receiving

13   photographs using a cell phone?

14                   THE PROSPECTIVE JUROR:  Yes.

15                   THE COURT:  Any follow-up, Ms. Gable?

16                   MS. GABLE:  No, Your Honor.

17                   THE COURT:  Any follow-up, Mr. Bark?

18                   MR. BARK:  No, Your Honor.

19                   THE COURT:  All right.  Thank you very much.

20                   (Prospective juror Shannon Finley not present.)

21                   THE COURTROOM SECURITY OFFICER:  Your Honor, should

22   I bring in the next juror?

23                   THE COURT:  Yes.  I'm sorry.  Mr. Wehr.

24                   MS. GABLE:  Your Honor, Ms. Finley did seem to

25   understand every question that you asked.

```
 1              THE COURT:  She did.  I agree.  If she's selected

 2   once we get through, I'm going to offer her the use of a

 3   headset; and if she wants to avail herself of it, she can.

 4              (Prospective juror James Wehr present.)

 5              THE COURT:  Come on in, Mr. Wehr.  Have a seat

 6   there, if you would.

 7              Mr. Wehr, I apologize for making you uncomfortable

 8   by bringing you in here one on one, but I need to ask you

 9   some questions that are very personal in nature; and I

10   apologize for that in advance, but it's because of the nature

11   of the charges in this case.

12              The first question I need to ask you is you may

13   have gleaned from my summary of the case that the United

14   States has charged Mr. Adleta with conspiring to and

15   committing certain offenses involving sexual conduct with

16   minors.  What I need to ask you, and I apologize for it in

17   advance, is whether or not you or any close family members

18   have ever been the victim of a sexual assault?

19              THE PROSPECTIVE JUROR:  No.

20              THE COURT:  Okay.  In the course of the

21   presentation of this case, it's likely that you will have to

22   listen to testimony that is explicit in nature.  You may be

23   called upon to look at photographs of children, young

24   children, engaged in sexual activity.  Those photographs or

25   that evidence may be disturbing.
```

 1            What I need to find out is whether or not you would

 2     be able to, despite the disturbing nature of that evidence,

 3     fairly and impartially weigh the evidence and reach a

 4     conclusion as to whether or not the government has met its

 5     burden of proving Mr. Adleta's guilt beyond reasonable doubt?

 6            THE PROSPECTIVE JUROR:  Yes.

 7            THE COURT:  Okay.  Do you understand Mr. Adleta has

 8     pled not guilty to the charges?

 9            THE PROSPECTIVE JUROR:  Yes.

10            THE COURT:  And you understand the government bears

11     the burden of proof?

12            THE PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Do you think that you would be able to

14     look at this evidence, as disturbing as it may be, and still

15     follow my instructions on the law as to the force and effect

16     of the evidence, how to evaluate the evidence and make a

17     judgment as to whether or not the government has met its

18     burden?

19            THE PROSPECTIVE JUROR:  Yes.

20            THE COURT:  And if you felt that the government had

21     not met its burden, would you be able to render a verdict of

22     not guilty?

23            THE PROSPECTIVE JUROR:  Yes.

24            THE COURT:  Do you use a computer yourself, Mr.

25     Wehr, either at home or at work?

 1            THE PROSPECTIVE JUROR:  I work from the home.  So,

 2     yes.

 3            THE COURT:  Okay.  Are you generally familiar with

 4     programs like Skype or FaceTime that allow you to chat?

 5            THE PROSPECTIVE JUROR:  Yes.

 6            THE COURT:  And have you have you done that

 7     yourself?

 8            THE PROSPECTIVE JUROR:  Yes.

 9            THE COURT:  Do you own a cell phone?

10            THE PROSPECTIVE JUROR:  Yes, I do.

11            THE COURT:  And does your cell phone have the

12     capacity to send and receive text messages?

13            THE PROSPECTIVE JUROR:  No.

14            THE COURT:  Do you know how to send and receive

15     text messages?

16            THE PROSPECTIVE JUROR:  No.

17            THE COURT:  How about photographs?  Do you take

18     photographs with your cell phone or does it have that

19     capacity?

20            THE PROSPECTIVE JUROR:  It has that capacity, but I

21     don't know.  I've never used it.

22            THE COURT:  You've not used it to take or send

23     photographs?

24            THE PROSPECTIVE JUROR:  No.

25            THE COURT:  Okay.  How about e-mail?  Do you send

1    and receive e-mail?

2              THE PROSPECTIVE JUROR:  Lots of e-mails because of

3    the business.

4              THE COURT:  Okay.

5              Any follow-up, Ms. Gable?

6              MS. GABLE:  No, Your Honor.

7              THE COURT:  Mr. Bark?

8              MR. BARK:  No, Your Honor.

9              THE COURT:  Thank you very much, Mr. Wehr.

10             (Prospective juror James Wehr not present.)

11             THE COURT:  Go ahead and bring Ms. Harris in, if

12    you would, please, Michelle Harris.

13             (Prospective juror Michelle Harris present.)

14             THE COURT:  Okay.  Come on in, Ms. Harris.

15             Mr. Bark, if you want to move, you're free to move.

16             Ms. Harris, if you'll sit right there where that

17    microphone is, I'll be with you in just one minute.

18             THE PROSPECTIVE JUROR:  Okay.

19             THE COURT:  I'm sorry to put you on the spot and to

20    bring you in here.  I know it can be a little intimidating,

21    but I apologize for that.

22             You probably gleaned from my short summary of the

23    case that the United States has charged Mr. Adleta with

24    committing and conspiring to commit sexual offenses involving

25    children.

1          Now, what I need to ask you as, much and I don't

2     like to do it, is whether or not either you or any member of

3     your family have ever been the victim of a sexual assault.

4          THE PROSPECTIVE JUROR:  No, sir, we have not.

5          THE COURT:  In the course of this case, it's likely

6     that you will hear evidence that is explicit in nature,

7     explicit language.  You will also likely be asked to look at

8     photographs involving depictions of young children in sexual

9     activity.  It may be disturbing to you.

10          I need to ask you whether or not you think, in

11     light of that, you would be able to be fair and impartial and

12     evaluate whether or not the government has met its burden of

13     proving Mr. Adleta's guilt beyond a reasonable doubt?

14          THE PROSPECTIVE JUROR:  Yes, sir, I think I can.

15          THE COURT:  Despite the disturbing nature of that

16     evidence, if you were to feel that the government had not

17     sustained its burden, would you have any difficulty rendering

18     a verdict of not guilty?

19          THE PROSPECTIVE JUROR:  No, sir, I would not.

20          THE COURT:  If in the course of looking at that

21     type of evidence that I've just described, you found yourself

22     reacting to it emotionally or being disturbed by it or losing

23     focus, do you think that you would be able to listen to my

24     instructions on the law and to give that evidence whatever

25     weight you think it deserves and to reach a verdict without

1    being unduly influenced?

2              Obviously, all evidence is intended to influence

3    you in one way or another.  But my question is whether you

4    would be unduly influenced or would you be able to look at

5    the evidence and to evaluate it and give it whatever weight

6    you think it deserves?

7              THE PROSPECTIVE JUROR:  Yes, sir, I believe I can.

8              THE COURT:  Do you use a computer yourself, either

9    at home or at work?

10             THE PROSPECTIVE JUROR:  Yes, sir, I do.

11             THE COURT:  And are you familiar with the sending

12   and receiving of text messages on your cell phone?

13             THE PROSPECTIVE JUROR:  Yes, sir, I am.

14             THE COURT:  Does your cell phone have the capacity

15   to take photographs?

16             THE PROSPECTIVE JUROR:  Yes, sir.

17             THE COURT:  And do you know how to take and send

18   photographs?

19             THE PROSPECTIVE JUROR:  Yes, sir, I do.

20             THE COURT:  And I take it that you send and receive

21   e-mail messages?

22             THE PROSPECTIVE JUROR:  Yes, sir.

23             THE COURT:  Are you generally familiar with

24   programs like Skype or FaceTime that allow you to chat with

25   others?

```
 1              THE PROSPECTIVE JUROR:  I'm aware of them.  I

 2    actually do not use them myself.

 3              THE COURT:  But you know generally how they work?

 4              THE PROSPECTIVE JUROR:  Yes, sir, I do.

 5              THE COURT:  Okay.  Any follow-up, Ms. Gable?

 6              MS. GABLE:  No, Your Honor.  Thank you.

 7              THE COURT:  Mr. Bark?

 8              MR. BARK:  No, Your Honor.

 9              THE COURT:  Thank you, Ms. Harris.  If you'll leave

10    that microphone in the chair, we'll have the next juror come

11    in.

12              I think it's Ms. Schmitt, Mr. Fiorenza.

13              (Prospective juror Michelle Harris not present.

14    Prospective juror Shari Schmitt present.)

15              THE COURT:  Come on in Ms. Schmitt, all the way

16    down here, and there's a microphone sitting in one of these

17    chairs to the side.  If you will, pick the microphone up and

18    have a seat.

19              THE PROSPECTIVE JUROR:  Okay.

20              THE COURT:  I apologize if you feel intimidated or

21    overwhelmed.  It's necessary for us to talk to you one on one

22    because some of the questions I have to ask you are very

23    personal in nature.

24              You probably gleaned from my summary that the

25    United States here has charged Mr. Adleta with conspiring to
```

commit and committing certain offenses that involve sexual

activity with children.  So, as much as it pains me to do it,

I need to ask you some questions that are very private in

nature.  I need to ask you whether or not either you or any

close family member of yours have ever been the victim of a

sexual assault?

THE PROSPECTIVE JUROR:  No.

THE COURT:  And during the course of this trial it

may be necessary for you to look at photographs that involve

or depict children, young children, engaged in sexual

activity.  You may have to listen to evidence that includes

very explicit language.  It may be disturbing to you.  It

likely will be.

I need to find out whether or not you'd be able to

listen to that evidence and still evaluate whether or not the

government has proven its case beyond a reasonable doubt?

THE PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you think you would be able to do

that?  Do you understand that Mr. Adleta has pled not guilty

to these charges?

THE PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  If you listened to that

evidence and found that had evidence, as you likely would, to

be disturbing, would you still be able to evaluate it in

terms of making the determination as to whether or not the

1  government had met its burden?

2  THE PROSPECTIVE JUROR:  Yes, I would.

3  THE COURT:  And if you felt the government had not

4  met its burden, would you able to render a verdict of not

5  guilty?

6  THE PROSPECTIVE JUROR:  Yes.

7  THE COURT:  Do you use a computer yourself, ma'am,

8  either at home or at work?

9  THE PROSPECTIVE JUROR:  Yes, I do.

10  THE COURT:  Are you generally familiar with the

11  sending and receiving of e-mail messages?

12  THE PROSPECTIVE JUROR:  Yes, I am.

13  THE COURT:  Do you have a cell phone?

14  THE PROSPECTIVE JUROR:  Yes, I do.

15  THE COURT:  Does your cell phone allow you to send

16  and receive text messages?

17  THE PROSPECTIVE JUROR:  Yes, it does.

18  THE COURT:  And do you know how to do that?

19  THE PROSPECTIVE JUROR:  Most of the time.

20  THE COURT:  How about photographs?  Does your cell

21  phone take pictures?

22  THE PROSPECTIVE JUROR:  Yes, it does.

23  THE COURT:  And do you know how to take pictures

24  and send them with your cell phone?

25  THE PROSPECTIVE JUROR:  Yes, I do.

```
 1              THE COURT:  How about programs that allow you to
 2    chat, things like Skype and FaceTime, are you familiar with
 3    those programs?
 4              THE PROSPECTIVE JUROR:  Familiar but I don't use
 5    them.
 6              THE COURT:  Okay.  Do you understand, though,
 7    basically how they work?
 8              THE PROSPECTIVE JUROR:  Yes.
 9              THE COURT:  Okay.
10              Any follow-up, Ms. Gable?
11              MS. GABLE:  No, Your Honor.
12              THE COURT:  Mr. Bark?
13              MR. BARK:  May I, Your Honor?
14              THE COURT:  Yes.
15              MR. BARK:  The one?
16              THE COURT:  Sure.
17              MR. BARK:  The Judge mentioned that you're going to
18    see some explicit evidence and hear some explicit evidence.
19              THE PROSPECTIVE JUROR:  Yes.
20              THE COURT:  You need to use the microphone, though,
21    Mr. Bark.  You can come to the podium, if you like.
22              MR. BARK:  Thank you.
23              I wanted to make sure it's recorded.  That's why
24    I'm going to say it again.  The Judge just mentioned you're
25    going to hear some explicit testimony, see some explicit
```

```
1    visual pictures.  Are you concerned at all that you will be
2    distracted or too focused on that to listen to other evidence
3    that comes out during the proceeding or the Judge's
4    instructions on the law?
5              THE PROSPECTIVE JUROR:  No, I'm not.
6              MR. BARK:  Okay.  Thank you.
7              THE COURT:  Thank you, ma'am.  If you will, just
8    leave that microphone in the chair.
9              (Prospective juror Shari Schmitt no longer
10   present.)
11             THE COURT:  I think Ms. Foederer is next, Mr.
12   Fiorenza.
13             (Prospective juror Sara Foederer is present.)
14             THE COURT:  Come on in, Ms. Foederer.  There's a
15   microphone in that chair.  If you would, pick it up and have
16   a seat.
17             My apologies for putting you on the spot in here.
18   I know it's a little overwhelming.  So I apologize for that,
19   but I need to ask you some questions that are personal in
20   nature because of the nature of the charges here.
21             You may have gleaned from my summary of the case
22   that the United States has charged Mr. Adleta with conspiring
23   to commit and with committing certain sexual offenses
24   involving minors.  It is likely that you will see evidence
25   that is explicit, that depicts children involved in sexual
```

1    activity, young children, and it's likely also that you'll

2    hear explicit language and that evidence likely will be

3    disturbing to you.

4            So my question is whether or not you think you'd be

5    able to view that evidence, as uncomfortable as it may make

6    you or as disturbing as it may be, and nonetheless evaluate

7    whether or not the government has met its burden of proving

8    Mr. Adleta's guilt beyond a reasonable doubt?

9            THE PROSPECTIVE JUROR:  I do, Your Honor.

10           THE COURT:  All right.  If after listening to the

11   government's case, even though the evidence was disturbing,

12   if you were persuaded that they had not met their burden of

13   proof, would you have any difficulty returning a verdict of

14   not guilty?

15           THE PROSPECTIVE JUROR:  No, I would not.

16           THE COURT:  All right.  Now, I need to ask you, and

17   I apologize for it, whether or not you or any close family

18   member have ever been the victim of a sexual assault?

19           THE PROSPECTIVE JUROR:  No, Your Honor.

20           THE COURT:  Do you use a computer at home or at

21   work?

22           THE PROSPECTIVE JUROR:  I do, at both home and

23   work.

24           THE COURT:  And do you send and receive e-mails?

25           THE PROSPECTIVE JUROR:  I do.

 1          THE COURT:  And do you use a cell phone?

 2          THE PROSPECTIVE JUROR:  I do.

 3          THE COURT:  And do you know, does your cell phone

 4     allow you to send and receive text messages?

 5          THE PROSPECTIVE JUROR:  Yes, it will.

 6          THE COURT:  And you do that from time to time?

 7          THE PROSPECTIVE JUROR:  Yes, from time to time.

 8          THE COURT:  How about photographs?  Does your cell

 9     phone allow you to take pictures with it?

10          THE PROSPECTIVE JUROR:  Yes, I'm able to.

11          THE COURT:  And can you take pictures and send them

12     electronically with your cell phone?

13          THE PROSPECTIVE JUROR:  I can.

14          THE COURT:  Okay.  And are you familiar generally

15     with the programs like Skype or FaceTime that allow you to

16     video chat?

17          THE PROSPECTIVE JUROR:  Yeah.  Not overly familiar

18     but I've heard of them before.

19          THE COURT:  Do you know generally how they work?  I

20     don't mean the technology of how they work, but you

21     understand --

22          THE PROSPECTIVE JUROR:  Yeah, the basic concept.

23          THE COURT:  You understand that you can use them to

24     see someone else and have a realtime conversation with them?

25          THE PROSPECTIVE JUROR:  Correct.

1        THE COURT:  How would you describe your level of

2   computer expertise?  Do you think you would be competent to

3   give somebody else basic instruction in terms of how to use a

4   computer?

5        THE PROSPECTIVE JUROR:  Yeah, I would say basic.

6        THE COURT:  If in the course of the trial I mention

7   that this evidence that you're going to see is likely to be

8   disturbing, would you be able to listen to that evidence or

9   view that evidence and still keep an open mind and listen to

10  other evidence that may be presented during the case and to

11  make a judgment based on all of the evidence as to whether or

12  not the government has met its burden?

13       THE PROSPECTIVE JUROR:  Yes, I would.

14       THE COURT:  Okay.

15       Any follow-up, Ms. Gable?

16       MS. GABLE:  No, Your Honor.

17       THE COURT:  Mr. Bark?

18       MR. BARK:  No, Your Honor.

19       THE COURT:  Thank you very much, Ms. Foederer.

20       THE PROSPECTIVE JUROR:  Thank you.

21       THE COURT:  If you would just leave the microphone

22  in the chair there, I would appreciate it.

23       (Prospective juror Sara Foederer not present.

24  Prospective juror Sarita Laverde present.)

25       THE COURT:  Ms. Laverde, have a seat right there.

1   Ms. Laverde, I apologize for bringing you in here.  I know

2   it's a little intimidating being in here by yourself, but the

3   nature of the charges in this case are such that I need to

4   ask you some questions that are personal in nature.  You

5   probably gleaned or figured out from my summary of the case

6   that the United States has charged Mr. Adleta with committing

7   offenses involving minor children in sexual activity and

8   conspiring to commit those acts.

9           In view of the nature of the charges, I need to ask

10  you, and I apologize for it, whether or not you or any close

11  family member have ever been the victim of a sexual assault?

12          THE PROSPECTIVE JUROR:  When my daughter was five,

13  six year old, I used to live in New Jersey.  Used to live in

14  the first floor, in the basement, her baby-sitter was living

15  there.  She used to take care of my daughter.  She was almost

16  molested by the baby-sitter's brother, and that was a very

17  difficult situation for all of us, because when we find out,

18  my husband went crazy and he almost -- I mean, thanks God, he

19  didn't find the guy.  He just left, because he tends to --

20  his sister -- he just run off and my husband couldn't see

21  him.  We couldn't press charges or anything because the guy

22  was from Mexico and he disappear.

23          THE COURT:  Okay.  In light of that experience in

24  your own life, do you think it would be difficult for you to

25  be a fair and impartial juror in this case where the

1    government has charged Mr. Adleta with sexually molesting

2    young children?

3              THE PROSPECTIVE JUROR:  It will be very difficult

4    and I won't be fair.  To me, that's disgusting.  To me, a

5    child being molested or anything related to it is difficult.

6              THE COURT:  Okay.  Thank you, ma'am.

7              THE PROSPECTIVE JUROR:  You're welcome.

8              THE COURT:  If you'd leave that microphone right

9    there in the chair, it would be fine.

10             Dana Olsen is next, Mr. Fiorenza.

11             (Prospective juror Sarita Laverde not present.

12   Prospective juror Dana Olsen present.)

13             THE COURT:  Come on in, Ms. Olsen.  If you will,

14   come down here.  Have a seat.

15             I'm bringing you all in one at a time, even though

16   I know it's a little bit overwhelming to come in here by

17   yourself, because I need to ask you some questions that are

18   highly personal in nature because of the charges that are

19   involved.

20             You probably figured out from my summary of the

21   case that the United States has charged Mr. Adleta here with

22   committing sexual offenses involving minor children and/or

23   conspiring to do that.

24             In light of that, I need to ask you, as much as I

25   don't like to do it, whether or not either you or any close

1    family member have ever been the victim of a sexual assault?

2         THE PROSPECTIVE JUROR:  Yes.

3         THE COURT:  Okay.  And is that -- did that involve

4    you or a family member?

5         THE PROSPECTIVE JUROR:  Me.

6         THE COURT:  And in light of that experience of your

7    own, do you think you could be fair and impartial if you were

8    asked to sit as a juror in this case and evaluate whether or

9    not the government's proved that Mr. Adleta committed the

10   offenses beyond a reasonable doubt?

11        THE PROSPECTIVE JUROR:  I think so, yes.

12        THE COURT:  Okay.  I don't want to ask you too many

13   details about your own experience, but can you tell me

14   approximately how old you were when you were the victim of

15   this assault?

16        THE PROSPECTIVE JUROR:  Probably, like, 18, 19.

17        THE COURT:  Okay.  Do you think you'd be able to

18   evaluate the charges in this case -- let me ask it this way.

19   There's going to be, in all likelihood, some evidence that

20   includes very explicit language, that includes photographs

21   depicting children of a young age engaged in sexual activity.

22   That evidence is likely to be disturbing to you.

23        My question is whether or not you would be able to

24   look at that evidence and still fairly and impartially

25   evaluate whether or not the government met its burden of

1    proving that Mr. Adleta committed these offenses beyond a

2    reasonable doubt?

3              THE PROSPECTIVE JUROR:  I think so, yes.

4              THE COURT:  Okay.  Do you understand that Mr.

5    Adleta has pled not guilty to these charges?

6              THE PROSPECTIVE JUROR:  I do.

7              THE COURT:  And if you, after looking at this

8    evidence, as disturbing as it may be, if you were persuaded

9    that the government had not met its burden of establishing

10   his guilt beyond a reasonable doubt, would you have any

11   difficulty rendering a verdict of not guilty?

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  Is that true notwithstanding your own

14   experience?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Do you have a computer that you use,

17   either at home or at work?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And are you -- "competent" may not be a

20   good word.  Do you send and receive e-mail messages?

21             THE PROSPECTIVE JUROR:  Yes, I do.

22             THE COURT:  Do you use a smartphone of some sort?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Does it allow you to send and receive

25   text messages?

```
 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  How about photographs?  Can your phone

 3   take a picture?

 4              THE PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  Do you know how to take a picture and

 6   send it with your phone?

 7              THE PROSPECTIVE JUROR:  I do.

 8              THE COURT:  And are you generally familiar with

 9   programs like FaceTime or Skype that allow you to have a

10   realtime visual chat?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Any follow-up, Ms. Gable?

13              MS. GABLE:  No, Your Honor.  Thank you.

14              THE COURT:  Mr. Bark?

15              MR. BARK:  No, Your Honor.

16              THE COURT:  All right.

17              Thank you, ma'am.

18              THE PROSPECTIVE JUROR:  Thank you.

19              THE COURT:  If you'll just leave that microphone in

20   the chair there, I'd appreciate it.

21              And next up is Ms. Oladeji.

22              (Prospective juror Dana Olsen not present.

23   Prospective juror Shawan Tookes-Oladeji present.)

24              THE COURT:  Come on in, Ms. Oladeji.  I'm sorry to

25   bring you in here and put you on the spot, but I need to ask
```

1    you some personal questions that won't be easy, no matter

2    what, but they might be easier than if everybody was in here.

3              You may have figured out from my summary of the

4    case that the United States has charged Mr. Adleta with

5    committing offenses of a sexual nature involving young

6    children.  And I need to ask you whether or not, in light of

7    that fact, whether either you or any close family members of

8    yours have ever been the victim of a sexual assault?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Okay.  It is likely that you will hear

11   evidence in this case that is very explicit, that has

12   explicit language in it.  You will also likely be asked to

13   look at photographs that depict very young children involved

14   in sexual activity.  It's likely that that evidence is going

15   to be disturbing to you.

16             What I need to ask you is whether or not, in light

17   of that fact, would you be able to fairly evaluate whether or

18   not the government has met its burden of proving that Mr.

19   Adleta is guilty of these offenses beyond a reasonable doubt?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Okay.  You seem a little puzzled by the

22   question.  So let me make sure that we're communicating,

23   because maybe I didn't ask it well.  You understand that Mr.

24   Adleta has pled not guilty to these charges, correct?

25             THE PROSPECTIVE JUROR:  Yes.

1        THE COURT:  And do you understand that the United

2   States has the burden of proving his guilt beyond a

3   reasonable doubt?

4        THE PROSPECTIVE JUROR:  Yes.

5        THE COURT:  And as I've just explained to you, some

6   of the evidence that you're going to see is very disturbing

7   or is likely to be disturbing.  I need to find out whether or

8   not you would be able to look at that evidence and still keep

9   an open mind with respect to any other evidence that you

10  might receive in terms of evaluating whether or not the

11  United States has met its burden?  Would you be able to do

12  that?

13       THE PROSPECTIVE JUROR:  As far as look at the

14  evidence or what are you saying exactly?

15       THE COURT:  Yes, ma'am.  Would you be able to

16  listen to the evidence, look at the evidence and still

17  evaluate all of the evidence?  In other words, some of the

18  evidence is likely to be very disturbing to you.  There may

19  be other evidence -- I don't know what the evidence is going

20  to be yet, but I need to find out whether or not you'll be

21  able to look at all of the evidence and keep an open mind and

22  evaluate at the end of the case, in light of my instructions,

23  whether or not the government has proven Mr. Adleta is guilty

24  beyond a reasonable doubt?

25       THE PROSPECTIVE JUROR:  I'll do my best.

1          THE COURT:  Okay.  After hearing all of the

2   evidence, if you are not persuaded that the government has

3   met its burden, in other words, if you do not believe that

4   the government's case proves Mr. Adleta is guilty beyond a

5   reasonable doubt, would you have any difficulty returning a

6   verdict of not guilty?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  Okay.  Do you use a computer yourself,

9   either at home or at work?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  And do you know how to send and receive

12  e-mail messages?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Do you know how to send and receive

15  text messages using your phone?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Do you know how to take photographs

18  with your phone?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Do you know how to send those

21  photographs with your phone electronically to someone else?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Are you familiar generally with Skype

24  or FaceTime or other programs that allow you to have a

25  realtime video chat?

1        THE PROSPECTIVE JUROR:  That one, no.  Well, the

2   Skype, yes; but realtime, no.

3        THE COURT:  All right.  By "Skype," I just mean you

4   can have a telephone call -- or you can have a Skype

5   interchange that's --

6        THE PROSPECTIVE JUROR:  Yes, I've done that one

7   before.  I haven't done realtime, though.

8        THE COURT:  By "realtime," I just mean it's not

9   recorded.  It's not being replayed.  It's actually happening

10  while you're having the conversation.  Do you understand what

11  I mean?

12       THE PROSPECTIVE JUROR:  No.

13       THE COURT:  I'm doing a very poor job.  I

14  apologize.  What I'm trying to ask you is whether or not you

15  understand that, for instance, when you use Skype, you're

16  talking to somebody, you can see them on the screen?  Do you

17  understand that?

18       THE PROSPECTIVE JUROR:  Yes.

19       THE COURT:  And that that's actually happening

20  while you're doing it.  It's not tape-recorded.  It's not

21  recorded on a disk.  It's not being played back at some later

22  time.  It's happening right now in real time.

23       THE PROSPECTIVE JUROR:  Okay.  I thought that was

24  another separate thing.

25       THE COURT:  No.  That's fine.  That's my fault.  I

```
 1   didn't do a good job of explaining it.
 2               THE PROSPECTIVE JUROR:  Okay.
 3               THE COURT:  Do you understand what I'm talking
 4   about now?
 5               THE PROSPECTIVE JUROR:  Yes.
 6               THE COURT:  Are you generally familiar with that?
 7               THE PROSPECTIVE JUROR:  Yes.
 8               THE COURT:  Okay.
 9               Do you have anything else, Ms. Gable?
10               MS. GABLE:  No, Your Honor.
11               THE COURT:  How about you, Mr. Bark?
12               MR. BARK:  No, Your Honor.
13               THE COURT:  Thank you very much.  If you will just
14   leave that microphone there in the chair, we'll move on to
15   the next juror.
16               And that's Mr. Cohen, I think, Mr. Fiorenza.
17               (Prospective juror Shawan Tookes-Oladeji not
18   present.  Prospective juror Michael Cohen present.)
19               THE COURT:  Come on in, Mr. Cohen, and there's a
20   chair about halfway down here that has a microphone in it.
21   If you'll just come on down and have a seat and pick the mic
22   up, I need to ask you a few quick questions.
23               My apologies for putting you on the spot.  You're
24   here by yourself, but I need to ask you some personal
25   questions in light of the nature of the charges here.
```

1       You probably figured out from my summary that the

2  United States here has charged Mr. Adleta with the commission

3  of crimes of a sexual nature involving children, and I need

4  to ask you whether or not, as uncomfortable as it makes me to

5  ask you, whether or not you or any close family member have

6  ever been the victim of a sexual assault?

7       THE PROSPECTIVE JUROR:  No, sir.

8       THE COURT:  It's likely that you will be asked to

9  listen to evidence that's very explicit in nature, explicit

10  language.  You may also be asked to look at photographs of

11  young children, depicting them engaged in sexual activity.

12  It's likely that that evidence will be disturbing to view.

13  And I need to ask you whether or not you'll be able to look

14  at that evidence and keep an open mind and evaluate the

15  totality of the government's evidence in evaluating whether

16  they have met their burden of proving Mr. Adleta's guilt

17  beyond a reasonable doubt?

18       THE PROSPECTIVE JUROR:  I don't know, Your Honor.

19  I'm a Shriner.  I'm very involved with Shrines and I help

20  children.

21       THE COURT:  Okay.  Do you understand in this case

22  the government has charged Mr. Adleta with these offenses and

23  Mr. Adleta has entered a plea of not guilty?

24       THE PROSPECTIVE JUROR:  Yes, Your Honor.

25       THE COURT:  Do you understand Mr. Adleta is

1   presumed to be innocent of the charges?

2            THE PROSPECTIVE JUROR:  Yes, Your Honor.

3            THE COURT:  Do you understand the government has

4   the burden of proving his guilt beyond a reasonable doubt?

5            THE PROSPECTIVE JUROR:  Yes, Your Honor.

6            THE COURT:  My question to you is, understanding

7   that you care about children, that you are involved with

8   children, nonetheless would you be able to look at this

9   evidence, listen to the evidence and if at the end of the

10  case you were not persuaded that the government had met its

11  burden of proving Mr. Adleta's guilt beyond a reasonable

12  doubt, would you have any difficulty rendering a verdict of

13  not guilty?

14           THE PROSPECTIVE JUROR:  If they did not prove their

15  case, I could do that.

16           THE COURT:  Could you do that, even though the

17  evidence that you had seen and reviewed was disturbing?

18           THE PROSPECTIVE JUROR:  I would try, sir.

19           THE COURT:  Okay.  Do you have a computer that you

20  use at home or at work?

21           THE PROSPECTIVE JUROR:  Yes, sir, I do.

22           THE COURT:  Do you send and receive e-mail

23  messages?

24           THE PROSPECTIVE JUROR:  Very seldom.  I don't like

25  them.

136

```
 1              THE COURT:  Okay.  How would you describe your
 2    level of competence with a computer?  Could you teach
 3    somebody else basic computer skills?
 4              THE PROSPECTIVE JUROR:  All I do is check my work
 5    e-mails on it.  Usually if I need anything looked up, my wife
 6    does that for me.
 7              THE COURT:  Okay.  And how about cell phone usage?
 8    Does your cell phone allow you to send and receive text
 9    messages?
10              THE PROSPECTIVE JUROR:  Yes, sir.
11              THE COURT:  And you know how to do that?
12              THE PROSPECTIVE JUROR:  Yes.
13              THE COURT:  Does it allow you to take photographs?
14              THE PROSPECTIVE JUROR:  Yes.
15              THE COURT:  Have you taken photographs with your
16    phone?
17              THE PROSPECTIVE JUROR:  Yes, Your Honor.
18              THE COURT:  Do you know how to transmit those
19    photographs with your phone?
20              THE PROSPECTIVE JUROR:  With some difficulty, but I
21    can figure it out.
22              THE COURT:  Okay.  How about programs like FaceTime
23    or Skype that allow you to actually have a realtime
24    conversation with somebody, do you know how to do that?
25              THE PROSPECTIVE JUROR:  I have no idea, sir.
```

1              THE COURT:  Okay.

2              Any follow-up, Ms. Gable?

3              MS. GABLE:  No, Your Honor.

4              THE COURT:  How about you, Mr. Bark?

5              MR. BARK:  No, Your Honor.

6              THE COURT:  Thank you very much, Mr. Cohen.  If

7    you'd just leave that microphone there in the chair for me,

8    I'd appreciate it.

9              THE PROSPECTIVE JUROR:  What do I do now, sir?

10             THE COURT:  Step back outside and we'll be with you

11   shortly.

12             THE PROSPECTIVE JUROR:  Thank you.

13             (Prospective juror Michael Cohen not present.)

14             THE COURT:  Ms. Ojeda, please, Mr. Fiorenza.

15             (Prospective juror Aurea Ojeda present.)

16             THE COURT:  Come on in, Ms. Ojeda.  Come right down

17   to the middle here and have a seat, and I need to ask you a

18   few quick questions.

19             THE PROSPECTIVE JUROR:  I have to stand up?

20             THE COURT:  No.  You may sit.  Be comfortable.

21             I apologize for bringing you in here by yourself,

22   but I need to ask you some personal questions in light of the

23   nature of the charges here.

24             You probably figured out from my summary that the

25   United States has charged Mr. Adleta with crimes involving

1    sex acts with minors; and Mr. Adleta, of course, has pled not

2    guilty, and he's presumed to be innocent of those charges.

3          But in view of the nature of the charges, I need to

4    ask you, as uncomfortable as I am asking you, whether or not

5    either you or any member of your family have ever been the

6    victim of a sexual assault?

7          THE PROSPECTIVE JUROR:  No, sir.

8          THE COURT:  It may be necessary for you, and likely

9    will be, to look at pictures in this case that depict young

10   children involved in sexual activity.  You may also hear some

11   testimony that includes very explicit language, which is

12   likely going to be disturbing to you.

13         I need to ask you whether or not you would be able

14   to look at that evidence and listen to that evidence and

15   still evaluate fairly and impartially whether or not the

16   United States has met its burden of proving that Mr. Adleta

17   is guilty of these offenses beyond a reasonable doubt?

18         THE PROSPECTIVE JUROR:  To be honest with you, I

19   might be very uncomfortable.

20         THE COURT:  Okay.  I don't doubt that that's true.

21   That's probably going to be true for all of the jurors.  What

22   I need to ask you, though, is even though I understand that

23   the evidence is going to be uncomfortable and unpleasant to

24   look at, could you look at that evidence, listen to my

25   instructions on the law, and make a judgment while working

1   with your fellow jurors as to whether or not the United

2   States has proven that Mr. Adleta committed these offenses

3   beyond a reasonable doubt?

4               THE PROSPECTIVE JUROR:  I don't know.

5               THE COURT:  Okay.  If at the end of the case you

6   were not persuaded that the government had met its burden of

7   proof, could you render a verdict of not guilty?

8               THE PROSPECTIVE JUROR:  I don't know.

9               THE COURT:  Okay.  Tell me a little bit more about

10  your reservation.

11              THE PROSPECTIVE JUROR:  Well, what you mean by

12  that?

13              THE COURT:  You say, "I don't know."  So help me

14  understand what -- how you would know.

15              THE PROSPECTIVE JUROR:  Well, I -- I think I feel

16  uncomfortable, yes, and in the fact that I know this is

17  not -- it has to be with religion or whatever it is, but, you

18  know, I -- I -- I am a Christian.  I do serve.  I'm a

19  Pentecostal and I believe -- you know, I don't think I'm here

20  to judge nobody.  I don't know.

21              THE COURT:  Okay.  So you have questions about

22  whether or not it's your position to sit in judgment of

23  somebody else?

24              THE PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Okay.  It would make it difficult for

1    you to do that?

2                    THE PROSPECTIVE JUROR:  Yes, sir.

3                    THE COURT:  Okay.  All right.

4                    Any follow-up, Ms. Gable?

5                    MS. GABLE:  No, Your Honor.

6                    THE COURT:  How about you, Mr. Bark?

7                    MR. BARK:  No, Your Honor.

8                    THE COURT:  Thanks, Ms. Ojeda.  If you would leave

9    that microphone in the chair there, I would appreciate it.

10                   THE PROSPECTIVE JUROR:  Thank you.

11                   (Prospective juror Aurea Ojeda not present.

12   Prospective juror Deborah McLaughlin present.)

13                   THE COURT:  Come in, Ms. McLaughlin.  If you'll

14   come all the way down here, there's a chair with a microphone

15   in it.  If you'll pick that mic up and have a seat, I have a

16   few short questions for you.

17                   THE PROSPECTIVE JUROR:  Sure.

18                   THE COURT:  I'm bringing you folks in one at a time

19   because I have to ask you some questions that are very

20   personal, and I apologize for that in advance.  You've

21   probably figured out that the government has charged Mr.

22   Adleta in this case with the commission of sexual offenses

23   involving minors.  Mr. Adleta, of course, has pled not guilty

24   and is presumed to be innocent of those charges.

25                   I need to ask you, even though it makes me

1   uncomfortable to ask and I'm sure you're uncomfortable to be

2   asked, whether you or any family members of yours have been

3   the victim of a sexual assault?

4               THE PROSPECTIVE JUROR:  No, sir.

5               THE COURT:  It's likely that you are going to hear

6   testimony that is explicit, that has explicit language in it.

7   You are going to be asked to look at photographs of young

8   children involved in various sexual activity.  It's likely

9   that that's going to be disturbing evidence for you to hear

10  and to see.

11              THE PROSPECTIVE JUROR:  No, sir.

12              THE COURT:  Do you think you'll be able to evaluate

13  that evidence and make a judgment as to whether or not the

14  government has proven its case beyond a reasonable doubt?

15              THE PROSPECTIVE JUROR:  Yes, sir.

16              THE COURT:  And if you feel like at the end of the

17  case that they have not proven Mr. Adleta's guilt beyond a

18  reasonable doubt, would you be able to render a verdict of

19  not guilty?

20              THE PROSPECTIVE JUROR:  Yes, sir.

21              THE COURT:  Do you use a computer yourself, either

22  at home or at work?

23              THE PROSPECTIVE JUROR:  Yes, sir.

24              THE COURT:  And do you send and receive e-mail?

25              THE PROSPECTIVE JUROR:  Yes, sir.

1          THE COURT:  Do you have a telephone that's capable

2    of sending and receiving text messages?

3          THE PROSPECTIVE JUROR:  Yes, sir.

4          THE COURT:  And you know how to do that?

5          THE PROSPECTIVE JUROR:  Yes, sir.

6          THE COURT:  And do you take photographs with your

7    phone?

8          THE PROSPECTIVE JUROR:  I have an old phone.

9          THE COURT:  Can it take pictures?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Do you know how to take pictures and

12    send them with your phone?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  How about programs like Skype or

15    FaceTime that allow you to have a face-to-face conversation

16    in real time with someone over the Internet, do you know how

17    to do that?

18          THE PROSPECTIVE JUROR:  I do, but I don't have

19    Skype.

20          THE COURT:  Okay.  But you understand generally how

21    that works?

22          THE PROSPECTIVE JUROR:  Yes, sir.

23          THE COURT:  Okay.  Would you be able to -- do you

24    think -- how would you describe your computer skills?  Are

25    you competent enough that you could teach someone else some

143

```
 1    basic computer skills in terms of how to turn the computer

 2    on, how to open it, how to send and receive e-mail, that sort

 3    of thing?

 4              THE PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  How about in terms of actually doing

 6    programming, that sort of thing?  Do you do any of that?

 7              THE PROSPECTIVE JUROR:  I can't program, but I use

 8    a computer a lot.

 9              THE COURT:  Okay.

10              Any follow-up, Ms. Gable?

11              MS. GABLE:  No, Your Honor.

12              THE COURT:  Mr. Bark?

13              MR. BARK:  No, Your Honor.

14              THE COURT:  Thank you very much, Ms. McLaughlin.

15    If you would leave the microphone there in the chair, I'd

16    appreciate it.

17              Ms. Karen Pizette is next, Mr. Fiorenza.

18              (Prospective juror Deborah McLaughlin not present.

19    Prospective juror Karen Pizette present.)

20              THE COURT:  Come in, Ms. Pizette, right here by the

21    right side by the chairs.  There's one in the middle that was

22    a microphone on it.  If you'll pick that mic up and have a

23    seat there, I'll ask you a few quick questions.

24              THE PROSPECTIVE JUROR:  Should I sit down?

25              THE COURT:  Yes, ma'am, please.  Be as comfortable
```

```
 1   as you can be in here by yourself.  I apologize for bringing

 2   you in and putting you in the spotlight, but I need to ask

 3   you some questions that are personal in nature.  So that's

 4   the reason I want to talk to you as privately as possible.

 5            You may have figured out from my summary of the

 6   case that the United States here has charged Mr. Adleta with

 7   the commission of crimes involving children that are of a

 8   sexual nature, and Mr. Adleta, of course, has entered a plea

 9   of not guilty and is presumed to be innocent of those

10   charges.

11            But I need to ask you, in view of the nature of the

12   charges, as uncomfortable as I am asking you, whether or not

13   either you or any family members of yours have ever been the

14   victim of a sexual assault?

15            THE PROSPECTIVE JUROR:  No, we have not.

16            THE COURT:  It's likely that you'll be asked to

17   listen to evidence that is very explicit in terms of the

18   language, likely to be disturbing and offensive.  You will

19   also be asked to look at photographs depicting young children

20   involved in sexual activity, also likely to be disturbing to

21   you.

22            I need to ask you whether or not you would be able

23   to look at that evidence and still evaluate in its totality

24   whether or not the government has met its burden of proving

25   Mr. Adleta's guilt beyond a reasonable doubt?
```

 1              THE PROSPECTIVE JUROR:  I believe that I will.

 2              THE COURT:  Do you understand why I'm asking the

 3    question?

 4              THE PROSPECTIVE JUROR:  Absolutely.

 5              THE COURT:  I want to make sure that you're not so

 6    overwhelmed by one piece of evidence or one or two pieces of

 7    evidence that you don't listen to or consider anything else.

 8    Can you assure me that that would not be the case?

 9              THE PROSPECTIVE JUROR:  I'm sure.

10              THE COURT:  Okay.  Do you have a computer that you

11    use yourself at home or at work?

12              THE PROSPECTIVE JUROR:  Several.

13              THE COURT:  Do you know how to send and receive

14    e-mail messages?

15              THE PROSPECTIVE JUROR:  Absolutely.

16              THE COURT:  Do you know how to take pictures with

17    your cell phone?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  And send those?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  And can you send and receive text

22    messages?

23              THE PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Do you think you would be able to teach

25    somebody else some basic computer skills just in terms of how

1    to send and receive e-mails?

2                THE PROSPECTIVE JUROR:  Yes, I've actually taught

3    that.

4                THE COURT:  Okay.  Do you do any programming

5    yourself?

6                THE PROSPECTIVE JUROR:  I have.

7                THE COURT:  You would describe yourself as very

8    comfortable in terms of your computer knowledge?

9                THE PROSPECTIVE JUROR:  Very comfortable.

10               THE COURT:  Are you familiar with the programs like

11   Skype or FaceTime that allow you to have realtime video

12   chats?

13               THE PROSPECTIVE JUROR:  Yeah, I do FaceTime because

14   I'm a Mac person.

15               THE COURT:  Okay.  I may have asked you this.  If

16   so, I apologize.  But after listening to all the evidence, if

17   you were not persuaded that the government had proven its

18   case beyond a reasonable doubt, would you have any difficulty

19   rendering a verdict of not guilty?

20               THE PROSPECTIVE JUROR:  If it wasn't proven, yes, I

21   would have no difficulty.

22               THE COURT:  Okay.  Thank you very much.

23               Ms. Gable, any follow-up?

24               MS. GABLE:  No, Your Honor.

25               THE COURT:  Mr. Bark?

```
 1              MR. BARK:  No, Your Honor.
 2              THE COURT:  Thank you very much, Ms. Pizette.  If
 3    you would leave that microphone right there in the chair and
 4    step back outside, I'll be with you shortly.
 5              THE PROSPECTIVE JUROR:  Thank you.
 6              Mr. McWhorter, please.
 7              (Prospective juror Karen Pizette not present.
 8    Prospective juror Phillip McWhorter present.)
 9              THE COURT:  Come on in, Mr. McWhorter.
10              Ginny, can you get Mr. McWhorter one of those
11    headsets, see if that helps.
12              Mr. McWhorter, have a seat right up here.  Right
13    there where that microphone is, if you could, have a seat
14    right there.  No.  Right on back there where I'm pointing.
15              There you go.
16              See if those help you.  Put those on and see if
17    they help you.
18              THE COURTROOM DEPUTY:  They're for hearing.  Do you
19    want to try them?
20              THE COURT:  We'll give that a shot and see if that
21    helps at all.
22              THE PROSPECTIVE JUROR:  I don't hear a thing.
23              THE COURT:  It's not turned on?
24              Is that any better?
25              THE PROSPECTIVE JUROR:  No.
```

```
 1            THE COURT:  Can you hear me now?

 2            THE PROSPECTIVE JUROR:  Yes, I can hear you now.

 3            THE COURT:  Well, I feel like the Verizon guy.

 4   Does that help any?

 5            THE PROSPECTIVE JUROR:  Yes, it does.

 6            THE COURT:  Great.  Mr. McWhorter, I brought you in

 7   here by yourself, all of you, because I need to ask you some

 8   questions that are personal in nature in view of the nature

 9   of the charges here.

10            You may have figured out from my summary that the

11   United States has accused Mr. Adleta of committing crimes of

12   a sexual nature involving children.  Mr. Adleta, of course,

13   has entered a plea of not guilty and is presumed to be

14   innocent of those charges.

15            But in light of the charges, I need to ask you

16   whether or not either you or any family member have ever been

17   the victim of a sexual assault?

18            THE PROSPECTIVE JUROR:  No.

19            THE COURT:  It's likely that you will hear

20   testimony or evidence that is explicit in nature in terms of

21   its language.  You will also probably be asked to look at

22   photographs that depict young children engaged in various

23   types of sexual activity.  It's likely that that evidence

24   will be disturbing to you.

25            I need to ask you whether or not, in light of that,
```

1    you would be able to consider the evidence, the totality of

2    the evidence, even though some of it was disturbing to you,

3    and render a verdict that was fair and impartial in light of

4    all of the evidence in the case?

5             THE PROSPECTIVE JUROR:  This is actual evidence

6    from this case?

7             THE COURT:  Oh, yes.  Everything that you'll see or

8    hear is evidence that is going to be admitted in this case.

9             THE PROSPECTIVE JUROR:  I might have a problem with

10   that.

11            THE COURT:  Okay.  Tell me what your concern is.

12            THE PROSPECTIVE JUROR:  That's not what I like to

13   see.  I don't like kids being treated that way, anyone

14   really, but especially kids.

15            THE COURT:  Sure, and that's understandable.

16   That's the reason I told you in advance that it's likely to

17   be disturbing to you.

18            My question is that the nature of the charges are

19   such that the evidence that the government is going to bring

20   to bear in order to try to prove their case is disturbing in

21   nature.  What I need to find out is whether you would be able

22   to keep an open mind and listen to all of the evidence in the

23   case, both the disturbing evidence and maybe there's evidence

24   that's not -- I don't know what the evidence is going to be

25   yet, but could you evaluate it at the end of the day and make

1    a judgment as to whether or not you felt that the government

2    had proven its case beyond and to the exclusion of every

3    reasonable doubt, even though some of that evidence might

4    have disturbed you?

5                THE PROSPECTIVE JUROR:  Yes, I believe I could.

6                THE COURT:  Okay.  And even though some of that

7    evidence might have disturbed you at the end of the day, at

8    the end of the case if you felt like the government had not

9    met its burden of proving that Mr. Adleta committed these

10   offenses beyond a reasonable doubt, could you render a

11   verdict of not guilty?

12               THE PROSPECTIVE JUROR:  I couldn't tell you that.

13   I really couldn't tell you that until I saw the end of it.

14               THE COURT:  Okay.  And that's why I'm asking you.

15   I'm asking you at the end of the case if you were not

16   persuaded that the government had proven its case, in other

17   words, if you went back to the jury room after listening to

18   all of the evidence and my instructions on the law and you

19   felt you were convicted in your heart that there was a

20   reasonable doubt as to whether or not Mr. Adleta committed

21   the offenses that were charged by the government, could you

22   render a verdict of not guilty?

23               THE PROSPECTIVE JUROR:  No, I couldn't say that I

24   could.

25               THE COURT:  Okay.  And why is that?

1    THE PROSPECTIVE JUROR:  I -- just the nature of the

2    case.

3    THE COURT:  All right.  Are you telling me that you

4    think Mr. Adleta would be required to prove that he was not

5    guilty as opposed to the other way around?

6    THE PROSPECTIVE JUROR:  Yes, sir.

7    THE COURT:  All right.

8    Any further questions, Ms. Gable?

9    MS. GABLE:  No, Your Honor.

10    THE COURT:  Mr. Bark?

11    MR. BARK:  No, Your Honor.

12    THE COURT:  Thank you very much.  We appreciate

13    that, Mr. McWhorter.  Leave my ear phones here, will you?

14    Kelly Koshlap.

15    (Prospective juror Phillip McWhorter not present.

16    Prospective juror Kelly Koshlap present.)

17    THE COURT:  Come on in, Mr. Koshlap.  There's a

18    microphone about halfway down here in one of these chairs.

19    If you would pick it up and have a seat for me, I'd

20    appreciate it.

21    I apologize for singling you out or singling all of

22    you out, but I need to ask you some very personal questions

23    in light of the nature of the charges.  So my apologies for

24    putting you on the spotlight.

25    You may have figured out from my summary of the

1 case that the United States has charged Mr. Adleta here with

2 the commission of certain crimes that involve sexual activity

3 with children; and Mr. Adleta, of course, has entered a plea

4 of not guilty and is presumed to be innocent of those

5 charges.

6    I need to ask you, in light of the nature of the

7 charges, whether you or any close family member have ever

8 been the victim of a sexual assault?

9    THE PROSPECTIVE JUROR:  No, sir.

10    THE COURT:  It's likely that you will hear evidence

11 that is very explicit in terms of the language and likely

12 disturbing and offensive.  You will also likely be asked to

13 look at photographs depicting children, young children,

14 engaged in sexual activity.  It's also likely to be

15 disturbing to you.

16    My question is whether or not you would be able to

17 look at all of the evidence, that is, consider the totality

18 of the evidence and my instructions on the law and render a

19 verdict as to -- a fair and impartial verdict as to whether

20 or not the government has proven its case beyond a reasonable

21 doubt?

22    THE PROSPECTIVE JUROR:  I believe I can.

23    THE COURT:  Do you understand the reason I'm asking

24 you these questions?  Can you appreciate my concern?  My

25 concern is I want to make sure that -- I know in advance that

```
 1    this evidence is going to be disturbing, and certainly the

 2    government has a right to introduce this evidence to prove

 3    their case; but I also want to make sure that you're willing

 4    to not be overwhelmed by the disturbing nature of the

 5    evidence and not keep an open mind and listen to all of the

 6    evidence, my instructions on the law in terms of making a

 7    decision as to whether or not the government met its burden

 8    of proving that Mr. Adleta is guilty of these offenses beyond

 9    a reasonable doubt.  Do you think you can do that?

10              THE PROSPECTIVE JUROR:  Yes, sir.

11              THE COURT:  Okay.  If at the end of the day, at the

12    end of the case you are not persuaded that the government has

13    met its burden, would you have any difficulty rendering a

14    verdict of not guilty?

15              THE PROSPECTIVE JUROR:  No, sir.

16              THE COURT:  Do you have a computer that you use

17    yourself, either at home or at work?

18              THE PROSPECTIVE JUROR:  Yes, sir.

19              THE COURT:  And do you send and receive e-mails?

20              THE PROSPECTIVE JUROR:  Yes, sir.

21              THE COURT:  Do you send and receive text messages

22    on your phone?

23              THE PROSPECTIVE JUROR:  Yes, sir.

24              THE COURT:  Do you know how to take pictures with

25    your phone?
```

1              THE PROSPECTIVE JUROR:  Yes, sir.

2              THE COURT:  And send them?

3              THE PROSPECTIVE JUROR:  Yes, sir.

4              THE COURT:  How about programs like Skype or

5    FaceTime, where you can do realtime video chats, do you know

6    how to do that?

7              THE PROSPECTIVE JUROR:  Yes, sir.

8              THE COURT:  Okay.  Would you be able to generally

9    instruct somebody else in the basics of how to use a

10   computer?

11             THE PROSPECTIVE JUROR:  Yes, sir.

12             THE COURT:  You're not going to be asked to do

13   that.  I just want to make sure.

14             Any follow-up, Ms. Gable?

15             MS. GABLE:  No, Your Honor.

16             THE COURT:  How about you, Mr. Bark?

17             MR. BARK:  No, Your Honor.

18             THE COURT:  Thank you very much.  If you will leave

19   that microphone in the chair there, I'd appreciate it.

20             Mr. Rapovich is next.

21             Are you all doing all right in terms of breaks?

22             MS. GABLE:  Yes, Your Honor.

23             THE COURT:  How about you, Diane?

24             THE COURT REPORTER:  Yes, Judge.  Thank you.

25             THE COURT:  You have to tough it out, Ginny.

1          (Prospective juror Kelly Koshlap not present.

2   Prospective juror Donald Rapovich present.)

3          THE COURT:  Come in, Mr. Rapovich.  Take a seat.

4   About halfway down here, a little bit farther than halfway

5   down there's a microphone sitting in one of the chairs.  If

6   you would, have a seat and pick the microphone up for me.

7          My apologies for bringing you here in the

8   spotlight, but I need to ask you some personal questions in

9   light of the nature of these charges, and I apologize for

10  that that in advance if it makes you uncomfortable.  It

11  probably will.  It makes me uncomfortable to ask you, but

12  it's necessary.

13         You have probably figured out that the United

14  States has charged Mr. Adleta with committing crimes of a

15  sexual nature involving children.  Do you understand that

16  that's the nature of the charge?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Mr. Adleta, of course, has pled not

19  guilty and is presumed to be innocent of those charges.  I

20  need to ask you whether or not you or any family members have

21  ever been the victim of a sexual assault?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  You will likely be asked to listen to

24  evidence that is explicit in nature.  The language is

25  explicit.  You also will probably be asked to look at

1  photographs that depict young children engaged in sexual

2  activity.  These pictures are likely to be disturbing to you.

3          I need to ask you whether or not you would be able

4  to be fair and impartial in rendering a verdict and

5  evaluating whether or not the government has met its burden

6  of proof even though some of these depictions might be

7  disturbing to you?

8          (No response.)

9          THE COURT:  Did I confuse with you my question?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Let me try to start over.  Some of the

12  evidence that you are going to see is going to be -- is going

13  to involve the depiction of children engaged in sexual

14  activity.  Will you be able to listen to all of the evidence

15  in the case and make a decision about whether or not the

16  government has proven Mr. Adleta committed these offenses

17  beyond a reasonable doubt?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Even though some of the evidence that

20  you are asked to look at is disturbing to you?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Do you understand why I'm asking you

23  the question?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Do you think you would be able to be

```
 1    fair to Mr. Adleta and be fair to the government even though

 2    some of the evidence that you're asked to view is disturbing?

 3                THE PROSPECTIVE JUROR:  Yes.

 4                THE COURT:  If at the end of the case you were not

 5    persuaded that the government had met its burden of proving

 6    Mr. Adleta's guilt beyond a reasonable doubt, would you be

 7    able to enter a verdict of not guilty?

 8                THE PROSPECTIVE JUROR:  Yes.

 9                THE COURT:  Do you have a computer that you use

10    yourself at home or at work?

11                THE PROSPECTIVE JUROR:  Yes.

12                THE COURT:  Do you send and receive e-mails?

13                THE PROSPECTIVE JUROR:  Yes.

14                THE COURT:  And do you have a cell phone that can

15    send and receive text messages?

16                THE PROSPECTIVE JUROR:  I don't have a cell phone.

17                THE COURT:  None at all?

18                THE PROSPECTIVE JUROR:  No.  My wife has one, but I

19    don't have one.

20                THE COURT:  Do you understand how a cell phone

21    sends and receives text messages?  I don't mean the

22    technology, but do you understand that you can send and

23    received text messages over telephones?

24                THE PROSPECTIVE JUROR:  I know you can, but I don't

25    know how.
```

1          THE COURT:  I assume, since you don't have a phone

2     that you use, you don't take pictures with a cell phone.  Is

3     that true?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  How about computer programs like Skype

6     or FaceTime, where you can actually have a conversation where

7     you can see the other person on the screen?

8          THE PROSPECTIVE JUROR:  I've never used one, don't

9     know how.

10          THE COURT:  Okay.

11          Any follow-up, Ms. Gable?

12          MS. GABLE:  No, Your Honor.

13          THE COURT:  How about you, Mr. Bark?

14          MR. BARK:  No, Your Honor.

15          THE COURT:  All right.  Thank you very much.  If

16     you'll leave that microphone there in the chair, we'll call

17     in the next juror, and I'll be back with you shortly.

18          Mr. Prevalus.

19          (Prospective juror Donald Rapovich not present.

20     Prospective juror Wilfrid Prevalus present.)

21          THE COURT:  Come on in, Mr. Prevalus, right down

22     here and have a seat on the side.  There's a microphone.  If

23     you will, have a seat and a pick the microphone up right down

24     here in the middle.

25          There you go.  Thank you.  If you will, pick that

1    microphone up and use it for me, please.

2          Mr. Prevalus, I need to ask you some personal

3    questions because of the nature of the charges here.  Can you

4    understand me all right?

5          THE PROSPECTIVE JUROR:  Yes, sir.

6          THE COURT:  Do you understand that the United

7    States has charged Mr. Adleta with committing sex crimes

8    involving children?

9          THE PROSPECTIVE JUROR:  Yes, sir.

10          THE COURT:  Do you understand Mr. Adleta has pled

11    not guilty to those charges?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  And do you understand that he's

14    presumed to be not guilty, that he's presumed to be innocent?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  All right.  In other words, when we

17    start off the case, Mr. Adleta is presumed to be innocent and

18    the government has the job or the burden of proving beyond a

19    reasonable doubt that he's guilty of the offenses charged; do

20    you understand that?

21          THE PROSPECTIVE JUROR:  Yes, sir.

22          THE COURT:  It is -- I have to ask you whether or

23    not either you or any family member have ever been the victim

24    of a sexual assault?

25          THE PROSPECTIVE JUROR:  No.

| | |
|---|---|
| 1 | THE COURT:  Okay.  You will likely -- if you are |
| 2 | seated as a juror in this case, you will hear explicit |
| 3 | language.  You will be asked to look at photographs that |
| 4 | involve minor children, young children, engaged in sexual |
| 5 | activity.  It's likely to be disturbing to you. |
| 6 | My question is, will you be able to listen to all |
| 7 | of the evidence and decide whether or not the government has |
| 8 | met its burden of proof? |
| 9 | THE PROSPECTIVE JUROR:  I could say yes, but, you |
| 10 | know, like I said, I bad at language.  I really don't |
| 11 | understand everything you said. |
| 12 | THE COURT:  All right. |
| 13 | Do you want to inquire further of Mr. Prevalus, Ms. |
| 14 | Gable? |
| 15 | MS. GABLE:  No, Your Honor. |
| 16 | THE COURT:  How about you, Mr. Bark? |
| 17 | MR. BARK:  May I briefly? |
| 18 | THE COURT:  Yes. |
| 19 | MR. BARK:  Thank you. |
| 20 | Sir, how are you? |
| 21 | THE PROSPECTIVE JUROR:  Pretty good. |
| 22 | MR. BARK:  You've mentioned to us a couple of times |
| 23 | about the language barrier. |
| 24 | THE PROSPECTIVE JUROR:  Yes, sir. |
| 25 | MR. BARK:  And you seem to understand a lot. |

1          THE PROSPECTIVE JUROR:  Yes.  Like I said before, I

2   can understand, like, 60 percent but not 100.

3          MR. BARK:  Has there been anything that you've

4   listened to so far that you couldn't understand?

5          THE PROSPECTIVE JUROR:  So far, I think I

6   understand almost everything.

7          MR. BARK:  You think so but you're not positive?

8          THE PROSPECTIVE JUROR:  I may have missed part of

9   it, but not the whole thing.

10          MR. BARK:  I'm not trying to embarrass you.

11          THE PROSPECTIVE JUROR:  Oh, no, no, no, no.  To me,

12   English is my third language.  So, for myself, I'm doing

13   good.  I'm not from here.  So, yes.

14          MR. BARK:  Okay.  Well, thank you for letting us

15   know about your concern.

16          THE PROSPECTIVE JUROR:  You're welcome, sir.

17          THE COURT:  Thank you, Mr. Prevalus.  You can step

18   out.  If you'll leave the microphone there in the chair, I'd

19   appreciate it.

20          THE PROSPECTIVE JUROR:  Thank you.

21          THE COURT:  Mr. Radzai is next.

22          (Prospective juror Wilfrid Prevalus not present.

23   Prospective juror James Radzai present.)

24          THE COURT:  Come on in, Mr. Radzai.  Have a seat

25   over on the side.  There's a microphone sitting on a seat

1    about halfway down.  If you'll pick the microphone up and

2    have a seat, I need to ask you a couple of questions.  You

3    can have a seat there and be comfortable.

4           I don't mean to put you on the spot in here by

5    yourself, but because of the nature of the charges, I have to

6    ask you some questions that are highly personal.  So I

7    apologize for that in advance.

8           You've probably figured out that the United States

9    has charged Mr. Adleta with committing sexual offenses

10   involving minors.  Do you understand that?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Mr. Adleta has pled not guilty and is

13   presumed to be innocent of those charges; do you understand

14   that also?

15              THE PROSPECTIVE JUROR:  Yes.

16              THE COURT:  I need to ask you, and I apologize for

17   it, whether you or any close family members have ever been

18   the victim of a sexual assault?

19              THE PROSPECTIVE JUROR:  No.

20              THE COURT:  It is likely, Mr. Radzai, that you'll

21   hear testimony that has very explicit language in it.  You

22   may also be asked to look at pictures of young children that

23   are engaged in actual activity.  Those photographs are likely

24   to be disturbing to you.

25              I need to ask you whether or not you will be able

1    to listen to that evidence, look at those photographs and

2    still evaluate the totality of the government's case and make

3    a decision as to whether or not they have met their burden of

4    proving that Mr. Adleta is guilty of the offenses charged

5    beyond a reasonable doubt?

6              THE PROSPECTIVE JUROR:  Yes, I'll try to be

7    objective.

8              THE COURT:  Okay.  And at the end of the case if

9    the government has not persuaded you that Mr. Adleta is

10   guilty beyond a reasonable doubt of the offenses that have

11   been charged, would you be able to render a verdict of not

12   guilty?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Do you have a computer that you use at

15   home or at work?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  And are you pretty proficient with the

18   computer?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Do you send and receive e-mails?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Does your phone send and receive text

23   messages?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Do you know what video chats are, like,

164

```
 1    FaceTime and Skype?

 2              THE PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  Do you use those from time to time

 4    yourself?

 5              THE PROSPECTIVE JUROR:  No.

 6              THE COURT:  Do you know how to take and send

 7    photographs using a cell phone?

 8              THE PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Any follow-up, Ms. Gable?

10              MS. GABLE:  No, Your Honor.

11              THE COURT:  Mr. Bark?

12              MR. BARK:  Very briefly.  May I?

13              THE COURT:  Yes.

14              MR. BARK:  Thank you.

15              Sir, you said you'll try to be objective.  Are you

16    concerned that, based on the nature of the charges or some of

17    the evidence you will see, that you will not be able to be

18    objective?

19              THE PROSPECTIVE JUROR:  I think I could stay

20    objective.  I'm pretty sure.

21              MR. BARK:  Thank you.

22              THE COURT:  Thank you, Mr. Radzai.  If you'll leave

23    that microphone there in the chair, I'd appreciate it.

24              THE PROSPECTIVE JUROR:  Is that it?

25              THE COURT:  Yes.  If you'd wait outside, we'll be
```

```
 1    with you -- I'd like to say "shortly," but we'll be with you
 2    as soon as we can.
 3              THE PROSPECTIVE JUROR:  Thank you.
 4              THE COURT:  Next is Mr. Cole.
 5              (Prospective juror James Radzai not present.
 6    Prospective juror Eugene Cole present.)
 7              THE COURT:  Come on in, Mr. Cole.  If you'll come
 8    about halfway down here and have a seat, there's a microphone
 9    sitting in one of those chairs.  If you'd have a seat next to
10    it and pick it up, I'll ask you a few quick questions.  It's
11    a little farther down.  Have a seat and be comfortable.
12              I apologize for bringing you in here by yourself.
13    I need to ask you some questions that are really very
14    personal because of the nature of the charges.  So I
15    apologize for that in advance.
16              Do you understand that the government has charged
17    Mr. Adleta with crimes that involve minor children in sexual
18    activity?
19              THE PROSPECTIVE JUROR:  Yes, sir.
20              THE COURT:  Do you understand Mr. Adleta has pled
21    not guilty to those charges and is presumed to be innocent?
22              THE PROSPECTIVE JUROR:  Yes, sir.
23              THE COURT:  I need to ask you, and I apologize for
24    it, whether you or any close family members have ever been
25    the victim of a sexual assault?
```

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  You will hear testimony in this case

3    that is very explicit in nature in terms of the language.

4    You will also have to look at photographs that depict young

5    children engaged in sexual activity of various kinds.  It's

6    likely that that evidence is going to be disturbing to you,

7    and I need to ask you whether or not you would be willing to

8    or able to listen to all of the evidence in the case and

9    evaluate whether or not the government has proven Mr. Adleta

10   committed these offenses beyond a reasonable doubt?

11         THE PROSPECTIVE JUROR:  Yes, sir.

12         THE COURT:  Do you understand why I would ask the

13   question?

14         THE PROSPECTIVE JUROR:  Yes, sir.

15         THE COURT:  Do you understand that if the case is

16   concluded -- let me ask it this way.  At the end of the case,

17   if the government has not persuaded you beyond a reasonable

18   doubt that Mr. Adleta is guilty of the offenses charged in

19   the Indictment, even though you have seen some disturbing

20   evidence, would you be able to render a verdict of not

21   guilty?

22         THE PROSPECTIVE JUROR:  Yes, sir.

23         THE COURT:  Do you have a computer that you use

24   yourself at home or at work?

25         THE PROSPECTIVE JUROR:  I have a computer, but I

1    don't ever use it.

2              THE COURT:  All right.  How about your cell phone?

3    Do you use your cell phone to send and receive text messages?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Does your cell phone take pictures?

6              THE PROSPECTIVE JUROR:  No, I don't think so.

7              THE COURT:  If it does, you don't know about it?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Okay.

10             Anything further for Mr. Cole?

11             MS. GABLE:  No, Your Honor.

12             THE COURT:  Mr. Bark?

13             MR. BARK:  No, Your Honor.

14             THE COURT:  Thank you, Mr. Cole.  Just leave that

15   microphone in the chair, if you would, please.

16             Anna Kolba.

17             (Prospective juror Eugene Cole not present.

18   Prospective juror Anna Kolba present.)

19             THE COURT:  Come on in, Ms. Kolba.  Right over

20   here.  If you'll just take this middle seat, there's a

21   microphone right next to it.  If you'll pick up the mic, I

22   have a few questions for you.  Right this way where I'm

23   pointing.  Thank you.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  Thanks.  Have a seat.

1          My apologies for putting the spotlight on all of

2   you individually, but I need to ask you some personal

3   questions because of the nature of the case.  So I hope

4   you'll bear with me, and my apologies in advance.

5          You've probably figured out from my summary that

6   the United States has charged Mr. Adleta with committing sex

7   crimes involving minor children.  Mr. Adleta has entered a

8   plea of not guilty and he's presumed to be innocent of those

9   charges; do you understand that?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  I have to ask you, and I apologize for

12   it, whether you or any close family members have ever been

13   the victim of a sexual assault?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  You may hear or likely will hear

16   evidence, if you're seated as a junior in this case, that is

17   disturbing to you, that is offensive in the language.  You

18   may also be asked to look at photographs of young children

19   engaged in various sexual activity.

20          What I need to ask you is, even though some of that

21   evidence that you may see and hear is disturbing, would you

22   be able to keep an open mind and listen to the totality of

23   the evidence in the case and reach a decision as to whether

24   or not the government has proven Mr. Adleta is guilty beyond

25   a reasonable doubt of committing the offenses with which he's

1   charged?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  If at the end of the case if you were

4   not persuaded that the government had met its burden, in

5   other words, if you had reasonable doubt in your own mind

6   that Mr. Adleta had committed these offenses, would you be

7   able to render a verdict of not guilty even though you had

8   seen some disturbing evidence?

9              THE PROSPECTIVE JUROR:  I don't know.

10             THE COURT:  All right.  Do you understand my

11  question?  My question is, when the case is all over, if you

12  have a reasonable doubt in your own mind as to whether or not

13  Mr. Adleta committed the offense, in other words, the

14  government has not met its burden, would you be able to

15  return a verdict of not guilty?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Do you have a computer that you use

18  yourself, either at home or at work?

19             THE PROSPECTIVE JUROR:  At home, yes.

20             THE COURT:  And do you send and receive e-mails

21  with that?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And how about your cell phone, does it

24  send and receive text messages?

25             THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Do you know about that technology,

2   sending and receiving text messages?

3          THE PROSPECTIVE JUROR:  I don't text.

4          THE COURT:  But you know people that do?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Okay.  How about using the computer for

7   video chats, like, FaceTime or Skype, have you ever done

8   that?

9          THE PROSPECTIVE JUROR:  I open up e-mails that I

10  get from somebody, but I don't send.

11         THE COURT:  Okay.  All right.  So would you

12  describe yourself as sort of an introductory computer user,

13  basic-level computer user?

14         THE PROSPECTIVE JUROR:  On some things, yes.

15         THE COURT:  Okay.

16         Any follow-up, Ms. Gable?

17         MS. GABLE:  No, Your Honor.

18         THE COURT:  How about you, Mr. Bark?

19         MR. BARK:  Please, Your Honor.

20         THE COURT:  All right.

21         MR. BARK:  Hi, Ms. Kolba.

22         THE PROSPECTIVE JUROR:  Yes.

23         MR. BARK:  How are you?

24         THE PROSPECTIVE JUROR:  Okay.

25         MR. BARK:  You've mentioned to us earlier that you

```
 1    went through chemo.

 2              THE PROSPECTIVE JUROR:  Yes.

 3              MR. BARK:  And that affects your memory?

 4              THE PROSPECTIVE JUROR:  The chemo and the

 5    radiation, yeah.

 6              MR. BARK:  So if you have to listen to multiple

 7    witnesses and a lot of testimony, are you concerned you'll

 8    have trouble keeping track of it all?

 9              THE PROSPECTIVE JUROR:  I might.  You know, I don't

10    know.  Some days are good and some days aren't.  So I don't

11    know.

12              MR. BARK:  Well, I'm sorry you went through that,

13    and I thank you for being honest with us.  Thank you.

14              THE PROSPECTIVE JUROR:  Thank you.

15              THE COURT:  Thank you, Ms. Kolba.  If you will,

16    just leave the microphone there for me, please.  Thank you.

17              THE PROSPECTIVE JUROR:  Thank you.

18              THE COURT:  Give us a little more patience and wait

19    outside and I'll be with you shortly.

20              Next is Ms. Alvanzo.

21              (Prospective juror Anna Kolba not present.

22    Prospective juror Sharon Alvanzo present.)

23              THE COURT:  Come on in, Ms. Alvanzo, and come over

24    to the side.  There's a microphone sitting in one of those

25    chairs.
```

1           Ginny, would you mind getting that mic and scooting

2      her back a little bit.

3           Come down here, right here in the middle, where

4      that chair is turned out.  There you go.  That'll be great.

5      Thank you very much.

6           I apologize for putting you in the spotlight, but I

7      need to ask you some really personal questions.  So I

8      apologize for that in advance, but it's because of the nature

9      of the charges.

10          You've probably figured out that the United States

11     has charged Mr. Adleta with committing certain sex crimes

12     involving minor children.  Mr. Adleta has entered a plea of

13     not guilty and is presumed to be innocent of those charges.

14          But in light of the charges, I need to ask you, and

15     I apologize for it, whether you or any member of your family

16     have ever been the victim of a sexual assault.

17               THE PROSPECTIVE JUROR:  No, sir.

18               THE COURT:  All right.  You may also have to listen

19     to evidence in this case that is very explicit in terms of

20     the language.  You may also be asked to look at photographs

21     that depict children engaged in various types of sexual

22     activity.  It's likely that that evidence will be disturbing

23     to you.

24          I need to ask you whether or not you would be able

25     to look at that evidence, listen to that evidence and keep an

```
 1   open mind and evaluate the total evidence in the case and

 2   reach a decision as to whether or not the United States had

 3   proven Mr. Adleta committed the offenses charged beyond a

 4   reasonable doubt?

 5              THE PROSPECTIVE JUROR:  Yes, sir.

 6              THE COURT:  All right.  If at the end of the

 7   government's case if you were persuaded that -- if you were

 8   not persuaded that the United States had met its burden of

 9   proving beyond a reasonable doubt that Mr. Adleta committed

10   these offenses, even though you were disturbed by some of the

11   evidence, would you be able to render a verdict of not

12   guilty?

13              THE PROSPECTIVE JUROR:  Yes, sir.

14              THE COURT:  Okay.  Do you have a computer at home

15   or at work that you use?

16              THE PROSPECTIVE JUROR:  Yes, I do.

17              THE COURT:  And do you send and receive e-mails?

18              THE PROSPECTIVE JUROR:  Yes, I do.

19              THE COURT:  Do you send and receive text messages

20   on your phone?

21              THE PROSPECTIVE JUROR:  Yes, I do.

22              THE COURT:  And do you know -- are you familiar

23   with Skype and FaceTime, things that allow you to have a

24   video chat with people in real time?

25              THE PROSPECTIVE JUROR:  Yes, I am.
```

1          THE COURT:  Would you be able to give somebody else

2     some basic instruction in how to use a computer?

3          THE PROSPECTIVE JUROR:  Yes, I would.

4          THE COURT:  All right.

5          Any other questions, Ms. Gable?

6          MS. GABLE:  No, Your Honor.

7          THE COURT:  How about you, Mr. Bark?

8          MR. BARK:  No, Your Honor.

9          THE COURT:  Thank you, ma'am.  If you'll leave that

10    microphone in the chair, please, and wait outside, we'll be

11    with you shortly.

12          Shauna Wadsworth.  Sharon.  No.  Shauna Wadsworth.

13    I'm sorry.

14          (Prospective juror Sharon Alvanzo not present.

15    Prospective juror Shauna Wadsworth present.)

16          THE COURT:  Come over here, Ms. Wadsworth.  There's

17    a microphone in that chair.  I need to ask you a couple of

18    questions.  I apologize for spotlighting you, but the

19    questions are personal in nature.

20          You may have figured out that the government has

21    charged Mr. Adleta with committing sex crimes involving minor

22    children.  Mr. Adleta has entered a plea of not guilty and he

23    is presumed to be innocent of those charges.

24          I need to ask you, even though I'm uncomfortable

25    asking it and I'm sure you're uncomfortable being asked,

 1    whether or not either you or any close family members have

 2    been involved in a sexual assault?

 3              THE PROSPECTIVE JUROR:  Yes, I was when I was 16.

 4              THE COURT:  Okay.  You don't need to elaborate on

 5    the details of that at all.  I don't want to pry in that

 6    respect, but I do want to ask you whether or not in light of

 7    that fact, do you think that you would be able to listen to

 8    the evidence in a fair and impartial way and evaluate whether

 9    or not the government met its burden of proving Mr. Adleta

10    committed the offenses charged in the Indictment beyond a

11    reasonable doubt?

12              THE PROSPECTIVE JUROR:  I think I would.  I have

13    worked through a lot of those old things, as it was many

14    years ago, and I understand that not everybody who's accused

15    is guilty and I would want to weigh the evidence and be

16    partial (sic) and fair as possible.

17              THE COURT:  Okay.  It's likely that you're going to

18    listen to evidence that is explicit in nature in terms of the

19    language if you're seated as a juror in this case.  It's also

20    likely that you will be asked to look at photographs that

21    depict children engaged in various types of sexual activity.

22    It's likely that that evidence will be disturbing to you, and

23    I need to ask you whether or not you think that you would be

24    able to be fair and impartial and evaluate the totality of

25    the evidence in the case and reach a conclusion as to whether

1    or not the government met its burden of proving that Mr.

2    Adleta committed the offenses with which he's charged beyond

3    a reasonable doubt?

4              THE PROSPECTIVE JUROR:  I'm -- I can only guess on

5    this side of it.  I think I would do my best to do that.  I

6    would assume, when you're talking -- I think anybody viewing

7    those kinds of things would find them upsetting.  I'm not

8    sure if they would impact me more or less because of my

9    experience.

10             There is one other thing I just -- I don't know

11   that it would factor into, but I would feel like the parties

12   involved would want to know this part, too.

13             THE COURT:  Sure.

14             THE PROSPECTIVE JUROR:  Part of the work I do in

15   ministry is with an organization called Raffa House, and they

16   are -- their work is to help rescue young children out of

17   sexual exploitation.  So it's a big heart passion of mine.

18             I don't know -- I don't feel that it would impact

19   my judgment one way or the other, because I would want to

20   really focus on a person's guilt or innocence of a crime and

21   I don't think this would be my job to predetermine that; but

22   I also feel like I wouldn't want somebody finding out about

23   that later and feeling like that I wasn't up front about

24   that.  So I think the parties involved would want to know

25   that.

1              THE COURT:  I appreciate you sharing that very

2      much.  You said something earlier that was very insightful

3      and that is that not everybody that's accused is guilty.  Do

4      you understand that the purpose of this proceeding is that

5      Mr. Adleta has denied that he committed these offenses and

6      he's presumed to be innocent and the government has the

7      burden of proving beyond a reasonable doubt that he committed

8      the offenses charged?  Would you hold the government to their

9      burden?

10             THE PROSPECTIVE JUROR:  I would, absolutely.

11             THE COURT:  And if at the end of the case if you

12     were not persuaded that the government had met its burden,

13     even though you were deeply disturbed by some of the evidence

14     that you saw, would you have any difficulty rendering a

15     verdict of not guilty?

16             THE PROSPECTIVE JUROR:  No, because I think it's

17     really important that we as jurors do that, that we not be

18     swayed by our emotions, but we really just weigh on the facts

19     themselves.

20             THE COURT:  Good.  Do you have a computer that you

21     use yourself at home or at work?

22             THE PROSPECTIVE JUROR:  I do.

23             THE COURT:  And do you send an receive e-mails?

24             THE PROSPECTIVE JUROR:  I do.

25             THE COURT:  Do you send and receive text messages

 1    on your telephone?

 2              THE PROSPECTIVE JUROR:  I do.

 3              THE COURT:  Do you take pictures on your telephone

 4    and send them?

 5              THE PROSPECTIVE JUROR:  Sometimes I do.

 6              THE COURT:  Are you familiar with Skype or

 7    FaceTime, things that allow you to have a realtime video chat

 8    with others?

 9              THE PROSPECTIVE JUROR:  I do, yes.

10              THE COURT:  Okay.

11              Any further questions, Ms. Gable?

12              MS. GABLE:  One moment, Your Honor.

13              THE COURT:  Sure.

14              (Discussion held off the record between plaintiff's

15    counsel.)

16              MS. GABLE:  Good afternoon, Ms. Wadsworth.  If the

17    government were to prove its case beyond a reasonable doubt,

18    would you have any trouble returning a verdict of guilty in

19    this case?

20              THE PROSPECTIVE JUROR:  I'm sorry.  I didn't hear

21    that.  If the government were able to prove its case?

22              MS. GABLE:  Yes.  If you were persuaded that the

23    government proved its case beyond a reasonable doubt, would

24    you have any trouble returning a verdict of guilty in the

25    case?

```
 1              THE PROSPECTIVE JUROR:  No, I would not have any
 2     trouble.
 3              MS. GABLE:  Thank you.
 4              THE COURT:  Anything further, Mr. Bark?
 5              MR. BARK:  No, Your Honor.
 6              THE COURT:  All right.
 7              Thank you very much.  If you would leave that
 8     microphone in the chair there, we'll get back with you
 9     shortly.
10              THE PROSPECTIVE JUROR:  Okay.  Thank you.
11              THE COURT:  Ms. Deida is next, Mr. Fiorenza.
12              (Prospective juror Shauna Wadsworth not present.
13     Prospective juror Sonia Deida present.)
14              THE COURT:  Hi, Ms. Deida.  Come on in.  Right over
15     here, almost where you were before.  If you'll sit right in
16     the middle there, there's a microphone sitting on one of
17     those chairs.  If you will, just pick it up and have a seat.
18              I need to ask you some personal questions, which I
19     apologize for, but it's necessary because of the nature of
20     the case.
21              THE PROSPECTIVE JUROR:  Yes, sir.
22              THE COURT:  You may have figured out that the
23     government has charged Mr. Adleta with committing crimes
24     involving minor children that are of a sexual nature.  Do you
25     understand that?
```

```
 1              THE PROSPECTIVE JUROR:  Yes, Your Honor.

 2              THE COURT:  Do you understand that Mr. Adleta has

 3    pled not guilty, that is, he's denied those charges and he's

 4    presumed to be innocent?

 5              THE PROSPECTIVE JUROR:  Yes, Your Honor.

 6              THE COURT:  And I need to ask you, and I apologize,

 7    whether you or any close family member have ever been the

 8    victim of a sexual assault?

 9              THE PROSPECTIVE JUROR:  No.

10              THE COURT:  It's likely that you will be required

11    to listen to evidence in this case that is explicit in terms

12    of the language.  You'll also be required to look at

13    photographs of young children engaged in various sexual

14    activity that's likely to be disturbing to you.

15              THE PROSPECTIVE JUROR:  I think, yes.

16              THE COURT:  I need to ask you whether you think you

17    could do that?

18              THE PROSPECTIVE JUROR:  I don't think I can do

19    that.  With kids in school and when things happen to them, it

20    just -- I also have low pressure and, like, right now, my

21    heart is just. . .

22              THE COURT:  Okay.

23              THE PROSPECTIVE JUROR:  I'm sorry.

24              THE COURT:  That's okay.  You don't need to

25    apologize.  The reason I'm asking you is because I want to
```

1    find out whether or not you think that you could listen to

2    the evidence and be fair to the government and be fair to Mr.

3    Adleta.

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Now, I can tell from looking at you

6    that just talking about these pictures is making you upset.

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  What I need to find out is if at the

9    end of the case if you were persuaded that the government had

10   not met its burden, that they had not proven beyond a

11   reasonable doubt that Mr. Adleta committed these crimes,

12   could you find him not guilty even though you were disturbed

13   by the evidence that you saw?

14             THE PROSPECTIVE JUROR:  I don't know.

15             THE COURT:  Okay.

16             Ms. Gable, any follow-up?

17             MS. GABLE:  No, Your Honor.

18             THE COURT:  How about you, Mr. Bark?

19             MR. BARK:  No, Your Honor.

20             THE COURT:  All right.  Thank you very much, Ms.

21   Deida.  I appreciate it.  I'm sorry to upset you.  Just leave

22   that microphone in the chair if you would, please.

23             THE PROSPECTIVE JUROR:  Thank you.  Sorry again.

24             THE COURT:  We'll be with you shortly.

25             THE PROSPECTIVE JUROR:  Thank you.

1          THE COURT:  Mr. Sparks.

2          (Prospective juror Sonia Deida not present.

3  Prospective juror Ward Sparks present.)

4          THE COURT:  Come on in, Mr. Sparks, almost where

5  you were before.  If you'll come about halfway down, there's

6  a microphone sitting in that chair.  Pick that up for me and

7  have a seat.

8          I apologize for putting you in the spotlight, but I

9  need to ask you some personal questions in light of the

10  nature of the charges.  You've probably figured out that the

11  United States has charged Mr. Adleta with having committed

12  sexual crimes involving minor children.  Mr. Adleta has

13  denied those charges and he's presumed to be innocent.  Do

14  you understand that?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  The burden of proof is on the

17  government to prove his guilt beyond a reasonable doubt; do

18  you understand that as well?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  I need to ask you, in light of the

21  charges, whether you or any close family members have ever

22  been the victim of a sexual assault?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  It is likely that you will be asked to

25  listen to evidence in this case that is very explicit in

terms of language.  You will also be asked to look at photographs that depict minor children engaged in various sexual activities.  It's likely that that evidence will be disturbing to you.

I need to ask you whether or not you think you would be able to keep an open mind and consider the totality of the evidence and make a judgment as to whether or not the government has proven Mr. Adleta's guilty of these offenses beyond a reasonable doubt?

THE PROSPECTIVE JUROR:  I believe so.

THE COURT:  If at the end of the presentation of the government's case if you were not persuaded that they had met their burden even though you were disturbed by some of the evidence that you saw, would you be able to render a verdict of not guilty?

THE PROSPECTIVE JUROR:  I believe so.

THE COURT:  And the converse of that.  If at the end of the case you were persuaded that the government had met its burden, would you be able to find Mr. Adleta guilty of the charges?

THE PROSPECTIVE JUROR:  I believe so.

THE COURT:  Do you have a computer that you use yourself at home or at work?

THE PROSPECTIVE JUROR:  Yes.

THE COURT:  And do you send and receive e-mails?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Do you send and receive text messages

3  on your phone?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Do you understand that there are people

6  that do that?

7          THE PROSPECTIVE JUROR:  Yeah.  I had a heck of a

8  time getting them to turn it off.

9          THE COURT:  Do you generally understand how that

10  works?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Okay.  How about FaceTime or Skype,

13  having video chats, do you understand or are you familiar

14  with that technology?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Is your cell phone capable of taking

17  pictures, if you know?

18          THE PROSPECTIVE JUROR:  It's capable of it, but the

19  camera is dead.

20          THE COURT:  Have you ever done that?  Have you ever

21  used a cell phone to take a picture?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  So you understand that that can be

24  done?

25          THE PROSPECTIVE JUROR:  Yes.

1        THE COURT:  And those pictures can be transmitted

2    to another cell phone or someone else?

3        THE PROSPECTIVE JUROR:  If you have data

4    capability.

5        THE COURT:  Okay.

6        THE PROSPECTIVE JUROR:  I don't have data

7    capability.

8        THE COURT:  Fair enough.

9        Any other questions for Mr. Sparks?

10       MS. GABLE:  No, sir.

11       THE COURT:  How about you, Mr. Bark?

12       MR. BARK:  Please, Your Honor.

13       Good afternoon, sir.  Your response was that you

14   believe you could listen to all the evidence and view all of

15   the evidence?

16       THE PROSPECTIVE JUROR:  Yes.

17       MR. BARK:  I believe you suggest there's some

18   hesitation.

19       THE PROSPECTIVE JUROR:  No.

20       MR. BARK:  There's no hesitation at all?

21       THE PROSPECTIVE JUROR:  No.

22       MR. BARK:  Thank you.  I just wanted to make sure.

23       THE COURT:  Thank you, sir.  If you'll leave that

24   microphone in the chair there and wait for me outside, I'll

25   be back with you shortly.

1          Ms. Warriner.

2          (Prospective juror Ward Sparks not present.

3   Prospective juror Jean Warriner present.)

4          THE COURT:  Come on in Ms. Warriner.  There's a

5   microphone sitting in one of those chairs.  If you'll have a

6   seat and pick that mic up, I'll ask you a couple of short

7   questions.

8          THE PROSPECTIVE JUROR:  Sure.

9          THE COURT:  My apologies in advance for the

10  personal nature of the questions, but I need to ask them

11  because of the nature of the case.  I hope you'll forgive me

12  for that, but you've probably figured out the United States

13  has charged Mr. Adleta with committing certain sex crimes

14  involving minor children.  He's entered a plea of not guilty

15  and he's presumed to be innocent of those charges; do you

16  understand that?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  I need to ask you, and I apologize for

19  it, whether you or any close family members have been the

20  victim of a sexual assault?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  You may be asked to listen to evidence

23  in this case that is of a sexually explicit nature.  You may

24  be asked to look at photographs that depict minor children in

25  various sexual activity.  It's likely that that evidence will

 1    be disturbing for you.

 2              I need to ask you whether or not you think you

 3    would be able to keep an open mind and consider the totality

 4    of the evidence in the case in evaluating whether or not the

 5    government has proven that Mr. Adleta committed the offenses

 6    with which he's charged beyond a reasonable doubt?

 7              THE PROSPECTIVE JUROR:  I could be open, but I'm

 8    not comfortable with seeing that type of evidence.

 9              THE COURT:  Okay.  And I think that's probably a

10    sentiment that's shared by the majority of your jurors.  Do

11    you understand that that's part of what the government would

12    be required to or expected to offer by way of evidence if

13    they intended to prove their case?  In other words, someone

14    has to look at that evidence if it comes in.

15              THE PROSPECTIVE JUROR:  Yeah.

16              THE COURT:  The reason I'm asking you the question

17    is I need to know whether or not -- I understand that it

18    would be disturbing for you to look at.  I need to ask you

19    whether you think you could do it and objectively evaluate it

20    in terms of whether or not the government proved its case?

21              THE PROSPECTIVE JUROR:  I could look at it

22    objectively, but, yes, it would be disturbing.

23              THE COURT:  Okay.  Let me ask it this way.  If at

24    the end of the case if you were not persuaded that the

25    government had met its burden of proving that Mr. Adleta

1    committed these offenses beyond a reasonable doubt, even

2    though you found the evidence to be disturbing, if you had a

3    reasonable doubt in your own mind that Mr. Adleta committed

4    the offenses with which he's charged, would you be able to

5    render a verdict of not guilty?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And the converse of that.  If at the

8    end of the case if you were persuaded that the government had

9    in fact proven its case beyond a reasonable doubt and that

10   Mr. Adleta was guilty of the offenses charged, would you be

11   able to return a verdict of guilty?

12             THE PROSPECTIVE JUROR:  I think so, yes.

13             THE COURT:  Okay.  Do you have a computer that you

14   use at home or work?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  You send and receive e-mails?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Do you send and receive text messages?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  How about photographs?  Does your

21   telephone take pictures?

22             THE PROSPECTIVE JUROR:  Camera phone, yes.

23             THE COURT:  Can you send those pictures over your

24   telephone?  Do you know how to do that?

25             THE PROSPECTIVE JUROR:  On my cell phone?

1            THE COURT:  Yes.

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  Take a picture and send it to someone

4    else?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  And are you generally familiar with

7    FaceTime or Skype, those programs that allow you to have a

8    realtime video chat?

9            THE PROSPECTIVE JUROR:  I know what they are, but

10   I've not used them.

11           THE COURT:  Okay.

12           Any follow-up, Ms. Gable?

13           MS. GABLE:  No, Your Honor.

14           THE COURT:  Any follow-up, Mr. Bark?

15           MR. BARK:  Please, Your Honor.

16           Good afternoon.  You've mentioned the level of

17   discomfort you may have viewing everything, and we all

18   appreciate that.  Do you have any concern that you would get

19   so uncomfortable that it would interfere with your

20   objectivity?

21           THE PROSPECTIVE JUROR:  I don't know.

22           MR. BARK:  Okay.

23           THE PROSPECTIVE JUROR:  A little.

24           MR. BARK:  Okay.

25           THE PROSPECTIVE JUROR:  But I don't know.  The

```
 1    situation makes me uncomfortable to talk about.

 2              MR. BARK:  So you're not sure how you'll react once

 3    put in the circumstances?

 4              THE PROSPECTIVE JUROR:  Yes.

 5              MR. BARK:  And does it give you concern that you

 6    may not be able to apply the law as you're instructed because

 7    of your objectivity being interfered with?

 8              THE PROSPECTIVE JUROR:  I think I can be objective.

 9    Whether it's presented -- whether it's being presented by

10    either side, I would find it disturbing.

11              MR. BARK:  Sure.  And what I'm trying to get at is,

12    are you going to be so disturbed that it's going to interfere

13    with your processing at all?  I don't mean that to be

14    insulting.

15              THE PROSPECTIVE JUROR:  I don't think so.  I don't

16    know, but I don't think so.

17              MR. BARK:  But you --

18              THE COURT:  Let me take over, Mr. Bark.  Thank you.

19              What I want to ask you is that, obviously, the

20    purpose of evidence, whether it's presented by the government

21    or the defense, is to be persuasive.  The purpose of evidence

22    is to try to prove some of the issues in the case; do you

23    understand that?

24              THE PROSPECTIVE JUROR:  Yes.

25              THE COURT:  The question is, even though the
```

1    evidence would be disturbing, would you be able to evaluate

2    it and make a decision as to whether or not it in fact --

3    does it do that?  Does it prove the case?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  If you at the end of the day, after

6    listening to all of the evidence, even though some of it was

7    disturbing, if you felt the government had not carried its

8    burden, could you acquit Mr. Adleta?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  And could you convict him if you felt

11   otherwise?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Thank you, ma'am.  If you'll wait

14   outside, we'll be back with you shortly.

15             THE PROSPECTIVE JUROR:  Sure.

16             THE COURT:  Ms. Daniels.

17             (Prospective juror Jean Warriner not present.

18   Prospective juror Paula Daniels present.)

19             THE COURT:  Come on in, Ms. Daniels, right up here

20   to the middle of this first row.  Come on down towards me a

21   little bit and there's a microphone.  You should see it in a

22   minute.  If you will, pick that up and have a seat for me.

23   Thanks.

24             I apologize for putting the spotlight on you all

25   individually, but I need to ask you some personal questions

1    because of the nature of the case.  So my apologies for that

2    up front.

3            You've probably figured out that the United States

4    has charged Mr. Adleta with committing sex crimes involving

5    minor children.  He's denied those charges and is presumed to

6    be innocent.  Do you understand that?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Okay.  I need to ask you, and I

9    apologize for it, whether you or any close members of your

10   family have ever been the victim of a sexual assault?

11           THE PROSPECTIVE JUROR:  No.

12           THE COURT:  You may be asked if you're seated as a

13   juror in this case to listen to evidence that is explicit in

14   nature, offensive.  You may be asked to look at photographs

15   depicting minor children engaged in various sexual activity.

16   It's likely that that evidence will be disturbing to you.

17           I need to ask you whether or not you would be able

18   to keep an open mind and look at the totality of the evidence

19   in the case and make a decision as to whether or not the

20   government had met its burden of proving that Mr. Adleta

21   committed the offenses with which he's charged beyond a

22   reasonable doubt?

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  And at the end of the case if you were

25   not persuaded that the government had met its burden, even

1  though you found some of the evidence to be disturbing, would

2  you be able to render a verdict of not guilty?

3         THE PROSPECTIVE JUROR:  Yes.

4         THE COURT:  And do you have a computer that you use

5  yourself, either at home or work?

6         THE PROSPECTIVE JUROR:  Yes.

7         THE COURT:  Do you send and receive e-mails?

8         THE PROSPECTIVE JUROR:  Yes.

9         THE COURT:  Do you send and receive text messages

10  with your cell phone?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  And is your cell phone able to take

13  pictures?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  So you know how to take a picture with

16  your phone and send it to somebody?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Are you familiar generally with Skype

19  or FaceTime, those programs?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  I asked you the question as to whether

22  or not at the end of the day if you felt like the government

23  had not met its burden, could you find Mr. Adleta not guilty,

24  and you told me that you could.

25         How about the flip side of that.  If at the end of

1    the day you felt the government had met its burden, would you

2    have any difficulty returning a verdict of guilty?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.

5              Any follow-up, Ms. Gable?

6              MS. GABLE:  No, Your Honor.

7              THE COURT:  How about you, Mr. Bark?

8              MR. BARK:  No, Your Honor.

9              THE COURT:  Thank you very much.  If you'll leave

10   that microphone in the chair and step back outside, we'll be

11   with you shortly.

12             Erin Bush, please.

13             (Prospective juror Paula Daniels not present.

14   Prospective juror Erin Bush present.)

15             THE COURT:  Come on in, Ms. Bush.  Right down here

16   on the front row there's a microphone sitting about halfway

17   down.  If you will, just pick that up and have a seat for me.

18             My apologies for putting you in the spotlight, but

19   I need to ask you some personal questions because of the

20   nature of the charges, and it's probably -- even though it

21   won't be comfortable, it's a little less uncomfortable to do

22   it in this format.

23             You may have figured out that the United States has

24   charged Mr. Adleta with having committed sex crimes involving

25   minor children.  Mr. Adleta has denied those charges and is

```
1    presumed to be innocent.  Do you understand that?

2                THE PROSPECTIVE JUROR:  Yes.

3                THE COURT:  The burden of proof is on the United

4    States to prove his guilt beyond a reasonable doubt; do you

5    understand that?

6                THE PROSPECTIVE JUROR:  Yes.

7                THE COURT:  In view of the nature of the charges, I

8    need to ask you, and I apologize in advance, whether you or

9    any of your close family members have been the victim of a

10   sexual assault?

11               THE PROSPECTIVE JUROR:  No.

12               THE COURT:  You may be asked to listen to testimony

13   or evidence that is explicit in nature in this case.  You may

14   also be asked to look at photographs that depict minor

15   children engaged in various sexual activity.  It's likely

16   that that evidence will be disturbing.

17               I need to ask you whether you think you would be

18   able to keep an open mind and evaluate the totality of the

19   evidence in the case and render a verdict in a fair and

20   impartial way, even though some of that evidence may be

21   disturbing to you?

22               THE PROSPECTIVE JUROR:  Yes.

23               THE COURT:  If at the end of the presentation of

24   the government's case if you felt like they had not met their

25   burden of establishing that Mr. Adleta committed these
```

1    offenses beyond a reasonable doubt, even though you were very

2    disturbed by the evidence that you saw, could you render a

3    verdict of not guilty?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  And how about the converse of that?

6    Would you have any difficulty returning a verdict of guilty

7    if you felt that the government had met its burden?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Do you have a computer that you use at

10   home or work?

11             THE PROSPECTIVE JUROR:  At home.

12             THE COURT:  And do you send and receive e-mail

13   messages?

14             THE PROSPECTIVE JUROR:  I do.

15             THE COURT:  Does your telephone send and receive

16   text messages?

17             THE PROSPECTIVE JUROR:  It does.

18             THE COURT:  How about pictures with your phone?

19   Can you take pictures with your phone?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Do you know how to send those

22   electronically?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Are you familiar with FaceTime or

25   Skype, programs that allow you to have a video conference

```
1    with somebody or chat in real time?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Okay.

4              Any follow-up, Ms. Gable?

5              MS. GABLE:  No, Your Honor.

6              THE COURT:  How about you, Mr. Bark?

7              MR. BARK:  No, Your Honor.

8              THE COURT:  Thank you very much, ma'am.  If you'll

9    leave that microphone in the chair and wait outside, I'll be

10   with you as quick as I can.

11             THE PROSPECTIVE JUROR:  Okay.

12             THE COURT:  Thanks.

13             Ms. Windorf.

14             (Prospective juror Erin Bush not present.

15   Prospective juror Patricia Windorf present.)

16             THE COURT:  Come on in, Ms. Windorf.  Right here on

17   the front row, about halfway down, there should be a

18   microphone in one of those chairs.  If you will, pick that up

19   and have a seat.

20             I don't want you to be overwhelmed being in here by

21   yourself.  I just need to ask you some personal questions and

22   it's a little more comfortable to do it this way than in

23   front of the entire group.

24             THE PROSPECTIVE JUROR:  Certainly.  Can I sit?

25             THE COURT:  Surely.  You may have figured out that
```

1  the United States has charged Mr. Adleta with various crimes

2  of a sexual nature involving children.  He has denied those

3  charges and has entered a plea of not guilty and is presumed

4  to be innocent.  Do you understand that?

5         THE PROSPECTIVE JUROR:  I do.

6         THE COURT:  I need to ask you, and I apologize for

7  it, in view of the nature of the charges, whether you or any

8  close family members of yours have ever been the victim of a

9  sexual assault?

10        THE PROSPECTIVE JUROR:  No, Your Honor.

11        THE COURT:  You may be asked to listen to evidence,

12  if you're seated as a juror in this case, that is explicit in

13  nature in terms of language, likely to be offensive to you.

14  You may also be asked to look at photographs of minor

15  children engaged in various sexual activities.  It's likely

16  to be disturbing to you.

17        I need to ask you whether or not you think you

18  would be able to keep an open mind and evaluate the totality

19  of the evidence in the case and reach a verdict in a fair and

20  impartial way as to whether or not the government had proven

21  beyond a reasonable doubt that Mr. Adleta committed the

22  crimes with which he's charged?

23        THE PROSPECTIVE JUROR:  Yes, I would, Your Honor.

24        THE COURT:  And by the same token, do you think you

25  would be able to render a verdict in favor of the government

1 if you were persuaded that they had met their burden at the

2 end of the day?

3    THE PROSPECTIVE JUROR:  Absolutely.

4    THE COURT:  Okay.  Do you have a computer that you

5 use yourself at home or at work?

6    THE PROSPECTIVE JUROR:  Yes, I do.

7    THE COURT:  Do you send and receive e-mail?

8    THE PROSPECTIVE JUROR:  Yes, I do.

9    THE COURT:  Do you send and receive text messages

10 on your cell phone?

11    THE PROSPECTIVE JUROR:  Yes, I do.

12    THE COURT:  Is your cell phone able to take

13 pictures?

14    THE PROSPECTIVE JUROR:  Yes, it does.

15    THE COURT:  Do you know how to take pictures and

16 send them electronically?

17    THE PROSPECTIVE JUROR:  Yes, I do.

18    THE COURT:  And are you familiar with FaceTime or

19 Skype, that is, a video chat in real time?

20    THE PROSPECTIVE JUROR:  Yes.

21    THE COURT:  Okay.

22    Any follow-up, Ms. Gable?

23    MS. GABLE:  No, Your Honor.

24    THE COURT:  Mr. Bark?

25    MR. BARK:  No, Your Honor.

1          THE COURT:  Thank you very much.  If you'll leave

2     that microphone in your chair, I'll be with you shortly.

3          THE PROSPECTIVE JUROR:  Thank you.

4          THE COURT:  Gary Baugh, Mr. Fiorenza.

5          (Prospective juror Patricia Windorf not present.

6     Prospective juror Gary Baugh present.)

7          THE COURT:  Come on in, Mr. Baugh.  About halfway

8     down on the side there's a microphone sitting in one of those

9     chairs.  If I will, pick it up for me and have a seat.  I

10    need to ask you a few quick questions in view of the nature

11    of the charges in this case, which are very personal in

12    nature.  So I apologize for that in advance.

13          But you've probably figured out that the United

14    States has charged Mr. Adleta in this case with committing

15    various sex crimes involving minor children and he's denied

16    those charges and is presumed to be innocent.  Do you

17    understand that?

18          THE PROSPECTIVE JUROR:  Yes, I do, Your Honor.

19          THE COURT:  All right.  I need to ask you whether

20    or not either you or any close family members have ever been

21    the victim of a sexual assault?

22          THE PROSPECTIVE JUROR:  No, sir.

23          THE COURT:  You may be asked to listen to evidence

24    in this case that is very explicit in nature in terms of the

25    language.  You may also be asked to look at photographs of

1    minor children engaged in various sexual activity.  It's

2    likely to be disturbing to you.  I need to ask you whether

3    you think you could listen to that evidence and keep an open

4    mind and evaluate the totality of the evidence in view of

5    whether -- in determining whether or not the government has

6    met its burden of proving beyond a reasonable doubt that Mr.

7    Adleta is guilty of the offenses with which he's charged?

8              THE PROSPECTIVE JUROR:  Yes, I could do that.

9              THE COURT:  If at the end of the case you were not

10   persuaded that the government had met its burden of proof,

11   would you be able to reach a verdict of not guilty in favor

12   of Mr. Adleta even though you found some of the evidence to

13   be very disturbing?

14             THE PROSPECTIVE JUROR:  Yes, I could.

15             THE COURT:  By the same token, could you find a

16   verdict of guilty in favor of the government if you were

17   persuaded that they had met their burden?

18             THE PROSPECTIVE JUROR:  Yes, I could.

19             THE COURT:  Do you have a computer that you use at

20   home or at work?

21             THE PROSPECTIVE JUROR:  Yes, I do.

22             THE COURT:  Do you send and receive e-mail?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Does your cell phone send and receive

25   text messages?

1              THE PROSPECTIVE JUROR:  Yes, it does.

2              THE COURT:  Does it take pictures?

3              THE PROSPECTIVE JUROR:  Yes, sir.

4              THE COURT:  Do you know how to send those

5    electronically?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Are you familiar with Skype or

8    FaceTime.

9              THE PROSPECTIVE JUROR:  FaceTime.  I don't do

10   Skype.

11             THE COURT:  But you know the technology exists to

12   have a live video chat?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.

15             Any follow-up, Ms. Gable?

16             MS. GABLE:  No, Your Honor.

17             THE COURT:  How about you, Mr. Bark?

18             MR. BARK:  No, Your Honor.

19             THE COURT:  Thank you very much, sir.  If you'll

20   put that microphone back in the chair and step outside and

21   have a seat, I'll be back with you shortly.

22             THE PROSPECTIVE JUROR:  All right.

23             THE COURT:  Mr. Kolman, please.

24             (Prospective juror Gary Baugh not present.

25   Prospective juror Stephen Kolman present.)

1          THE COURT:  Come on in, Mr. Kolman.  If you'll come

2     about halfway down over here, there's a microphone sitting in

3     one of those chairs.  If you will, just pick it up and have a

4     seat.

5          I don't mean to make you uncomfortable putting you

6     in the spotlight, but I need to ask you some personal

7     questions in light of the nature of these charges,

8     understood?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  You've probably figured out the United

11    States has charged Mr. Adleta with having committed certain

12    sex crimes involving minor children and he has denied those

13    charges and is presumed to be innocent.  Do you understand

14    that?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And I need to ask you, and I apologize

17    for it, whether you or any close family members have ever

18    been the victim of a sexual assault?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  You may be asked to listen to evidence

21    in this case that is very explicit in terms of the language.

22    You may also be asked to look at photographs that depict

23    minor children engaged in various sexual activity that you're

24    likely to find disturbing.  I need to ask you whether or not

25    you would be able to keep an open mind and consider the

1    totality of the evidence and decide whether or not the

2    government has met its burden of proving Mr. Adleta's guilt

3    beyond a reasonable doubt?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  I need to ask you whether or not at the

6    end of the case if you were not persuaded that the government

7    had met its burden, would you be able to find Mr. Adleta not

8    guilty of the offense with which he's charged even though you

9    found some of the evidence to be disturbing?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  And the flip side of that.  If at the

12   end of the case you were persuaded that the government had

13   met its burden of proof, would you have any difficulty

14   returning a verdict of guilty?

15             THE PROSPECTIVE JUROR:  Nope.

16             THE COURT:  Do you have a computer that you use at

17   home or at work?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  I don't mean to ask you foolish

20   questions, but we have to ask them of everybody.  Do you send

21   and receive e-mails?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And does your cell phone send and

24   receive text messages?

25             THE PROSPECTIVE JUROR:  It can.

1          THE COURT:  Okay.  And how about photographs?  Does

2     your cell phone have a camera?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And you know how to take pictures with

5     it?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Do you know how to send those

8     electronically?

9          THE PROSPECTIVE JUROR:  Not really.

10         THE COURT:  Okay.  You understand it can be done?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Okay.  How about Skype or FaceTime,

13    things that allow you to have a video chat, do you do that at

14    all?

15         THE PROSPECTIVE JUROR:  Not at all.

16         THE COURT:  Have you ever seen that technology?

17         THE PROSPECTIVE JUROR:  I understand what it is.  I

18    just don't use that.

19         THE COURT:  Fair enough.

20         Any follow-up, Ms. Gable?

21         MS. GABLE:  No, Your Honor.

22         THE COURT:  How about you, Mr. Bark?

23         MR. BARK:  No, Your Honor.

24         THE COURT:  Thank you very much.  I appreciate it.

25    If you'll leave that microphone there in the chair and step

1    outside, we'll be with you shortly.

2           Susan Dean.

3           (Prospective juror Stephen Kolman not present.

4    Prospective juror Susan Dean present.)

5           THE COURT:  Come on in, Ms. Dean.  Over here on the

6    front row, about halfway down, there's a microphone sitting

7    in one of those chairs.  If you will, just pick that up and

8    have a seat.

9           I'm sorry to spotlight you, but I need to ask you

10   some personal questions because of the nature of the charges

11   in this case.  So I apologize for that in advance.

12          But you've probably discerned that the United

13   States has charged Mr. Adleta with having committed certain

14   crimes of a sexual nature involving minor children.  He's

15   entered a plea of not guilty and is presumed to be innocent

16   of those charges.  Do you understand that?

17          THE PROSPECTIVE JUROR:  Yes, sir.

18          THE COURT:  I need to ask you, and I apologize in

19   advance, whether you or any close family members have been

20   victim of a sexual assault?

21          THE PROSPECTIVE JUROR:  No, sir.

22          THE COURT:  It's likely that you will be called

23   upon, if you're seated as a juror in this case, to listen to

24   evidence that's very explicit in nature in terms of the

25   language.  You'll also be asked to look at photographs of

1  minor children engaged in various sexual activity.  It's
2  likely to be disturbing to you.
3           And my question is whether or not you think you'd
4  be able to keep an open mind and listen to the totality of
5  the evidence and decide at the end of the case whether or not
6  the government has met its burden of proving that Mr. Adleta
7  is guilty beyond a reasonable doubt of the offenses with
8  which he's charged?
9           THE PROSPECTIVE JUROR:  Yes, sir.
10           THE COURT:  If at the end of the case you were not
11  persuaded that the government has met its burden, would you
12  have any difficulty returning a verdict of not guilty in
13  favor of Mr. Adleta even though you may have found some of
14  the evidence to be disturbing?
15           THE PROSPECTIVE JUROR:  I wouldn't have a problem
16  with that.
17           THE COURT:  Okay.  And how about the other side of
18  that coin?  Would you be able to render a verdict of guilty
19  if you found the government had met its burden of proving
20  guilt beyond a reasonable doubt?
21           THE PROSPECTIVE JUROR:  Yes, sir.
22           THE COURT:  Do you have a computer that you use at
23  home or work?
24           THE PROSPECTIVE JUROR:  Yes, sir.
25           THE COURT:  And do you send and receive e-mails?

```
 1                    THE PROSPECTIVE JUROR:  Yes, sir.

 2                    THE COURT:  Does your phone send and receive text

 3    messages?

 4                    THE PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  Does it have a camera?

 6                    THE PROSPECTIVE JUROR:  Yes.

 7                    THE COURT:  Do you know how to use it?

 8                    THE PROSPECTIVE JUROR:  Yes.

 9                    THE COURT:  Can you send pictures electronically

10    with your phone?

11                    THE PROSPECTIVE JUROR:  I'm not good at it, but I

12    can.

13                    THE COURT:  In a pinch, you could do it?

14                    THE PROSPECTIVE JUROR:  I can do it.

15                    THE COURT:  I'm not going to ask you to.  I just

16    want to ask you if you can.

17                    THE PROSPECTIVE JUROR:  I'm not the greatest.

18                    THE COURT:  How about Skype or FaceTime, are you

19    generally familiar with that?

20                    THE PROSPECTIVE JUROR:  No, sir, I'm not.

21                    THE COURT:  Okay.

22                    Any follow-up, Ms. Gable?

23                    MS. GABLE:  No, Your Honor.

24                    THE COURT:  How about you, Mr. Bark?

25                    MR. BARK:  No, Your Honor.
```

| 1 | THE COURT:  Thank you very much.  If you'll leave |
|---|---|

1          THE COURT:  Thank you very much.  If you'll leave

2     that microphone in the chair there, Ms. Dean, and step

3     outside, we'll be with you shortly.

4          (Prospective juror Susan Dean not present.

5     Prospective juror Mark Danford present.)

6          THE COURT:  I'm sorry.  Mr. Danford, you can go

7     back outside.  My apologies.  I have my chart out of order

8     and I meant to skip you.  So my apologies.

9          How about let's go with Paul James, please, Mr.

10    Fiorenza.  That's my fault.  I apologize.  Let's go with Mr.

11    James.

12          (Prospective juror Mark Danford not present.

13    Prospective juror Paul Jaynes present.)

14          THE COURT:  Come on in, Mr. James.  About halfway

15    down there, there's a microphone sitting in one of those

16    chairs.  If you will, pick that up.

17          I just need to follow up with you and ask you a

18    couple of questions that are highly personal in nature, in

19    view of the nature of the charges in this case.  So I don't

20    want you to feel like you're on the spot any more than any of

21    your fellow jurors.

22          THE PROSPECTIVE JUROR:  Okay.

23          THE COURT:  But you understand that the United

24    States has charged Mr. Adleta here with sex crimes involving

25    a minor and that he has denied those charges and is presumed

1    to be innocent?

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  Okay.  I need to ask you whether or not

4    you or any member of your family has ever been the victim of

5    a sexual assault?

6            THE PROSPECTIVE JUROR:  My brother has.

7            THE COURT:  You've mentioned that when we were in

8    the general discussion, and I don't want to pry too much, but

9    can you tell me a little bit about the details in terms of

10   how old he was and that sort of thing?

11           THE PROSPECTIVE JUROR:  Sure.  Well, I believe he

12   was around eight years old when he was molested, and then he

13   actually molested an eight- to ten-year-old back in '97.  He

14   was convicted in '98.

15           THE COURT:  Okay.

16           THE PROSPECTIVE JUROR:  I don't recall whether I

17   was or not.  I think I was too young.

18           THE COURT:  Okay.

19           THE PROSPECTIVE JUROR:  I don't know what else to

20   say.

21           THE COURT:  Okay.  In light of that experience in

22   your family, do you think that you would be able to be fair

23   and impartial if you were seated as a juror in this case and

24   evaluate whether or not the government proved beyond a

25   reasonable doubt that Mr. Adleta is guilty of the charges --

1    of the offenses with which he's charged here?

2              THE PROSPECTIVE JUROR:  Yes, I do.  I'm a very

3    logical, rational person.  I have a physics background and I

4    manage a team that manages 50 programs across different

5    national security offices.

6              THE COURT:  Okay.

7              THE PROSPECTIVE JUROR:  I think I could separate

8    the two.

9              THE COURT:  Okay.  One of your predecessors said

10   something that was very insightful and that is that not

11   everybody that's accused is guilty.  Do you understand that

12   that's the case?

13             THE PROSPECTIVE JUROR:  Correct.

14             THE COURT:  And the government has the burden of

15   proving Mr. Adleta's guilt?

16             THE PROSPECTIVE JUROR:  Yes, I do.

17             THE COURT:  Let me ask you both sides of the

18   equation.  If the government presents evidence that persuades

19   you beyond a reasonable doubt that Mr. Adleta committed the

20   offenses charged in the Indictment, would you have any

21   difficulty returning a verdict of guilty?

22             THE PROSPECTIVE JUROR:  No, I would not.

23             THE COURT:  And if you were not persuaded that the

24   government had met its burden, would you have any difficulty

25   of returning a verdict of not guilty?

1          THE PROSPECTIVE JUROR:  No, I would not.

2          THE COURT:  I also need to ask you -- it's likely

3    that you're going to be called upon to listen to evidence in

4    this case that is very explicit in nature in terms of the

5    language.  You'll also be asked to look at photographs of

6    children, minor children, depicted in various sexual

7    activity.

8          I need to ask you -- it's likely that you will find

9    that evidence to be disturbing.  I need to ask you whether

10   you think you would be able to keep that evidence in

11   perspective and consider the total evidence in the case and

12   make a judgment as to whether or not the government has met

13   its burden of proving Mr. Adleta's guilt beyond a reasonable

14   doubt?

15          THE PROSPECTIVE JUROR:  Yes, I believe I can.

16          THE COURT:  Do you have a computer that you use at

17   home or at work?

18          THE PROSPECTIVE JUROR:  Yes.  I'm in the cyber

19   security market.  So we use a lot of computers.

20          THE COURT:  So you understand the technology of

21   text messaging and e-mailing and photographs and all of that?

22          THE PROSPECTIVE JUROR:  Very well, Your Honor, yes.

23          THE COURT:  Okay.

24          Anything further, Ms. Gable?

25          MS. GABLE:  No, Your Honor.

```
 1              THE COURT:  How about you, Mr. Bark?

 2              MR. BARK:  No, Your Honor.

 3              THE COURT:  All right.

 4          Thank you very much.  I appreciate it.

 5              THE PROSPECTIVE JUROR:  Thank you.

 6              THE COURT:  Mr. Hutchinson next, please, Mr.

 7   Fiorenza.

 8              (Prospective juror Paul Jaynes not present.

 9   Prospective juror Kamaal Hutchinson present.)

10              THE COURT:  Come on in, Mr. Hutchinson.  I know

11   it's been a long wait out there.  I'm sorry about that.

12          About halfway -- a little farther than halfway down

13   you'll see a microphone sitting in the chair.  Pick that up

14   for me and have a seat.  I need to ask you some personal

15   questions because of the nature of the charges involved here.

16   So I apologize in advance for the nature of the questions,

17   but they're necessary, I assure you.

18          You've figured out, I'm sure, by know, by my

19   summary of the case, that the United States has charged Mr.

20   Adleta with committing various -- committing certain crimes

21   of a sexual nature involving minor children.  He's entered a

22   plea of not guilty and is presumed to be innocent of those

23   charges.  Do you understand that?

24              THE PROSPECTIVE JUROR:  Yes, I do.

25              THE COURT:  I need to ask you whether or not either
```

1   you or any member of your family have ever been the victim of

2   a sexual assault?

3          THE PROSPECTIVE JUROR:  No, we haven't.

4          THE COURT:  It's likely that you'll be asked to

5   consider evidence in this case that is explicit in nature in

6   terms of the language involved.  You may also be asked to

7   look at photographs that depict young children engaged in

8   sexual activity.  It's likely to be disturbing to you.

9          I need to ask you whether you think you'd be able

10  to keep an open mind and consider the totality of the

11  evidence, keeping everything in perspective, and render a

12  verdict as to whether or not the government has proven Mr.

13  Adleta's guilt beyond a reasonable doubt in a fair and

14  impartial way?

15         THE PROSPECTIVE JUROR:  Yes, I can.

16         THE COURT:  If at the end of the government's case

17  if you are persuaded -- if you are not persuaded that they

18  have met their burden, would you have any difficulty

19  returning a verdict of not guilty in favor of Mr. Adleta even

20  though you may have found some of the evidence to be

21  disturbing?

22         THE PROSPECTIVE JUROR:  No, I wouldn't.

23         THE COURT:  How about the other side of that coin?

24  Would you have any difficulty returning a verdict of guilty

25  if you found the government to have met its burden?

1           THE PROSPECTIVE JUROR:  No, I wouldn't.

2           THE COURT:  Do you have a computer that you use at

3   home or at work.

4           THE PROSPECTIVE JUROR:  Yes, I do.

5           THE COURT:  Do you send and receive e-mails?

6           THE PROSPECTIVE JUROR:  All day long.

7           THE COURT:  Do you send and receive text messages

8   with your telephone.

9           THE PROSPECTIVE JUROR:  Yes, sir.

10           THE COURT:  Do you know how to take pictures with

11   your cell phone?

12           THE PROSPECTIVE JUROR:  Yes, I do.

13           THE COURT:  Do you know how to send those

14   electronically?

15           THE PROSPECTIVE JUROR:  Yes, I do.

16           THE COURT:  Do you understand and occasionally use

17   things like FaceTime or Skype, video chats?

18           THE PROSPECTIVE JUROR:  Yes, I do.

19           THE COURT:  Okay.

20           Any follow-up, Ms. Gable?

21           MS. GABLE:  No, Your Honor.

22           THE COURT:  How about you, Mr. Bark?

23           MR. BARK:  No, Your Honor.

24           THE COURT:  All right.

25           Thank you very much.  You can step outside and

1    we'll be with you shortly.

2           I know we've run on a little bit late and I'm sure

3    you guys are tired, but what I would like to do, if you think

4    you're up to it, is to maybe go ahead and do our cause

5    challenges and at least let those folks go.

6           Then I want to make sure you have enough time, Ms.

7    Gable and Ms. Miranda, to talk with your case agent about

8    your peremptory challenges; and you, Mr. Bark, as well to

9    talk with Mr. Adleta.

10          So I think what I'm inclined to do is exercise our

11   cause challenges, then send the rest of the panel to lunch

12   and have them come back.  Even though I'm sure they would

13   rather go about their business this afternoon, I think it's

14   important enough that you all have the time you need to

15   exercise your peremptory challenges in a thoughtful way.  So

16   that's my plan.

17          Is that all right with you, Ms. Gable?

18          MS. GABLE:  Yes, Your Honor.

19          THE COURT:  How about you, Mr. Bark?

20          MR. BARK:  Yes, Your Honor.

21          THE COURT:  All right.  Let me ask you, Mr. Bark,

22   initially to tell me if you have any cause challenges to the

23   panel, and we're going to take the entire venire.

24          Mr. Danford, I'm going to excuse by the Court.

25   That's juror number 34.

```
 1              MR. BARK:  Shall I go one by one, Your Honor?

 2              THE COURT:  Well, you can start at one, but I want

 3  to go through the entire venire and hear your cause

 4  challenges to the entire panel.

 5              MR. BARK:  Sure.

 6              THE COURT:  We can go back and forth, if you

 7  prefer.

 8              MR. BARK:  That's fine, Judge.  I have a for-cause

 9  challenge as to juror number two, Ms. Ingersoll.

10              THE COURT:  Okay.  What says the government?

11              MS. GABLE:  No objection.

12              THE COURT:  Ms. Ingersoll will be excused for

13  cause.

14              MR. BARK:  Your Honor, may I stay seated while I do

15  this or do you want me to stand?

16              THE COURT:  No.  You can be seated.  I'm sorry.

17  Thank you for asking.

18              MR. BARK:  Thank you.

19              Move to strike juror number three, Ms. Shayka, for

20  cause.

21              MS. GABLE:  No objection.

22              THE COURT:  She'll be excused for cause.

23              MR. BARK:  Juror number four, Ms. Finley, for

24  cause.

25              THE COURT:  What's the basis for your cause
```

1   challenge for Ms. Finley?

2           MR. BARK:  When you asked her about the difficulty

3   of setting aside the explicit testimony and the photographs,

4   she said, "It's going to be very difficult for me.  I've got

5   a niece that is five and seven."

6           She then did say that she would be able to render a

7   verdict if the government failed to meet its burden; but I

8   don't believe that it's beyond the reasonable doubt that

9   she's going to be able to set aside the nature of the

10  evidence and come to a verdict based on the totality of

11  everything, based on her comment about her niece -- nieces.

12          THE COURT:  What says the government?

13          MS. GABLE:  Your Honor, the United States objects.

14  I don't know if it was the Court or if it was defense

15  counsel, but she was rehabilitated and was very steadfast by

16  the end that she could be impartial and render a verdict of

17  not guilty if the government failed to meet its burden.

18          THE COURT:  All right.  I'm going to deny the

19  challenge.  I guess my only quarrel with -- I don't

20  necessarily agree that she was rehabilitated.  I don't know

21  that she ever demonstrated that she would likely be less than

22  impartial.  So I'm going to deny your cause challenge with

23  respect to Ms. Finley, but certainly I think the totality of

24  her responses indicated that she would be able to evaluate

25  the evidence and render a verdict that was fair and

1    impartial, even though she might find some of it disturbing.

2             What next, Mr. Bark?

3             MR. BARK:  Juror number nine, Ms. Laverde.

4             MS. GABLE:  No objection.

5             THE COURT:  All right.  Ms. Laverde will be excused

6    for cause, the language difficulty.

7             MR. BARK:  Ms. Olsen, juror number ten, she

8    informed the Court that her previous -- I'm sorry.  I should

9    probably see if there's an objection before I make an

10   argument.

11            THE COURT:  What's the basis for Ms. Olsen?

12            You can be seated.  You're fine.  Thank you.  I

13   appreciate you standing up, but you can be seated.

14            MR. BARK:  She informed the Court that she was a

15   victim of a sexual assault at the age of 18 or 19.  She

16   wasn't sure of the exact age.  And she did say, "I think I

17   can be fair and impartial.  I think I can."

18            Then she also mentioned something that -- well, I'm

19   going to strike whatever I was about to just say because I

20   don't have a complete note on that.  But I'm concerned about

21   when she keeps saying, "I think so," that it's not

22   affirmative that she's going to be able to set aside her

23   traumatizing experience from events that are somewhat similar

24   to what's going to be presented here today.

25            THE COURT:  What do you say, Ms. Gable?

 1          MS. GABLE:  Your Honor, I don't believe that she

 2   indicated at all that she wouldn't be able to weigh the

 3   evidence fairly and be impartial.

 4          THE COURT:  I didn't make a note myself and I

 5   didn't recollect that she said that either.  I'm going to do

 6   a quick search here, if I can figure out how to do it.

 7          I'm going to deny the cause challenge with respect

 8   to juror number ten, Dana Olsen.

 9          What's next, Mr. Bark?

10          MR. BARK:  Juror number eleven.

11          THE COURT:  Oladeji?

12          MR. BARK:  Yes.

13          THE COURT:  What grounds?

14          MR. BARK:  Once again, when she was asked about the

15   nature of the evidence, she said, "I'll do my best."  She

16   didn't say affirmatively that she would be able to set it

17   aside -- not necessarily set it all aside, but look at the

18   totality of everything and be able to come to a verdict.  She

19   said, "I'll do my best," and it's counsel's position that

20   that's not beyond a reasonable doubt that she would be able

21   to view all of the evidence in its totality.

22          THE COURT:  What do you say, Ms. Gable?

23          (Discussion held off the record between plaintiff's

24   counsel.)

25          MS. GABLE:  Your Honor, my recollection of Ms.

1    Ola -- of juror number eleven was that she did say that she

2    could be impartial, and I recall that there was some back and

3    forth between juror number eleven and the Court, but it's the

4    government's perspective on listening to her that she could

5    be fair and impartial.

6              THE COURT:  Well, I think the standard is whether

7    or not the juror demonstrated that she has such a fixed

8    opinion, that she can't judge impartially the guilt or

9    innocence of the defendant; and I didn't find anything in Ms.

10   Oladeji's responses that led me to believe that she met that

11   standard.  So I'm going to deny the cause challenge with

12   respect to juror number eleven, Shawan Oladeji.

13             What's next, Mr. Bark?

14             MR. BARK:  Juror number twelve, Mr. Cohen.

15             THE COURT:  The grounds?

16             MR. BARK:  He's the gentleman who said he's a

17   Shriner, "I help children."  He said he didn't think he could

18   find Mr. Adleta not guilty, regardless; and based on that, he

19   seemed to have a fixed opinion and bias towards the charges

20   and Mr. Adleta.

21             THE COURT:  What do you say, Ms. Gable?

22             MS. GABLE:  Your Honor, I object.  My recollection

23   is that Mr. Cohen stated that he could be fair and impartial

24   and render a verdict of not guilty.

25             THE COURT:  That's my recollection as well.

1           Ginny, do you know how to navigate this so I can

2    find -- I don't know how to find it in the transcript.

3    Somebody needs to help me figure that out.

4           MR. BARK:  Your Honor, I do want to say one thing

5    before you look it up.  I believe I confused part of that

6    with Mr. McWhorter, who was the one who said he could not

7    find Mr. Adleta not guilty at all; but I still have the same

8    concerns about him telling us that he's a Shriner, that he

9    helps children every day and that he would try his best, but

10   that he wasn't certain.

11          THE COURT:  Okay.  I'm going to deny the cause

12   challenge as it relates to Michael Cohen, juror number

13   twelve.

14          Anybody else, Mr. Bark?

15          MR. BARK:  Yes, if I may have a moment.

16          Juror number 16, Mr. McWhorter.

17          MS. GABLE:  No objection.

18          THE COURT:  Mr. McWhorter will be excused for

19   cause.

20          Next, Mr. Bark?

21          MR. BARK:  Juror number 24. . .can I have one

22   moment, please, actually?

23          THE COURT:  Yes.

24          MR. BARK:  Juror 25, Ms. Deida.

25          MS. GABLE:  No objection.

```
1              THE COURT:  Juror 25, Ms. Deida, will be excused
2   for cause.
3              MR. BARK:  The Court already excused Mr. Danford?
4              THE COURT:  Correct.
5              MR. BARK:  Okay.  If I could have one more moment?
6              THE COURT:  Surely.
7              MR. BARK:  Those are all of our for-cause
8   challenges.
9              THE COURT:  Does the government have cause
10  challenges?
11             MS. GABLE:  Your Honor, yes.  Juror 13, Ms. Ojeda,
12  she stated she couldn't --
13             THE COURT:  I remember Ms. Ojeda.
14             What do you say to that, Mr. Bark?  She's
15  Pentecostal.
16             MR. BARK:  Right.  No objection.
17             THE COURT:  I'll excuse her for cause.
18             MS. GABLE:  Your Honor, we'd ask the Court to
19  excuse juror number 19, Mr. Prevalus.
20             THE COURT:  Language?
21             MS. GABLE:  Yes.  Exactly.
22             THE COURT:  What do you say, Mr. Bark?
23             MR. BARK:  I would object based on the language
24  issue, because we basically used all the terms we're going to
25  use throughout the trial and he said he understood everything
```

1    up to that point.

2         THE COURT:  He said he understood 60 percent.  That

3    doesn't meet the standard in my book.  I'm going to grant the

4    government's challenge for cause for Mr. Prevalus.

5         Anybody else, Ms. Gable?

6         MS. GABLE:  No, Your Honor.

7         THE COURT:  Okay.

8         How about you, Mr. Bark, anybody else?

9         MR. BARK:  Not for cause.

10        THE COURT:  Okay.  All right.  What I would proceed

11   to do then, Mr. Fiorenza, if you will bring our jurors back

12   in, and I'll allow them to come into the back of the

13   courtroom.  They don't need to come all the way back into

14   their chairs.  Just ask them to come in and take a seat back

15   there.

16        If you don't mind, kind of move to the back, my

17   observers, and let the jurors come in and have a quick seat

18   there.

19        I'll excuse those who have been challenged for

20   cause and invite the rest to come back at 2:45.  I don't feel

21   good about making them to wait longer to do the peremptory

22   challenges.

23        (Jury panel present at 1:32 p.m.)

24        MR. BARK:  May we approach for one moment?

25        THE COURT:  Sure.

1          MR. BARK:  There's another challenge I just

2   realized, Ms. Kolba, juror 22.  She's the one with the chemo.

3          THE COURT:  The memory lady?

4          MR. BARK:  Yes.

5          THE COURT:  What do you say to Ms. Kolba?

6          MS. GABLE:  I don't have an objection, Your Honor.

7          THE COURT:  I think in the interest of fairness,

8   it's probably better not to put her to the test.

9          MS. GABLE:  Yes.

10          THE COURT:  I'll excuse Ms. Kolba for cause then.

11          MR. BARK:  Thank you.

12          MS. GABLE:  Thank you.

13          (In open court.)

14          THE COURT:  Ladies and gentlemen, thank you so much

15   for your patience.  I know you've had a long morning and I

16   apologize for extending your lunch.  I don't usually do it,

17   but we made a lot of progress.

18          Some of you I'm going to be able to turn lose, but

19   we are not quite finished with the process.  I am going to

20   have to ask the bulk of you to take a lunch break and come

21   back in an hour and 15 minutes.

22          But we're going to be pretty quick with the jury

23   selection process after that, and those of you who are not

24   selected will be free to go about your business then, but

25   I am going to have to ask all of you to come back from lunch

```
 1    with the following exception.  If I call your name, it means
 2    that you have been excused.  Denise Ingersoll, Mary Ann
 3    Shayka, Sarita Laverde, Aurea Ojeda, Phillip McWhorter,
 4    Wilfrid Prevalus, Anna Kolba, Sonia Deida and Mark Danford.
 5              Now, if you did not hear your name called, that
 6    means you are not excused and I need to see you back here
 7    at -- well, it's 1:35 now.  Let's see.  So I'll make sure you
 8    get all the time you need to eat.  Let's plan on being back
 9    here at -- why don't we be back here at 3:00.  That'll give
10    you a little longer than an hour and 15 minutes, but I'm not
11    quite through with it.
12              THE COURTROOM SECURITY OFFICER:  Come back to the
13    jury room downstairs or back up here?
14              THE COURT:  Back up here.
15              If you could just be back up here, gather up
16    outside.  Mr. Fiorenza will meet you and make sure that you
17    can get into the courtroom.  We'll bring you back into the
18    courtroom.
19              When you come back in the courtroom, take the seat
20    that you had before.  Everybody remember where you were
21    sitting.  Sit in the seat that you had before and we'll
22    complete the jury selection process then.
23              For those of you whose name I called, you are
24    excused from service, as far as I am concerned, but you need
25    to stop off at the jury assembly room on the first floor and
```

1    check with them and make sure that they don't need you for

2    something else.

3            You all that I have excused, I want you to know

4    that you go with the thanks of the court.  We have to call a

5    lot of people in order to end up with a panel that is

6    sufficiently large to meet our needs, and all of you, even

7    those of you who are not selected, play a vital part in the

8    administration of justice, and I know I speak for the parties

9    when I tell you how much your service is appreciated.

10            So those of you whose name I called are excused.

11   You check with the jury assembly room, and depending on what

12   they tell you, you're free to go.

13            The rest of you, I'll see back here at 3:00.

14            (Jury panel not present at 1:36 p.m.)

15            THE COURT:  Let me ask the lawyers, do you all feel

16   like if you come back at a quarter to three, that'll give you

17   enough time to exercise your peremptory challenges and that

18   way we can put the jurors right in the box and get them

19   selected and discharge the ones we're not going to use?

20            MS. GABLE:  Yes, Your Honor.

21            THE COURT:  Does that give you enough time to eat?

22            MS. GABLE:  Yes.

23            THE COURT:  Does that give you enough time, Mr.

24   Bark?

25            MR. BARK:  It will.  I just want to know if I can

1   during that time meet with Mr. Adleta to go over -- to try to

2   expedite things?

3           THE COURT:  Sure.  The marshals will make

4   arrangements for you to meet with Mr. Adleta.

5           MR. BARK:  Thank you.

6           THE COURT:  We'll be in recess until a quarter of

7   3:00.

8           (Lunch recess taken from 1:38 until 2:45 p.m. Jury

9   panel not present.)

10          THE COURT:  Mr. Bark, are you prepared to proceed

11  with your peremptory challenges?

12          MR. BARK:  Yes, Your Honor.

13          THE COURT:  Are you ready, Ms. Gable, as well?

14          MS. GABLE:  Yes, Your Honor.

15          THE COURT:  What says the defendant to the first

16  twelve jurors.  That'll be Julie Page.

17          MR. BARK:  As to Ms. Page, we would exercise a

18  peremptory.

19          THE COURT:  All right.  The defense challenges Ms.

20  Page.

21          I'm asking you with respect to all twelve

22  initially.  So you are you are going to excuse Ms. Page.

23  Okay.

24          What says the government then to the next twelve in

25  the box?  That'll start with Shannon Finley.  It'll take us

1    through Mr. Rapovich.

2           MS. GABLE:  Your Honor, the government requests

3    that juror number eight be excused.

4           THE COURT:  All right.  Juror number eight, Sharon

5    Foederer, is excused by the government.

6           What says the defense to the next twelve in the

7    box?  Now that takes us through Mr. Radzai, juror number 20.

8           MR. BARK:  We move to excuse number four, Ms.

9    Finley.

10          THE COURT:  All right.  Shannon Finley is excused

11   by the defense.

12          What says the government now to the remaining

13   twelve?  That takes us through Mr. Eugene Cold, juror number

14   21.

15          MS. GABLE:  We would ask that juror number ten be

16   excused.

17          THE COURT:  Juror number ten, Dana Olsen, is

18   excused by the government.

19          What says the defense now to the remaining twelve?

20   That takes us through Sharon Alvanzo.

21          MR. BARK:  We would move to excuse Ms. Alvanzo,

22   juror 23.

23          THE COURT:  Juror number 23, Sharon Alvanzo, is

24   excused by the defendant.

25          What says the government now through Shauna

1    Wadsworth?

2            MS. GABLE:   We would ask to excuse juror number 20.

3            THE COURT:   Juror number 20, James Radzai, is

4    excused by the government.

5            What says the defense now to the remaining twelve,

6    through Ward Sparks?

7            MR. BARK:   We would move to excuse number six, Ms.

8    Harris.

9            THE COURT:   Michelle Harris is excused by the

10   defense.

11           That takes us now through juror 27, Jean Warriner.

12   What says the government to the remaining twelve?

13           MS. GABLE:   One moment, Your Honor.

14           THE COURT:   Surely.

15           MS. GABLE:   We move to excuse juror number 21.

16           THE COURT:   Juror number 21, Eugene Cole, is

17   excused by the United States.

18           What says the defense now to the remaining twelve?

19   I think that takes us through Paula Daniels.   Let me check to

20   be sure.

21           Yes, through the twelfth juror would be Paula

22   Daniels.

23           MR. BARK:   We would move to strike juror number

24   eleven, Ms. Oladeji.

25           THE COURT:   Juror number eleven is excused by the

```
1    defense, Ms. Oladeji.

2              What says the government now through Erin Bush,

3    juror number 29?

4              MS. GABLE:  Your Honor, the government does not

5    execute -- we pass.

6              THE COURT:  The government passes.

7              What says the defense now to the remaining twelve,

8    through Erin Bush, juror number 29?

9              MR. BARK:  We would strike juror number twelve,

10   Michael Cohen.

11             THE COURT:  Juror number twelve, Michael Cohen, is

12   excused by the defendant.

13             What says the government now to the remaining

14   twelve, through juror number 30, Patricia Windorf?

15             MS. GABLE:  Your Honor, we pass.

16             THE COURT:  All right.  The government passes.

17             What says the defense to the remaining twelve now

18   through juror number 30, Patricia Windorf?

19             MR. BARK:  We would strike juror number 17, Mr.

20   Koshlap.

21             THE COURT:  Juror 17, Kelly Koshlap, is excused by

22   the defense.

23             What says the government to the remaining twelve,

24   through juror number 31, Gary Baugh?

25             MS. GABLE:  Your Honor, we pass.
```

```
1              THE COURT:  What says the defense?

2              MR. BARK:  If I could have one moment, Your Honor?

3              THE COURT:  Yes.

4              MR. BARK:  We'd move to strike juror number five,

5    James Wehr.

6              THE COURT:  James Wehr is excused by the defense.

7          What says the government to the remaining twelve

8    now through Mr. Holman, juror number 32 -- Kolman.  I'm

9    sorry.

10             MS. GABLE:  We move to strike juror number 32.

11             THE COURT:  All right.  Juror number 32, Stephen

12   Kolman, is excused by the government.

13         What says the defense now to the remaining twelve

14   through juror number 33, Susan Dean?

15             MR. BARK:  Move to strike juror number 29, Erin

16   Bush.

17             THE COURT:  Juror number 29, Erin Bush, is excused

18   by the defense.

19         What says the government to the remaining panel now

20   through juror number 35, Paul Jaynes?

21             MS. GABLE:  Your Honor, we move to strike juror

22   number 33.

23             THE COURT:  Juror number 33, Susan Dean, is excused

24   by the government.

25         The government's challenges are exhausted.
```

```
 1              What says the defense through juror number 36,

 2   Kamaal Hutchinson?

 3              MR. BARK:  We're going to strike juror number 28,

 4   Paula Daniels.

 5              THE COURT:  All right.  Juror number 28, Paula

 6   Daniels, is excused by the defense.  That exhausts the

 7   defense's challenges.

 8              So our panel is short.  We're going to have some

 9   additional jurors brought up from downstairs.  Both the

10   government and the defense have exhausted their challenges.

11   I'm going to bring the jurors in and excuse those who have

12   been excused.

13              And when will we have additional jurors, Ms. Flick?

14              THE COURTROOM DEPUTY:  Tomorrow morning.

15              THE COURT:  Okay.  So we'll have to recess for the

16   day and we'll come back and complete jury selection then in

17   the morning.

18              MS. GABLE:  Your Honor, I lost track.  Do we have

19   our twelve jurors, however?

20              THE COURT:  No.  We have eleven.

21              MS. GABLE:  Thank you.

22              THE COURT:  Otherwise, I wouldn't be adjourning for

23   the day.

24              MS. GABLE:  Thank you.

25              THE COURT:  Understood.
```

1          All right.  Let's bring our jury back, Mr.

2     Fiorenza, and I'll explain to them what's going on.

3          (Jury panel present at 3:02 p.m.)

4          THE COURT:  Ladies and gentlemen, welcome back and

5     thank you for your patience.  I have some good news and some

6     less-than-good news, I think, probably for you.  Maybe it's

7     good news all the way around.

8          We're finished with our selection process for

9     today, but we're not quite finished.  We don't quite have

10    enough folks.  So what we're going to need to do is I'm going

11    to call the names of those who have been excused, and if I

12    don't call your name, that means that you are still part of

13    our venire panel.

14         We're not finished with our jury selection process

15    and we don't -- we have to wait until tomorrow morning to get

16    more jurors.  So we're going to have to take an early

17    afternoon.  That may be good news.  It's a little bit bad

18    news, at least from my viewpoint, because we're wasting away

19    some of the day, but it's unavoidable, I'm afraid.

20         What I'm going to do now is call your name.  If I

21    call your name, that means that you have been excused.  I

22    want to remind you of what I told the jurors that were

23    excused before we broke for lunch and that is that if it were

24    not for your willingness to be here and be responsive to your

25    jury summons and to participate in the process.  Even though

1    I know it can be frustrating to be invested in it and then

2    not be chosen for one reason or another, you should not take

3    it has a personal slight.  It doesn't mean that you were

4    objectionable or that you have any qualities that -- anything

5    about you that disqualifies you from jury service.  It just

6    means that in the judgment of the lawyers, there were others

7    that were perhaps better suited for this particular kind of

8    case than you were.

9         So I want to ask you to stop off at the jury

10   assembly room and see if they're going to need you for

11   anything else; and we have, as I said, some new folks that'll

12   be coming in in the morning.

13        So if I call your name, you're excused.  Just stay

14   put for a minute and I'll let all of you leave at the same

15   time; and then I have some additional instructions for those

16   of you who are going to stay behind.  Julie Page, Denise

17   Ingersoll -- let's see.  I've already excused Ms. Ingersoll.

18   Let me read them all just in case.  Julie Page, Denise

19   Ingersoll, Mary Ann Shayka, Shannon Finley, James Wehr,

20   Michelle Harris, Sara Foederer, Sarita Laverde, Dana Olsen,

21   Shawan Oladeji, Michael Cohen, Aurea Ojeda, Phillip

22   McWhorter, Kelly Koshlap, Wilfrid Prevalas, James Radzai,

23   Eugene Cole, Anna Kolba, Sharon Alvanzo, Sonia Deida, Paula

24   Daniels, Erin Bush, Stephen Kolman, Susan Dean, Mark Danford.

25   You all may be excused with the thanks of the court, and

1     please stop off at the jury room on your way out.

2                Everybody else, stay put for a minute.

3                Thanks, ladies and gentlemen.  Have a seat.

4           Now, we've not quite finished our jury selection

5     process, as I've mentioned to you.  Ordinarily this

6     instruction that you're going to get comes at a little bit

7     later time, but it's very important that you pay attention to

8     what I'm about to tell you.  Even though you have not been

9     sworn as jurors and you have not yet been seated as jurors,

10    it's very important that you not discuss the case amongst

11    yourselves or with anybody else.

12          I don't know whether there will be any news media

13    coverage of this case or not; but if there is, you should

14    avoid it.  If you see something on television turn it off.

15    Turn the channel.  If you pick up the newspaper and you see

16    something in it, don't read it.  Turn it over.

17          I'm going to give you some pretty detailed

18    instructions later on about the Internet, but please

19    understand that when I say, "No media coverage," "Don't

20    discuss it," that means don't post anything about it on

21    Facebook, don't send anybody an e-mail, don't text anybody

22    about the case.

23          I find most often that the best approach is what I

24    call the two-question rule.  It's human nature when you get

25    home to whomever you spend your time with, that that

1  individual or those individuals are going to say, "Where have

2  you been and what were you doing and what's it about?"

3        And the answer to that question is "I am in the

4  midst of jury selection for a trial in federal court.  I have

5  to be back in the morning at 9:00," period.

6        The second question is what everyone gets in

7  trouble with, which is, "What's it about?"  It's a natural

8  question.  Everybody wants to know; and generally, being, you

9  know, social folks, we like to tell what it's about.  Don't

10 do that, because if you answer the second question, it's a

11 very slippery slope and you can't avoid talking about the

12 case.  You don't know anything about the case other than the

13 very limited amount that we've talked about in here today.

14       So please respect my instructions.  I'm going to

15 ask you in the morning when you all come back whether or not

16 you've been able to follow my instructions because this is a

17 serious matter.  There are obviously serious consequences if

18 you don't follow the Court's instructions.  I say that not in

19 the interest of threatening you or intimidating you, but just

20 to reinforce in your mind that this is a very serious matter

21 and my instructions are very serious, and I expect and

22 believe that you will take them that way.  Will you do that

23 for me?

24       (Affirmative responses.)

25       THE COURT:  My apologies for wasting some of your

```
 1    afternoon, but it is unavoidable.  What we'll do in the
 2    morning is I'm going to ask you all to report back at 9:00.
 3    You'll report to the jury assembly room downstairs.  They'll
 4    keep you down there until we finish up what we need to do
 5    here.
 6            I'm going to ask you to be back at 9:00 with the
 7    understanding that I'm going to ask your forebearance.  You
 8    may have to cool your heels down there for a little while
 9    before we get finished up here, but I want you to be here and
10    be available on so we can get going as soon as we get the
11    rest of our jury selected, okay?
12            (Affirmative responses.)
13            THE COURT:  Thank you very much.  With that, you'll
14    be excused.
15            Is there anything further from the lawyers with
16    respect to this panel?
17            MS. GABLE:  No, Your Honor.
18            MR. BARK:  No, Your Honor.
19            THE COURT:  All right.  Thank you all.  I
20    appreciate your patience very much.  I'll see you back here
21    in the morning at 9:00, downstairs in the jury assembly room.
22    I probably won't see you until a little after that.
23            I don't mean to exclude you guys in the back.
24    You're in.  So don't feel like because you're sitting back
25    there, that you're out.  You're in, okay?  Thank you.
```

1          (Jury panel members not present.)

2          THE COURT:  Y'all can be seated.

3          I'm going to have the jury assembly clerk get

4    probably at least eight new individuals for us in the

5    morning.  I am not going to permit any back striking.  Both

6    of you have exhausted your challenges.  I'm not going to

7    permit any back striking amongst these eleven.

8          I'll give some thought over the evening as to

9    whether I'm going to give you any additional challenges with

10   respect to these folks that are coming up, assuming that

11   they're not excusable for cause, and I'll take that up with

12   you in the morning.

13         You may give some thought to what you want to ask

14   for, if you want to ask for any additional peremptories,

15   although hear me that I'm not going to give them to you, but

16   I'll give it some thought.

17         My plan is to bring the eight up and select our

18   twelfth juror, along with one alternate, from that group of

19   eight, and then I'll bring our panel up and we'll constitute

20   our jury and have them sworn.

21         MR. BARK:  Your Honor, I was perhaps going to ask

22   for an additional peremptory based on the denial of the

23   for-cause challenges earlier.  I was hoping the Court would

24   remain open minded to that to see how things unfold tomorrow.

25         THE COURT:  I'm open-minded to it.  I just don't

```
 1    want you to leave tonight with the understanding or the
 2    assumption that I'm going to give you additional challenges.
 3    I'm going to give it some thought over the evening.
 4            This is a fairly unique circumstance in the jury
 5    selection process.  I want to make sure that it's fair, and I
 6    certainly believe that it has been up to this point.  So
 7    we'll see what happens with our jurors in the morning, our
 8    eight, and see how they respond to the questions.
 9            But I'll tell you before we start questioning them
10    whether or not I'm going to give you any additional
11    challenges so that you can make informed decisions about your
12    cause challenges as well.
13            Anything else that we need to take up this
14    afternoon?
15            MS. GABLE:  No, Your Honor.
16            THE COURT:  Do you anticipate any witness problems,
17    Ms. Gable?
18            MS. GABLE:  No, I don't, Your Honor.
19            THE COURT:  All right.  We'll stand adjourned then.
20    I'll see you back here in the morning at 9:00.
21            (Proceedings adjourned at 3:11 p.m.)
                      - - - - - - - -
22                    Reporter's Certification
      I certify that the foregoing is a correct transcript from the
23    record of proceedings in the above-entitled matter.
                              s/Diane Peede, RMR, CRR
24                            Official Court Reporter
                              United States District Court
25    Date:  April 10, 2014    Middle District of Florida
```